IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Ft. Lauderdale Division)
Case No. 00-6126-Civ-Dimitrouleas/Johnson

BETTY ORTEGA,

    Plaintiff,

vs.

UNISOURCE WORLDWIDE, INC., a
foreign corporation,

    Defendant.

_____/

## Plaintiff's Motion for Leave to Amend Complaint

Plaintiff, Betty Ortega, pursuant to Federal Rules of Civil Procedure 15(a), and Local Rules 7.1 and 15.1, moves for leave to amend her complaint to add claims pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq., which are now ripe, and states as follows:

### Introduction

1.    This is an action by Betty Ortega, a Hispanic female sales representative, whom the defendant, Unisource Worldwide, Inc. ("Unisource"), discriminated against because of her gender, race and national origin (including telling her that "customers don't like Hispanic women because they are too





aggressive"), paid less than male and non-Hispanic employees doing equal work, and retaliated against after she spoke out against discrimination.  Plaintiff seeks damages, injunctive relief, attorney's fees and litigation expenses pursuant to the Florida Civil Rights Act of 1991, Chapter 760, Florida Statutes ("FCRA"), and the Equal Pay Act,  29 U.S.C. § 206(d).

2.    On March 20, 2000, the Equal Employment Opportunity Commission issued Ortega a Notice of Right to Sue on her Charge of Discrimination filed with that agency based on the same set of facts involved in this case.  Thus, plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., are now ripe.  Accordingly, plaintiff seeks leave of Court to amend her complaint to assert those claims.

3.    Plaintiff does not believe that defendant will be prejudiced by addition of her Title VII claims because they are based on the same set of facts upon which plaintiff's Equal Pay Act and FCRA claims are based.

### **Memorandum of Law**

Federal Rule of Civil Procedure 15(a), which governs amended and supplemental pleadings, provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . .  Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Thus, Rule 15 in effect creates a presumption in favor of allowing amended pleadings.  In the major case construing Rule 15(a) the Supreme Court stated:

> If the underlying facts or circumstances relied upon by a [party] may be a proper subject for relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason — such as undue delay, bad faith, or dilatory motive on the part of movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, etc. — the leave sought should, as the rules require, be "freely given."

Forman v. Davis, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).  See also Hildebrand v. Honeywell, 622 F.2d 179, 182 (5th Cir. 1980)[1] (Rule 15 requires "that leave to amend a complaint shall be freely given when justice so requires").

While trial courts are generally given wide discretion to grant or deny leave to amend, this discretion is narrowed by the federal rules' bias in favor of liberality of amendment.  Discussing the narrowness of a district court's discretion in the context of a motion for leave to amend made pursuant to Rule 15(a), the former Fifth Circuit stated as follows:

> In our review of the trial court's exercise of discretion, rule 15(a), of course, provides the starting point.  "Discretion" may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend "shall be freely given when justice so requires."  It evinces a bias in favor of granting  leave to  amend.  The policy of the

---

[1]  Decisions of the former Fifth Circuit filed prior to October 1, 1981 constitute binding precedent in the Eleventh Circuit.  Bonner v. City of Pritchard, 661 F. 2d 1206, 1209 (11th Cir. 1981) (en banc).

> federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading.... Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.

Dussouy v. Gulf Coast Investment Corp., 660 F.2d 594, 598 (5th Cir. 1981) (citations omitted).

As to the permissible time limits for amendment, the federal courts have been quite liberal in allowing parties to amend long after the original pleading has been filed. Rule 15 contains no express time limits. Although the passage of time is an important element bearing on the court's discretion, the Eleventh Circuit has held that "the mere passage of time, without anything more, is an insufficient reason to deny leave to amend." Floyd v. Eastern Airlines, Inc., 872 F.2d 1462, 1490 (11th Cir. 1989). Rather, the crucial factors to be considered are the movant's motivations and whether granting leave to amend will unduly prejudice the adverse party. Id. at 1490.

An additional factor considered by the Eleventh Circuit is the effect that a denial of leave to amend would have on the movant. Stevens v. Gay, 792 F.2d 1000, 1002-04 (11th Cir. 1986) ("It is clear, therefore, that this Court . . . [is] required to consider the potential injury to a plaintiff if denied the right to amend."). See also Cornwall v. U.S. Construction Co., 800 F.2d 250 (Fed. Cir. 1986) (applying Eleventh Circuit precedent to reverse trial court's denial of

leave to amend where no prejudice shown to plaintiffs and denial would prevent defendant from raising affirmative defense).

**Application of the Facts to the Legal Standards**

As indicated by the attached Amended Complaint, plaintiff's Title VII claims are based upon the same facts as her Equal Pay Act and FCRA claims already asserted in this action. As the courts have recognized, decisions construing Title VII apply when considering claims under the Florida Civil Rights Act "because the Florida Act was patterned after Title VII." Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385 (11th Cir. 1998). See also Ranger Ins. Co. v. Bal Harbour Club, Inc., 549 So. 2d 1005, 1009 (Fla. 1989) ("Florida's Human Rights Act [now Florida Civil Rights Act] appears to be patterned after Title VII of the federal Civil Rights Act of 1964"); Florida State University v. Sondel 685 So.2d 923, 925 n. 1 (Fla. 1st DCA 1996) ("The Act, as amended, was patterned after Title VII of the Civil Rights Acts of 1964 and 1991, 42 U.S.C. § 2000, et seq., as well as the Age Discrimination in Employment Act (ADEA)").

Defendant will not be prejudiced by the addition of the Title VII claims at this stage of the proceeding where leave is sought before expiration of the July 31, 2000, amendment deadline; discovery is still ongoing; and no additional discovery will be required for the Title VII claims.

Were the Court to deny plaintiff's motion for leave to amend, plaintiff would be required to file her Title VII claims in a separate federal or state court action, just to present the same evidence that will be presented in this action as to her Equal Pay Act and FCRA claims. That would squander judicial resources, as well as those of plaintiff and defendant.

### Conclusion

Based on the foregoing authority, this Court should grant Plaintiff's Motion for Leave to Amend Complaint.

Respectfully Submitted,

KAREN COOLMAN AMLONG
Florida Bar No: 275565
JENNIFER DALEY
Florida Bar No: 0856436
Amlong & Amlong, P.A.
Attorneys for Plaintiff
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, FL 33301-1154
(954)462-1983
(954)523-3192

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has

been furnished by U.S. Mail this 31st day of March, 2000 to Juan Enjamio,

Esq., Hunton & Williams, One Biscayne Tower, Suite 2500, 2 S. Biscayne Blvd.,

Miami, FL 33131.

JENNIFER DALEY

C:\MyFiles\ort-mot.wpd

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Ft. Lauderdale Division)
Case No. 00-6126-Civ-Dimitrouleas/Johnson

BETTY ORTEGA,

    Plaintiff,

vs.

UNISOURCE WORLDWIDE, INC., a
foreign corporation,

    Defendant.

_____ /

## **Amended Complaint**

    Plaintiff, BETTY ORTEGA, sues defendant, UNISOURCE WORLDWIDE, INC., a foreign corporation, and alleges:

### **Introduction**

    1.    This is an action by Betty Ortega, a Hispanic female sales representative, whom the defendant, Unisource Worldwide, Inc. ("Unisource"), discriminated against because of her gender, race and national origin (including telling her that "customers don't like Hispanic women because they are too aggressive"), paid less than male and non-Hispanic employees doing equal





EXHIBIT
" A "

Page 1 of 23

work, and retaliated against after she spoke out against discrimination.  Plaintiff seeks damages, injunctive relief, attorney's fees and litigation expenses pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, et seq. ("Title VII"), the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA"), and the Equal Pay Act, 29 U.S.C. § 206(d).

### Jurisdiction and Venue

2.     This action arises under 29 U.S.C. § 206(d) and 215(a)(3) and Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, et seq.  Jurisdiction is founded on 29 U.S.C. § 216(b) and 217, 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1343.  The Court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.  The Court has supplemental jurisdiction under 28 U.S.C. § 1367 to hear the state law claims.

3.     Venue is proper in the Ft. Lauderdale Division of the Southern District of Florida pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b), as well as Local Rule 3.1(F) because the claim arose there.

### The Parties

4.     Betty Ortega ("Ortega") is a sales representative whom Unisource Worldwide, Inc. and/or its predecessors (hereinafter collectively referred to as "Unisource") employed since 1988 as a sales representative, a position for which she was at all times material qualified and performed satisfactorily.  She is protected

Page 2 of  23

a.      under the Title VII and the FCRA because of her race and national origin, i.e., Cuban;

b.      under Title VII and the FCRA because she is a woman;

c.      under the Equal Pay Act because she is a woman; and

d.      under Title VII, the FCRA and the Equal Pay Act because she opposed the discrimination against her by defendant on account of her gender/sex, race and/or national origin, she asserted rights under the Equal Pay Act that the Equal Pay Act was intended to protect, and she filed Charges of Discrimination complaining of race, gender/sex and/or national origin discrimination and of retaliation with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations.

5.      Unisource Worldwide, Inc., is a foreign corporation, doing business in Broward County, Florida, where Ortega was based, and is and was at all material times an "employer" as defined by 42 U.S.C. §2000e(b), 29 U.S.C. § 203(d), and Chapter 760.02(7), Florida Statutes.

## **Conditions Precedent**

6.      On or about April 23, 1999, Ortega filed Charges of Discrimination with the Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR), that stated in pertinent part:

> I have been discriminated against on account of my sex (female), my national origin and race (Hispanic) and because I opposed employment practices made illegal by and in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Florida Civil Rights Act, § 760.01, et seq., Particularly:

Page 3 of 23

I have been employed as a sales representative for Unisource Worldwide, Inc. for approximately 11 years. Male sales representatives receive better accounts than I do and recently export accounts that were promised to me were given to a male less qualified that I to handle exports. Less and equally qualified males have been promoted before me. I make approximately $100,000 per year while similarly situated and qualified men have made $275,000 to $350,000 per year.

I have been told that customers "don't like Hispanic women because they are too aggressive."

Since 1990, I have complained that I have been treated differently, and worse, because I am female and Hispanic. I believe my disparate treatment is because I am female, Hispanic and spoke out against discrimination.

Ortega adopts these allegations as part of this Complaint.

7.    The EEOC issued Ortega a Notice of Right to Sue Dated March 20, 2000. The FCHR deferred the processing of Ortega's Charge to the Equal Employment Opportunity Commission (EEOC), pursuant to work sharing, without conciliating the case or making a finding adverse to Ortega within 180 days of when Ortega filed the Charge.

## Count I/Equal Pay Act

8.    Plaintiff Ortega realleges and adopts, as if fully set forth in this count, the allegations in paragraphs 1, 2, 3, 4(c), 5 and 6.

9.    At all times material, Unisource, has had employees subject to the provisions of Section 6 of the Fair Labor Standards Act, 29 U.S.C. § 206, in its establishments in which Ortega was, and is, employed.

10.    During her employment by Unisource, Unisource paid Ortega at rates less than it paid employees of the males sex, although the  jobs

Page 4 of  23

performed by Ortega required equal skill, effort, and responsibility and were performed under similar working conditions.

11.    Moreover, the difference in the rates paid to Ortega, as compared with those paid to employees of the male sex, was not a part of, and was not occasioned by, any seniority, merit, or piecework system, but was based solely on the factor of sex.

12.    Unisource knew or showed reckless disregard as to whether its conduct violated the Equal Pay Act.

13.    The acts more particularly alleged in paragraphs 6, 10 and 11 above violate Ortega's rights against sexual discrimination, which discrimination is proscribed by the Equal Pay Act, 29 U.S.C. § 206(d).

14.    The conduct of Unisource and its agents, proximately, directly, and foreseeably injured Ortega, including but not limited to lost wages and benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

15.    Ortega is entitled to recover reasonable attorney's fees and litigation expenses pursuant to 29 U.S.C. § 216(b).

16.    Ortega has no plain, adequate or complete remedy at law for the actions of Unisource, which have caused, and continue to cause, irreparable harm.

WHEREFORE, Ortega prays that this Court will:

A.    permanently enjoin defendant Unisource, its officers, agents, servants, employees and all other persons in active concert or participation with them from violating the provisions of the Equal Pay Act, 29 U.S.C. § 206(d)(1);

B.    restrain the withholding of payment of compensation found by the Court to be due to Ortega under the Equal Pay Act in accordance with 29 U.S.C. § 217;

C.    award Ortega an additional equal amount as liquidated damages in accordance with 29 U.S.C. § 216(c);

D.    award Ortega her costs, litigation expenses and reasonable attorney's fees pursuant to 29 U.S.C. § 216(b); and

E.    grant Ortega such other and further relief as is just.

### Count II/Retaliation

17.    Ortega adopts and realleges, as if set forth in this count, the allegations of ¶¶ 1, 2, 3, 4(d), 5 and 6.

18.    Additionally, Ortega complained on repeated occasions to her supervisors, including managers and vice presidents, that she believed she was being paid less than her male counterparts and demanded repeatedly, but to no avail, that she be assigned to more lucrative and/or new accounts, such as the export accounts that she had been promised but were eventually given to a less qualified male employee.   Ortega's complaints about pay disparity constitute protected activity under 29 U.S.C. § 215(a)(3).

19.    Subsequent to and as a result of Ortega's inquiries and complaints about pay disparity, she was retaliated against, including but not limited to, by the following adverse employment actions:

a.    She was not given the export accounts that she had been promised which were instead given to a less qualified male employee;

b.    She was passed over for assignments to lucrative and/or new accounts;

c.    One account that generated income was taken away from her and replaced with an account that generated virtually no income; and

d.    She was given new accounts to service that generated virtually no income.

WHEREFORE, plaintiff, Betty Ortega, prays that this court will grant judgment in favor of Ortega for:

A.    legal and equitable relief including, but not limited to, the payment of wages lost and an additional equal amount as liquidated damages in accordance with 29 U.S.C. § 216(c);

B.    her costs, including a reasonable attorney's fee and litigation expenses, pursuant to 29 U.S.C. § 216(b); and

C.    such other and further relief as is just.

## <u>Count III/FCRA/Gender/Sex Discrimination</u>

20.    Plaintiff Ortega realleges and adopts, as if fully set forth in this count, the allegations in paragraphs 1, 2, 3, 4(b), 5, 6, 7, 10 and 11.

21.    Additionally, Unisource treated Ortega differently, and worse, than male sales representatives.  Particularly, Unisource failed to consider Ortega and/or passed Ortega over for promotions and assignments for which she was qualified in favor of equally or lesser qualified males, and paid her less than comparably qualified men for similar work and Ortega's female gender/sex was a factor motivating such employment actions.

22.    Unisource affected Ortega in a "term, condition, or privilege" of her employment, as envisioned by section 760.10(1), Florida Statutes, by the conduct set forth in paragraphs 6 and 21 above.

23.    The conduct of Unisource was intentional, wilful and wanton, and done in reckless disregard of the statutory rights of Ortega.

24.    The conduct of Unisource and its  agents and employees, as more particularly alleged above, has deprived Ortega of her statutory rights under Chapter 760, Florida Statutes.

25.    As a direct, natural, proximate and foreseeable result of the actions of defendant, Ortega has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

26.    Ortega has no plain, adequate, or complete remedy at law for the actions of Unisource, which have caused, and continue to cause, irreparable harm.

27.    Ortega has and will incur attorney's fees, expert witness fees and other costs in prosecuting this action.

WHEREFORE, plaintiff prays that this Court will:

A.    Issue a judgment:

1.    determining and declaring that Unisource's practices toward Ortega are violative of Ortega's rights under the Florida Civil Rights Act, Chapter 760, Florida;

2.    enjoining Unisource from continuing to engage in such unlawful employment practices; and

3.    ordering such affirmative action regarding Ortega as is appropriate, including, but not limited to, instatement with full seniority and backpay, or should the Court find instatement impracticable, backpay and an appropriate award of front pay; and

4.    awarding Ortega damages  against Unisource;

B.    Grant Ortega her costs  and reasonable attorneys' fees pursuant to  the Florida Civil Rights Act, section 760.11(5), Florida Statutes; and

C.    Grant Ortega such other and further relief as the circumstances and law require and/or provide.

Page 9 of  23

## <u>Count IV/FCRA/Race Discrimination</u>

28.    Plaintiff Ortega realleges and adopts, as if fully set forth in this count, the allegations in paragraphs 1, 2, 3, 4(a), 5, 6 and 7.

29.    Additionally, Unisource treated Ortega differently, and worse, than non-Hispanic/Cuban representatives.  Particularly, Unisource failed to consider Ortega and/or passed Ortega over for assignments for which she was qualified in favor of equally or lesser qualified  non-Hispanic/Cuban representatives, and paid her less than comparably qualified  non-Hispanic/Cuban representatives for similar work and Ortega's race was a factor motivating such employment actions.

30.    Unisource affected Ortega in a "term, condition, or privilege" of her employment, as envisioned by section 760.10(1), Florida Statutes, by the conduct set forth in paragraphs 6 and 29 above.

31.    The conduct of Unisource and its  agents and employees, as more particularly alleged above, has deprived Ortega of her statutory rights under Chapter 760, Florida Statutes.

32.    As a direct, natural, proximate and foreseeable result of the actions of defendant, Ortega has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

33.    The conduct of Unisource was intentional, wilful and wanton, and done in reckless disregard of the statutory rights of Ortega.

34.    Ortega has no plain, adequate, or complete remedy at law for the actions of Unisource, which have caused, and continue to cause, irreparable harm.

35.    Ortega has and will incur attorneys' fees, expert witness fees and other costs in prosecuting this action.

WHEREFORE, plaintiff prays that this Court will:

A.    Issue a judgment:

1.    determining and declaring that Unisource's practices toward Ortega are violative of Ortega's rights under the Florida Civil Rights Act, Chapter 760, Florida;

2.    enjoining Unisource from continuing to engage in such unlawful employment practices; and

3.    ordering such affirmative action regarding Ortega as is appropriate, including, but not limited to, instatement with full seniority and backpay, or should the Court find instatement impracticable, backpay and an appropriate award of front pay; and

4.    awarding Ortega damages  against Unisource;

B.    Grant Ortega her costs and reasonable attorneys' fees pursuant to the Florida Civil Rights Act, section 760.11(5), Florida Statutes; and

C.    Grant Ortega such other and further relief as the circumstances and law require and/or provide.

## Count V/FCRA/National Origin Discrimination

36.    Plaintiff Ortega realleges and adopts, as if fully set forth in this count, the allegations in paragraphs 1, 2, 3, 4(d), 5, 6 and 7.

37.    Additionally, Unisource treated Ortega differently, and worse, than non-Hispanic/Cuban representatives.  Particularly, Unisource failed to consider Ortega and/or passed Ortega over for assignments for which she was qualified in favor of equally or lesser qualified  non-Hispanic/Cuban representatives, and paid her less than comparably qualified  non-Hispanic/Cuban representatives for similar work and Ortega's national origin was a factor motivating such employment actions.

38.    Plaintiff Ortega realleges and adopts, as if fully set forth in this count, the allegations in paragraphs 30 through 35 above.

WHEREFORE, plaintiff prays that this Court will:

A.    Issue a judgment:

1.    determining and declaring that Unisource's practices toward Ortega are violative of Ortega's rights under the Florida Civil Rights Act, Chapter 760, Florida;

2.    enjoining Unisource from continuing to engage in such unlawful employment practices; and

3.    ordering such affirmative action regarding Ortega as is appropriate, including, but not limited to, instatement with full seniority and backpay, or should the Court find instatement impracticable, backpay and an appropriate award of front pay; and

Page 12 of  23

4.      awarding Ortega damages  against Unisource;

B.      Grant Ortega her costs and reasonable attorneys' fees pursuant to the Florida Civil Rights Act, section 760.11(5), Florida Statutes; and

C.      Grant Ortega such other and further relief as the circumstances and law require and/or provide.

## **Count VI/FCRA Retaliation**

39.     Ortega adopts and realleges, as if set forth in this count, the allegations of ¶¶ 1, 2, 3, 4(c), 5, 6 and 7.

40.     Ortega complained on repeated occasions to her supervisors, including managers and supervisors, that she believed she was being paid less than her male counterparts and demanded repeatedly, but to no avail, that she be assigned to more lucrative and/or new accounts, such as the export accounts that she had been promised but were eventually given to a less qualified male employee.  She also complained that she was treated differently because she was Hispanic.  Ortega's complaints constitute protected activity under the Florida Civil Rights Act, Chapter 760, Florida Statutes.

41.     Subsequent to and as a result of Ortega's inquiries and complaints about pay disparity, she was retaliated against, including but not limited to, by the following adverse employment actions:

a.      She was not given the export accounts that she had been promised which were instead given to a less qualified male employee;

b.      She was passed over for promotions and assignments to lucrative and/or new accounts;

Page 13 of  23

c.    One account that generated income was taken away from her and replaced with an account that generated virtually no income; and

d.    She was given new accounts to service that generated virtually no income.

42.    Unisource affected Ortega in a "term, condition, or privilege" of her employment, as envisioned by section 760.10(1), Florida Statutes, by the conduct set forth in paragraph 41 above.

43.    The conduct of Unisource and its agents and employees, as more particularly alleged above, has deprived Ortega of her statutory rights under section 760.10(7), Florida Statutes.

44.    The conduct of Unisource was intentional, wilful and wanton, and done in reckless disregard of the statutory rights of Ortega.

45.    As a direct, natural, proximate and foreseeable result of the actions of defendant, Ortega has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

46.    Ortega has no plain, adequate, or complete remedy at law for the actions of Unisource, which have caused, and continue to cause, irreparable harm.

47.    Ortega has and will incur attorneys' fees, expert witness fees and other costs in prosecuting this action.

WHEREFORE, plaintiff prays that this Court will:

A.    Issue a judgment:

1.    determining and declaring that Unisource's practices toward Ortega are violative of Ortega's rights under the Florida Civil Rights Act, Chapter 760, Florida Statutes;

2.    enjoining Unisource from continuing to engage in such unlawful employment practices; and

3.    ordering such affirmative action regarding Ortega as is appropriate, including, but not limited to, instatement with full seniority and backpay, or should the Court find instatement impracticable, backpay and an appropriate award of front pay; and

4.    awarding Ortega damages, including punitive damages, against Unisource;

B.    Grant Ortega her costs and reasonable attorneys' fees pursuant to the Florida Civil Rights Act, section 760.11(5), Florida Statutes; and

C.    Grant Ortega such other and further relief as the circumstances and law require and/or provide.

### **Count VII/Title VII/Gender/Sex Discrimination**

48.    Plaintiff Ortega realleges and adopts, as if fully set forth in this count, the allegations in paragraphs 1, 2, 3, 4(b), 5, 6, 7, 10 and 11.

49.    Additionally, Unisource treated Ortega differently, and worse, than male sales representatives.  Particularly, Unisource failed to consider Ortega and/or passed Ortega over for promotions and assignments for which she was

qualified in favor of equally or lesser qualified males, and paid her less than comparably qualified men for similar work and Ortega's female gender was a factor motivating such employment actions.

50.    Unisource affected Ortega in a "term, condition, or privilege" of her employment, as envisioned by 42 U.S.C. § 2000e(a)(1), by the conduct set forth in paragraphs 6 and 49 above.

51.    The conduct of Unisource was intentional, wilful and wanton, and done in reckless disregard of the statutory rights of Ortega.

52.    The conduct of Unisource and its agents and employees, as more particularly alleged above, has deprived Ortega of her statutory rights under Title VII.

53.    As a direct, natural, proximate and foreseeable result of the actions of defendant, Ortega has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

54.    Ortega has no plain, adequate, or complete remedy at law for the actions of Unisource, which have caused, and continue to cause, irreparable harm.

55.    Ortega has and will incur attorney's fees, expert witness fees and other costs in prosecuting this action.

WHEREFORE, plaintiff prays that this Court will:

A.    Issue a judgment:

Page 16 of 23

      1.    determining and declaring that Unisource's practices toward Ortega are violative of Ortega's rights under Title VII;

      2.    enjoining Unisource from continuing to engage in such unlawful employment practices; and

      3.    ordering such affirmative action regarding Ortega as is appropriate, including, but not limited to, instatement with full seniority and backpay, or should the Court find instatement impracticable, backpay and an appropriate award of front pay; and

      4.    awarding Ortega damages against Unisource;

      B.    Grant Ortega her costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k); and

      C.    Grant Ortega such other and further relief as the circumstances and law require and/or provide.

### **Count VIII/Title VII/Race Discrimination**

56.    Plaintiff Ortega realleges and adopts, as if fully set forth in this count, the allegations in paragraphs 1, 2, 3, 4(a), 5, 6 and 7.

57.    Additionally, Unisource treated Ortega differently, and worse, than non-Hispanic/Cuban representatives. Particularly, Unisource failed to consider Ortega and/or passed Ortega over for assignments for which she was qualified in favor of equally or lesser qualified non-Hispanic/Cuban representatives, and paid her less than comparably qualified non-Hispanic/Cuban representatives for similar work and Ortega's race was a factor motivating such employment actions.

58.    Unisource affected Ortega in a "term, condition, or privilege" of her employment, as envisioned by section 42 U.S.C. § 2000e(a)(1), by the conduct set forth in paragraph 6 and 57 above.

59.    The conduct of Unisource and its agents and employees, as more particularly alleged above, has deprived Ortega of her statutory rights under Title VII.

60.    As a direct, natural, proximate and foreseeable result of the actions of defendant, Ortega has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

61.    The conduct of Unisource was intentional, wilful and wanton, and done in reckless disregard of the statutory rights of Ortega.

62.    Ortega has no plain, adequate, or complete remedy at law for the actions of Unisource, which have caused, and continue to cause, irreparable harm.

63.    Ortega has and will incur attorneys' fees, expert witness fees and other costs in prosecuting this action.

WHEREFORE, plaintiff prays that this Court will:

A.    Issue a judgment:

1.    determining and declaring that Unisource's practices toward Ortega are violative of Ortega's rights under Title VII;

2.    enjoining Unisource from continuing to engage in such unlawful employment practices; and

3.    ordering such affirmative action regarding Ortega as is appropriate, including, but not limited to, instatement with full seniority and backpay, or should the Court find instatement impracticable, backpay and an appropriate award of front pay; and

4.    awarding Ortega damages against Unisource;

B.    Grant Ortega her costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k); and

C.    Grant Ortega such other and further relief as the circumstances and law require and/or provide.

### **Count IX/Title VII/National Origin Discrimination**

64.    Plaintiff Ortega realleges and adopts, as if fully set forth in this count, the allegations in paragraphs 1, 2, 3, 4(d), 5, 6 and 7.

65.    Additionally, Unisource treated Ortega differently, and worse, than non-Hispanic/Cuban representatives.  Particularly, Unisource failed to consider Ortega and/or passed Ortega over for assignments for which she was qualified in favor of equally or lesser qualified  non-Hispanic/Cuban representatives, and paid her less than comparably qualified  non-Hispanic/Cuban representatives for similar work and Ortega's national origin was a factor motivating such employment actions.

66.    Plaintiff Ortega realleges and adopts, as if fully set forth in this count, the allegations in paragraphs 30 through 35 above.

WHEREFORE, plaintiff prays that this Court will:

A.    Issue a judgment:

1.    determining and declaring that Unisource's practices toward Ortega are violative of Ortega's rights under Title VII;

2.    enjoining Unisource from continuing to engage in such unlawful employment practices; and

3.    ordering such affirmative action regarding Ortega as is appropriate, including, but not limited to, instatement with full seniority and backpay, or should the Court find instatement impracticable, backpay and an appropriate award of front pay; and

4.    awarding Ortega damages  against Unisource;

B.    Grant Ortega her costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k); and

C.    Grant Ortega such other and further relief as the circumstances and law require and/or provide.

## Count X/Title VII Retaliation

67.    Ortega adopts and realleges, as if set forth in this count, the allegations of ¶¶ 1, 2, 3, 4(c), 5, 6 and 7.

68.    Ortega complained on repeated occasions to her supervisors, including managers and supervisors, that she believed she was being paid less than her male counterparts and demanded repeatedly, but to no avail, that she be assigned to more lucrative and/or new accounts, such as the export accounts that she had been promised but were eventually given to a less

Page 20 of 23

qualified male employee. She also complained that she was treated differently because she was Hispanic. Ortega's complaints constitute protected activity under Title VII.

69.    Subsequent to and as a result of Ortega's inquiries and complaints about pay disparity, she was retaliated against, including but not limited to, by the following adverse employment actions:

a.    She was not given the export accounts that she had been promised which were instead given to a less qualified male employee;

b.    She was passed over for promotions and assignments to lucrative and/or new accounts;

c.    One account that generated income was taken away from her and replaced with an account that generated virtually no income; and

d.    She was given new accounts to service that generated virtually no income.

70.    Unisource affected Ortega in a "term, condition, or privilege" of her employment, as envisioned by 42 U.S.C. § 2000e(a)(1), by the conduct set forth in paragraphs 6 and 69 above.

71.    The conduct of Unisource and its agents and employees, as more particularly alleged above, has deprived Ortega of her statutory rights under Title VII, 42 U.S.C. § 2000e-3(a).

72.    The conduct of Unisource was intentional, wilful and wanton, and done in reckless disregard of the statutory rights of Ortega.

73.     As a direct, natural, proximate and foreseeable result of the actions of defendant, Ortega has suffered injuries for which she is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

74.     Ortega has no plain, adequate, or complete remedy at law for the actions of Unisource, which have caused, and continue to cause, irreparable harm.

75.     Ortega has and will incur attorneys' fees, expert witness fees and other costs in prosecuting this action.

WHEREFORE, plaintiff prays that this Court will:

A.      Issue a judgment:

1.      determining and declaring that Unisource's practices toward Ortega are violative of Ortega's rights under Title VII;

2.      enjoining Unisource from continuing to engage in such unlawful employment practices; and

3.      ordering such affirmative action regarding Ortega as is appropriate, including, but not limited to, instatement with full seniority and backpay, or should the Court find instatement impracticable, backpay and an appropriate award of front pay; and

4.      awarding Ortega damages, including punitive damages, against Unisource;

Page 22 of  23

B.     Grant Ortega her costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 2000e-5(k); and

C.     Grant Ortega such other and further relief as the circumstances and law require and/or provide.

### Demand for Jury Trial

Plaintiff, Betty Ortega, demands trial by jury on all issues so triable.

Respectfully Submitted,

KAREN COOLMAN AMLONG
Florida Bar No:  275565
JENNIFER DALEY
Florida Bar No:  0856436
AMLONG & AMLONG, P.A.
Attorneys for Plaintiff
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, FL 33301-1154
(954)462-1983

Dated:  March 31, 2000.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished by U.S. Mail this 31st day of March, 2000 to Juan Enjamio, Esq., Hunton & Williams, One Biscayne Tower, Suite 2500, 2 S. Biscayne Blvd., Miami, FL 33131.

JENNIFER DALEY

G:\CP\HISTORY\1772\56.DOC