UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 00-CV-6126

JUDGE WILLIAM P. DIMITROULEAS

MAGISTRATE JUDGE JOHNSON

BETTY ORTEGA,

        Plaintiff,

v.

UNISOURCE WORLDWIDE, INC., a
foreign corporation,

        Defendant.

_____/



## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Unisource Worldwide, Inc. ("Unisource"), Defendant in the above-styled action, hereby files this Brief In Support of its Motion for Summary Judgment.

### INTRODUCTION

Although Plaintiff Betty Ortega admits that she was one of the highest paid sales representatives for Unisource, was paid pursuant to the same commission structure as other paper sales representatives ("sales representatives") and has no evidence that she was discriminated against because of her race, sex, national origin, or in retaliation for engaging in protected activity under Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA"), she alleges that Unisource (1) discriminated against her in the <u>assignment of accounts</u> based on her sex, race, national origin, and in retaliation for protected activity under Title VII and the FCRA and (2) paid her less than male sales representatives in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d). The undisputed evidence, however, reveals the contrary. Indeed, during Plaintiff's deposition she testified as follows:



| | | |
|---|---|---|
| Q: | What evidence do you have that any accounts were assigned to non-Hispanic sales representatives in the work force because of their race? | |
| A: | None. | |

\*   \*   \*

| | |
|---|---|
| Q: | Other than the fact that accounts were given to the men and not you, what other evidence do you have that the decision was based on sex? |
| A: | I wouldn't be able to answer that question. |

\*   \*   \*

| | |
|---|---|
| Q: | Can you give me any specific accounts by name, that you feel were assigned to non-Cubans and not you? |
| A: | I won't be able to do that. |

\*   \*   \*

| | |
|---|---|
| Q: | [W]hat evidence do you have that his decision to give those accounts to Bill Ready was because you had previously complained about being discriminated against? |
| A: | I have no evidence, sir. |

(Pl. Dep. at 51, 61-64, 68-69, 71-77, 81-83, 112-13.) In addition to Plaintiff's testimony, the evidence demonstrates that Unisource assigned all sales accounts based on legitimate non-discriminatory reasons – namely, Unisource's financial concerns and sales representatives' experience, skills, available time, and geographic proximity to accounts, and that Unisource paid its sales representatives pursuant to a commission matrix applicable to all sales representatives. Simply put, the record is devoid of any evidence to support Plaintiff's claims. Rather, Plaintiff's claims are based exclusively on her own speculation, conjecture and surmise that Unisource's actions were discriminatory and retaliatory. Based on the foregoing and as described in more detail below, Unisource's Motion for Summary Judgment should be granted.

## STATEMENT OF FACTS

### I. Plaintiff's Employment With Unisource

Unisource is a paper distributing company that sells and distributes paper and paper products throughout the United States, the Caribbean and Central and South America. (Glaze Aff. at ¶ 2.) Unisource maintains a branch office in South Florida ("Miami division") which services accounts primarily in South Florida and the Caribbean (export accounts). (Id.) Unisource employs numerous sales representatives, including Plaintiff, in its Miami division and

compensates all these sales representatives on a 100% commission basis. (Glaze Aff. at ¶ 5; Glaze Dep. of Sept. 28, 2000 at 4.)[1]

On or about April 18, 1988, Bill Ready, Division Manager for Jim Walters Papers, Inc., hired Plaintiff as a Sales Trainee for Printing Paper and served as Plaintiff's supervisor. (Ready Dep. at 28.) As her supervisor, Ready provided Plaintiff with on the job sales training and assigned her numerous accounts. Because Plaintiff showed an interest in export accounts, Ready also forwarded all information regarding leads on new export accounts to Plaintiff. (Ready Dep. at 84-87.) In 1993, following a series of corporate acquisitions, Plaintiff became a Unisource employee in its Miami division. Contemporaneously, Ready assumed the sales manager position in Unisource's Miami division and continued directly supervising Plaintiff. (Ready Dep. at 17.)

In October of 1996, John Glaze became the division manager of Unisource's Miami division. As division manager, Glaze indirectly supervised Plaintiff starting in October of 1996 and starting in August of 1998, took over direct supervision of numerous printing paper sales representatives including Plaintiff. (Glaze Aff. ¶ 7.) When Glaze became the division manager, Plaintiff approached him and raised three complaints: (1) that sales representative Dennis Laux was too aggressive; (2) there was a theft problem in the warehouse; and (3) that Ready favored males over females. (Glaze Dep. of Sept. 28, 2000 at 69.) Glaze took all of Plaintiff's allegations seriously and asked Plaintiff for additional information in order to address her concerns. Plaintiff provided specific information with respect to her first two concerns and Glaze immediately investigated and resolved those concerns. (Id. at 70-77.) With respect to her concern about favoritism, Glaze told Plaintiff that favoritism would not be tolerated in any form and that if she offered specifics he would investigate the allegation. (Id. at 72-75.) Plaintiff refused to offer specifics. (Id. at 74.)

## II.   Account Assignment Decisions

In addition to resolving employee concerns, Glaze was also responsible for the assignment of accounts to sales representatives. When Unisource hires new sales representatives

---

[1] The Commission Matrix has been updated throughout the years: March of 1995 and 1996, Jan. 1998, and Feb. 1999. All sales representatives are paid 100% commission pursuant to the matrix in effect. (Glaze Dep. of Oct. 25, 2000 at 39-40.) There is a separate commission structure in effect in the Miami division for certain web accounts. (Glaze Dep. of Oct. 25, 2000 at 40.) Web accounts, however, are not at issue in this case. (Pl. Dep. at 86-87.)

it initially assigns them a base of accounts to pursue based on their skill sets, experience, existing business and geographic location. (Glaze Aff. at ¶ 3.) Thereafter, sales representatives are required to manage their account base and are also responsible for opening new accounts and expanding their account base through account penetration. (Id.) As new accounts are developed and sales representatives leave the company, it is necessary to assign new accounts and reassign existing accounts among sales representatives. (Id. at ¶ 4.) If Unisource determines that the existing sales force can handle the accounts, as opposed to hiring a new sales representative, it divides them among available sales representatives based on a variety of factors: (1) the sales representative's experience; (2) the sales representative's product experience; (3) the sales representative's available time; (4) the geographic location of the new accounts; and (5) the personality fit between the sales representative and the account. (Id. at ¶ 4; Glaze Dep. of Sept. 28, 2000 at 44-54; Ready Dep. at 45-47.) These factors are important in ensuring that Unisource retains the account. If a sales representative is assigned an account that he/she does not have the time, experience or personality fit to handle, Unisource may lose the account. (Glaze Aff. at ¶ 4.)

In applying these criteria, Ready and Glaze have assigned and reassigned accounts to many sales representatives. For example, in December of 1998, Laux and John Huempfner, sales representatives in Unisource's Miami division, resigned. (Id. at ¶ 14.) Laux and Huempfner handled numerous large accounts, including heat set web accounts. (Glaze Dep. of Sept. 28, 2000, at 13.) Because of the number, size, and types of accounts, Glaze decided to reassign some accounts and hire another sales representative to take over the bulk of these accounts. Glaze hired Jim Ware because he had substantial experience handling large accounts, including heat set web accounts. (Glaze Dep. of Sept. 28, 2000 at 15; Glaze Dep. of Oct. 30, 2000 at 80.) Glaze also assigned some of Laux and Huempfner's accounts to other sales representatives including assigning Laux's sole export account and one of Huempfner's accounts (a web account) to Plaintiff based on Plaintiff's experience in export sales and the geographic location of Huempfner's account. (Glaze Dep. of Oct. 30, 2000 at 73-76, 80.) Plaintiff, however, refused to handle Huempfner's web account. (Pl. Dep. at 86.)[2]

---

[2]    As mentioned heretofore, Plaintiff testified that she is not complaining about the assignment of web accounts. When asked: "Are there any web sales accounts that you believe should have been assigned to you, but were assigned to someone else?" Plaintiff replied: "No Sir, I don't get involved in web sales at all." Further, she was asked: "So your complaint here in regard to assignment of accounts does not deal with web sales?" To which, Plaintiff replied: "No Sir." (Pl. Dep. at 87) (emphasis added).

Pkv011.doc                4

In addition to the accounts from Laux and Huempfer, Glaze has assigned/reassigned numerous additional accounts. In fact, since Glaze arrived in October of 1996, he has assigned Plaintiff over twenty new accounts[3] and has assisted Plaintiff in fostering her career, particularly in the area of export sales. For example, Glaze encouraged Plaintiff's business development efforts by: (1) assigning her export accounts; (2) traveling with Plaintiff internationally to develop her export accounts; (3) funding international trips; (4) directing Jeannie Holmes in Customer Service to <u>send all export account leads to Plaintiff</u>; (5) forwarding export leads from trade shows to Plaintiff; (6) flying Plaintiff's customers to the United States; and (7) paying for her international telephone calls and Federal Express expenses. (Glaze Dep. of Sept. 28, 2000 at 54-55; Pl. Dep. at 156-159.) With this assistance, Plaintiff has been one of the top sales representatives in the Miami division every year since 1996. (Glaze Aff. at ¶ 7.)

### III.   Corporate Expense/Head Count Reduction

In early 1999, after a review of the company's performance, Unisource corporate determined that it needed to reduce its expense at all levels. Based on this decision, on March 11, 1999, Unisource corporate sent the Miami division a letter informing it that it needed to reduce its payroll expenses by $150,000. (Glaze Aff. at ¶ 9, Ex. A.) On March 12, 1999, Glaze sent corporate a letter identifying five employees that the Miami division intended to discharge in order to meet the corporate directive. (Glaze Aff. at ¶ 9, Ex. B.)

### IV.   Tony Gispert's Accounts

On March 17, 1999, contemporaneously with the payroll reduction program, Tony Gispert, a sales representative in Unisource's Miami division, announced that he was retiring effective March 26, 1999. (Glaze Aff. at ¶ 10.) Gispert and Plaintiff were the <u>only</u> two sales representatives in the Miami division who primarily handled export accounts. (<u>Id.</u>) Given the fact that Gispert's retirement would leave the Miami division with only one sales representative

---

[3]   Plaintiff testified that Glaze assigned her the following accounts: Lenatal, Lithographic Printer, A.B. Graphic, All American Paper & Supplies, Color Express, Continental Printing Company, Desber Import Export, Editorial Televisa, Executek Printing & Duplication, Florida Power & Light, Gould Paper Florida, Hispanic Mail Advertising, Multi Graphics & Paper, Nassau Hotel & Restaurant, Paper Corporation of the United States, Precision Art Printing, Saral Publications, Sep's and Neg's Incorporated. (Pl. Dep. at 94-98.) Unisource also assigned Plaintiff AIB, Graphic Works, Inc., Litho Nova International Co., Maison Henri Deschamp, Pedro Ramirez Paper, Pitney Bowes Management Services, and SunSwipe. (Glaze Aff. at ¶ 8.)

primarily handling export accounts, Glaze determined that he needed to hire a replacement.[4] Glaze asked his sales manager, Ready, Gispert and Plaintiff, whom they would recommend for Gispert's position. Gispert and Ready recommended several candidates - Maggie Martinez, Barbara Vega, and Sue Pullen. (Glaze Dep. of Sept. 28, 2000 at 60; Ready Dep. at 8-9.) Plaintiff, recommended Alex Gomez from a competitor. (Pl. Dep. at 145.) In addition, Plaintiff told Glaze that she would not recommend Martinez (Hispanic Cuban female) or Vega (Hispanic Cuban female) because she did not trust them. (Glaze Aff. at ¶ 11; Pl. Dep. at 146.) Despite Plaintiff's rejection of the Hispanic female candidates, Glaze considered interviewing Vega and Martinez for the position. (Glaze Aff. at ¶ 11.) However, Vega declined to interview for the position because she was pleased with her current employment (Vega Aff. at ¶ 4.) and Martinez (a former employee) was not eligible for rehire. (Glaze Aff. at ¶ 11.) Further, Plaintiff's recommendation, Gomez, also declined to interview for the position and Pullen did not have the sales experience for the position. (Id.; Glaze Dep. of Sept. 28, 2000 at 111.)

During the interview process, Ready approached Glaze and proposed giving up his sales manager position, returning to sales and taking over Gispert's accounts. (Glaze Dep. of Sept. 28, 2000 at 110-111; Ready Dep. at 7.) Ready had significant sales experience – over thirty-seven (37) years of paper sales experience including ten (10) years of export experience. (Glaze Aff. at ¶ 12; Ready Dep. at 15-17.) In addition, he had hired, trained and supervised Plaintiff, who primarily handled export accounts. (Ready Dep. at 28-37.) As a result, Glaze considered Ready to be the most qualified candidate for the position. (Glaze Aff. at ¶ 13.) Given the absence of other candidates, Ready's substantial experience and desire to return to sales, and the corporate directive to reduce expenses, Glaze decided to move Ready back into sales and eliminate his position and salary. (Id.) By eliminating Ready's salary, Glaze was also able to retain an employee who was originally on the list for termination - Faith Fray (Jamaican female). (Id.; Glaze Dep. of Sept. 28, 2000 at 62, 68.)

---

[4]   Plaintiff asserts that before Gipsert retired she was told that she would get Gispert's accounts. While Unisource disputes this statement, it is immaterial because Plaintiff admits that when Gispert retired she was not promised the accounts and that she does not know why the accounts were assigned to Ready. (Pl. Dep. at 55-57.) Furthermore, after Gispert announced his resignation, Plaintiff did not express a desire to handle Gipsert's accounts. In addition, Glaze told her that he did not want her handling Gispert's export accounts because if anything happened to her, Glaze would not have an export department. (Pl. Dep. at 63.) Unisource's legitimate, non-discriminatory reason for assigning accounts to Ready is consistent with Unisource's explanation made contemporaneous with the decision to assign Gispert's accounts. (Glaze Aff. at ¶ 13.)

## ARGUMENT AND CITATION OF LEGAL AUTHORITY

### I.    Summary Judgment Standard

Under the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). To defeat a properly supported motion for summary judgment, a plaintiff is obligated to come forward with material and specific facts to establish every essential element of her claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id.

### II.   Unisource Is Entitled To Summary Judgment On Plaintiff's Title VII And FCRA Claims Regarding Disparate Treatment in Assignment of Accounts[5]

A.   Certain of Plaintiff's Claims of Discriminatory Account Assignment Are Untimely.

While it is not clear exactly what accounts Plaintiff claims she did not receive, she ostensibly alleges that she was not assigned certain accounts on a discriminatory basis starting in 1994. As a prerequisite to asserting a claim under Title VII, Plaintiff must exhaust her administrative remedies by first filing a charge of discrimination with the EEOC. See Delaware State College v. Ricks, 449 U.S. 250, 256 (1980). Furthermore, any discrimination claims based upon acts which took place more than 300 days before an EEOC charge was filed are time barred. See 42 U.S.C. § 2000e-5(e); Lieberman v. Miami-Dade Co., No. 99-1714-CIV-King, 2000 WL 1717649, at *1 n.2 (S.D. Fla. Aug. 16, 2000).

It is undisputed that Plaintiff filed her EEOC charge on April 23, 1999. (Pl. Dep. at 126-127.) Therefore, any allegedly discriminatory acts occurring before June 27, 1998, are untimely. Plaintiff apparently alleges that when Unisource employees Michael Altholz, Gene Press, and Larry Press resigned, Unisource assigned their accounts to other sales representatives because of

---

[5]   Title VII case law is applied to FCRA claims. See Paris v. City of Coral Gables, 951 F. Supp. 1584, 1584 (S.D. Fla. 1995). Therefore, the following discussion is applicable to Plaintiff's claims under Title VII and FCRA.

Plaintiff's sex, race, and national origin. (Pl. Dep. at 69, 72-74, 83, 112-113, 116.) It is undisputed that Altholz, Gene Press and Larry Press left Unisource in July of 1994, February of 1995, and June of 1996, respectively. (Glaze Aff. at ¶ 14.) Therefore, any alleged discriminatory assignments regarding these accounts occurred before June of 1998 (more than 300 days before Plaintiff filed her EEOC charge) and are time barred. See Lieberman, 2000 WL 1717649, at *1 n.2. Accordingly, Unisource is entitled to summary judgment as to these claims.

B.  Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination For Any Of Her Discriminatory Account Assignment Claims.

*Assuming, arguendo*, that all of Plaintiff's Title VII claims are timely, the undisputed evidence shows that Plaintiff cannot satisfy her evidentiary burden on any claim as a matter of law. Under Title VII, Plaintiff bears the ultimate burden of proving that Unisource took an adverse action and intentionally discriminated against her based upon her sex, race, and national origin. See International Bhd. of Teamsters v. United States, 431 U.S. 324, 335 n.15 (1977). The establishment of discriminatory motive in cases such as the instant case, where no direct evidence of discrimination is presented, is governed by the requirements for the allocation of burdens and order of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). See U.S. v. Crosby, 59 F.3d 1133, 1135 (11th Cir. 1995). Under McDonnell Douglas, Plaintiff first has the burden of establishing a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802. To establish a prima facie case Plaintiff must show that: (1) she belongs to a protected category; (2) she suffered an adverse employment action; (3) employees outside her protected class were treated more favorably; and (4) she was qualified for the job. See Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (citing cases). Plaintiff cannot satisfy this burden as a matter of law on any of her Title VII or FCRA discrimination claims.

1.  Accounts of Tony Gispert.

With respect to the assignment of Gispert's accounts to Ready, Plaintiff cannot demonstrate the second element of her prima facie case – that she suffered an adverse employment action. Therefore, Plaintiff is unable to demonstrate a prima facie case of sex, race, or national origin discrimination as to this claim. Plaintiff alleges that Unisorce discriminated against her by not assigning her Gispert's accounts. Such a decision clearly does not constitute an adverse job action that gives rise to a claim for sex, race, or national origin discrimination. Courts have defined an

adverse employment action "as a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits – an action which in most cases inflicts direct economic harm." See Simmons v. Neumann, No. 97-8653-CIV-Simonton, 1999 U.S. Dist. Lexis 20664, at *38 (S.D. Fla. Nov. 5, 1999) (citing cases). The failure to assign an employee accounts has been characterized as an "administrative decision[]" and is not an adverse employment action in the context of Title VII. See Wayne v. The Dallas Morning News, 78 F. Supp.2d 571, 584 (N.D. Tex. 1999) (citing cases). Here, the undisputed evidence demonstrates that Plaintiff did not suffer any change in salary, title, benefits, seniority or responsibility as a result of the decision to assign Gispert's accounts. Rather, the reassignment of Gispert's accounts was an administrative decision that does not rise to the level of an adverse job action. Because Plaintiff cannot establish she suffered an adverse employment action, Plaintiff is unable to establish a prima facie case as a matter of law.

2.  Plaintiff's Other Claims of Discrimination In Account Assignment.

Plaintiff likewise cannot demonstrate a prima facie case of discrimination based on Unisource's decision not to assign her every account in the Miami division. While Plaintiff's precise allegations are vague and difficult to ascertain, it appears that she claims she was not assigned: (1) the accounts of Laux and Huempfner, and (2) all other accounts except, web accounts, in the Miami division because of her sex, race, and national origin. (Pl. Dep. at 51, 71, 75, 81-83, 112, 116-117.) Plaintiff cannot establish a prima facie case as to either of these claims.

With respect to the assignment of Laux and Huempfner's accounts, Plaintiff cannot establish the second and fourth elements of her prima facie case: (1) that she was subjected to an adverse action or (2) that she was qualified to handle all of Laux and Huempfner's accounts. First, Plaintiff cannot demonstrate that she suffered an adverse employment action. See Wayne, 78 F. Supp.2d at 584. As described in more detail above, the assignment of accounts is not an adverse action. Moreover, the undisputed evidence reveals that Unisource has assigned Plaintiff accounts previously handled by Laux and Huempfner. (Pl. Dep. at 68.) Unexplainably, Plaintiff asserts that she was subjected to an adverse action in not being assigned Laux and Huempfner's accounts even though she testified that she did not want the types of accounts primarily handled by Laux and Huempfner -- web accounts, and actually returned one of Huempfner's web account to Glaze when he tried to assign it to her. (Pl. Dep. at 86.) Second, Plaintiff was not qualified to handle all of

Laux and Huempfner's accounts. (Glaze Dep. of Sept. 28, 2000 at 14.) Laux and Huempfner handled numerous heat set web sales accounts that Plaintiff admittedly did not have the desire to handle. (Pl. Dep. at 86-87.) Given that, Plaintiff is unable to demonstrate the second or fourth element of her prima facie case as to Laux and Huempfner's accounts.

With respect to Plaintiff's vague allegations about the assignment of other accounts to employees outside her protected category, Plaintiff likewise cannot establish a prima facie case. First and as described above, Plaintiff cannot show that she was subjected to an adverse employment action. To the contrary, Unisource has assigned Plaintiff over twenty new accounts during the last four years of her employment, many of which Plaintiff admits are lucrative. (Pl. Dep. at 94-98.) In addition, Plaintiff is unable to establish the third element of her prima facie case – that employees outside the protected class were treated more favorably. Plaintiff testified that she cannot identify even one new account assigned to an employee outside her protected class because of the comparator's sex, race, or national origin. (Pl. Dep. at 51, 71, 81-83, 112, 116-17); see Jones v. Bessemer Carraway Medical Center, 137 F.3d 1306 (11th Cir. 1998), rev'd in part on other grounds on reh'g, 151 F.3d 1321 (11th Cir.); McKenzie v. EAP Mgmt. Corp., 40 F. Supp.2d 1369, 1375 (S.D. Fla. 1999) (J. Dimitrouleas). In contrast, Plaintiff testified that Unisource assigned her numerous new accounts. (Pl. Dep. at 94-98.) Because Plaintiff cannot point to a single comparator outside her protected class who received these phantom accounts, she cannot establish that employees outside her protected class were treated more favorably in the assignment and reassignment of accounts. Thus, Plaintiff is unable to demonstrate a prima facie case.

C.    Unisource Has Articulated Legitimate, Non-Discriminatory Reasons For Each Assignment Decision.

If a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to rebut the inference by presenting legitimate, non-discriminatory reasons for its decisions. Holifield, 115 F.3d at 1564 (citing cases). This burden is exceedingly light. Id. *Assuming, arguendo*, that Plaintiff could articulate a prima facie case of sex, race, and national origin discrimination with respect to the assignment of accounts, Unisource has offered legitimate, non-discriminatory reasons for its decisions.

       1.    Gispert's Accounts.

As discussed more fully above, Unisource has offered legitimate non-discriminatory reasons for its decision to assign Gispert's accounts to Ready, namely – Glaze made the decision to assign Gispert's accounts to Ready: (1) to eliminate Ready's position and salary; (2) because Glaze considered Ready to be the most qualified candidate - over 37 years of sales experience and 10 years of export sales experience, and (3) because Unisource needed two sales representatives handling export accounts. (Glaze Aff. at ¶ 13.) It is undisputed that Glaze selected who he considered to be the most qualified candidate. Furthermore, the decision to assign Gispert's accounts to Ready enabled Glaze to save the job of Faith Fray (Jamaican female) who was initially targeted for downsizing as part of the corporate directive. (Glaze Aff. at ¶ 13; Glaze Dep. of Sept. 28, 2000 at 62, 68.) Consequently, Unisource has met its burden of producing legitimate non-discriminatory reasons for the challenged decision, and the burden shifts to Plaintiff to show the reasons are pretextual .

2.   Assignment of Accounts.

Unisource has also offered legitimate non-discriminatory reasons for its decision to reassign other accounts. Specifically, Unisource made all account assignment decisions based on numerous factors including the sales representative's: (1) experience; (2) sales skills; (3) current book of accounts; and (4) the geographical proximity of the account. (Glaze Aff. at ¶ 4.) With respect to Laux and Huempfner's accounts, Glaze hired Ware to handle the majority of their accounts because of Ware's heat set web and large account experience and available time to dedicate to these accounts. (Glaze Dep. of Sept. 28, 2000 at 11-15; Glaze Dep. of Oct. 30, 2000 at 80.) Glaze also assigned Laux's sole export account to Plaintiff and assigned one of Huempfner's cold set web accounts to Plaintiff. Plaintiff refused to work Huempfner's former account because she does not want to work web accounts. (Pl. Dep. at 86-87.) Regarding the assignment of additional and unidentified accounts, Unisource made the decision to assign all accounts in accordance with the above-referenced criteria. See Webb v. R&B Holding Co., 992 F. Supp. 1382, 1387 (S.D. Fla. 1998) ("Title VII does not give the Court the power to substitute its own business judgment for that of the employer") (citing cases); see also Lee v. GTE Florida, Inc., 226 F.3d 1249, 1254 (11th Cir. 2000). In fact, in utilizing this criteria, Unisource has assigned Plaintiff over twenty new accounts during the last four year of her employment, including several that she testified were very lucrative.

As is evident, Unisource has satisfied its burden of producing a legitimate, non-discriminatory reason and the burden shifts back to Plaintiff to prove pretext.

D.   Plaintiff Cannot Prove Pretext.

In order to prove pretext, Plaintiff must demonstrate that Unisource's asserted reasons for assigning accounts are false and that intentional discrimination was the real reason for the decision. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515-16 (1993); Rice-Lamar v. City of Fort Lauderdale, 54 F. Supp.2d 1137, 1145-46 (S.D. Fla. 1998) (J. Dimitrouleas), aff'd, No. 97-7007-CIV, 2000 WL 1675595 (11th Cir. Nov. 8, 2000). Here, Plaintiff is unable to contradict any of Unisource's legitimate non-discriminatory reasons. With respect to the assignment of Gispert's accounts, Plaintiff cannot contest the fact that the decision to reassign Gispert's accounts to Ready was based on financial concerns and on the fact that Glaze considered Ready to be the most qualified candidate. Plaintiff admitted that Ready hired her, trained her, and has a lifetime of sales experience. (Pl. Dep. at 54-57.) Furthermore, Plaintiff is unable to contradict the fact that the decision to assign Laux and Huempfner's accounts was based on Ware's experience and available time. Indeed, Plaintiff's assertion that these accounts were assigned discriminatorily, is further undermined by the fact that Plaintiff did not want web sales. (Pl. Dep. at 86-87.) With respect to the assignment of additional accounts, Plaintiff cannot contradict the fact that Unisource applied its business judgment in determining all account assignments. See Elrod v. Sears, Roebuck and Co., 939 F.2d 1466, 1470 (11th Cir. 1991). Perhaps the most telling reason that Unisource's legitimate non-discriminatory reasons are <u>undisputed</u> is because Plaintiff testified that she has <u>no evidence that even one account was assigned based on sex, race, or national origin</u>. (Pl. Dep. at 51, 71, 81-83, 112.)[6]

On this record, Plaintiff simply cannot present <u>any</u> evidence of pretext and summary judgment for Unisource is appropriate. Plaintiff's mere assertion that she was not assigned accounts because of her sex, race, and national origin is nothing but speculation, conjecture and surmise, which, as a matter of law, cannot defeat Unisource's Motion for Summary Judgment.

---

[6]   The only evidence to which Plaintiff can point to establish pretext is that she alleges in 1997 Ready told her that "customers don't like Hispanic women because they are too aggressive." (Pl. Dep. at 109-10). Initially, this comment is time barred by 42 U.S.C. § 2000e-5, but even if this isolated statement is timely, Unisource denies that the statement was made and further, it evidences no discrimination because it is a stray remark made by a person who was not the decision-maker. See Ray v. Tandem Computers, Inc., 63 F.3d 429, 434 (5th Cir. 1995).

See Houser v. Sears, Roebuck & Co., 627 F.2d 756 (5th Cir. 1980). In fact, Plaintiff must demonstrate "significantly probative" evidence on the issue of pretext in order to avoid summary judgment. See Young v. General Foods Corp., 840 F.2d 825, 829 (11th Cir. 1988). Clearly, Plaintiff cannot present any evidence, much less significantly probative evidence, of pretext.

## III. Plaintiff's Equal Pay Act ("EPA") Claim Should Be Dismissed

Plaintiff alleges that women did not receive equal pay for equal work. (Compl. ¶ 10, 21, 29, 37, 49, 57, 65.) This allegation differs from Plaintiff's account assignment claims and therefore, must be addressed under the EPA provisions. For the reasons discussed below, Plaintiff's claim of pay discrimination fails and must be dismissed.[7]

### A. Plaintiff's EPA Claims Prior to December 3, 1997 Are Time Barred.

The EPA provides that an action to recover damages is barred unless commenced within two years after the cause of action accrued. See 29 U.S.C. § 255. Plaintiff alleges in her Amended Complaint that the following Unisource sales representatives in South Florida -- Altholz, Rich Crane, Huempfner, Laux, Larry Press and John Price -- received more compensation than Plaintiff from 1995 to 1997 because of their sex. (Pl. Dep. at 31-42.) Plaintiff, however, filed her Complaint on December 3, 1999. Thus, Plaintiff's EPA claims prior to December 3, 1997 (two years before she filed her Complaint) are time barred and should be dismissed. See Mitchell v. Jefferson Co. Bd. of Educ., 936 F.2d 539, 548 (11th Cir. 1991).[8]

### B. Plaintiff Cannot Establish a Violation of the EPA.

In order to establish a prima facie case of discrimination under the EPA, Plaintiff must present evidence that: (1) she was employed by an establishment subject to the Act; (2) she received wages at a rate less than the rate paid to employees of the opposite sex; (3) she performed work requiring equal skill, effort and responsibility; and (4) she performed work under similar working conditions. See 29 U.S.C. § 206(d)(1); Irby v. Bittick, 44 F.3d 949, 954 (11th

---

[7] The legal analysis for Title VII, FCRA, and the EPA are basically the same. The difference being that Title VII and FCRA also protect pay discrimination based on race and national origin. Diamond v. T. Rowe Price Assoc., 852 F. Supp. 372, 389 (D. Ma. 1994). Given that, the following discussion is applicable to Plaintiff's pay claims under Title VII, FCRA, and the EPA.

[8] As discussed above in II.A., Title VII and FCRA provide that any discriminatory act which took place more than 300 days before an EEOC charge was filed are barred. Therefore, Plaintiff's allegations of discriminatory pay under Title VII and FCRA prior to June 27, 1998 are untimely and must be dismissed.

Pkv011.doc 13

Cir. 1995) (citations omitted). If Plaintiff successfully establishes a prima facie case under the EPA, the burden shifts to the employer to show that the differential in pay is justified under one of the four statutory exceptions to the EPA: a bona fide (1) seniority system; (2) merit system; (3) system based on quantity or quality of production; or (4) system based on any other factor other than sex. See 29 U.S.C § 206(d); Mulhall v. Advance Sec., Inc., 19 F.3d 586, 590 (11th Cir. 1994). If the employer demonstrates one of the statutory exceptions, the pay differential is justified and Plaintiff's EPA is due to be dismissed. See Mulhall, 19 F.3d at 590.

In the instant action, Plaintiff's prima facie case fails because she cannot show that she was paid at a rate less than the rate paid to employees of the opposite sex. In fact, Plaintiff was paid the same commission rate as her comparators. (Glaze Aff. at ¶ 5.) Even if Plaintiff could prove her prima facie case, this does not end the inquiry. Rather, the burden shifts to Unisource to demonstrate a statutory exception. A burden Unisource easily satisfies. It is undisputed that Unisource paid all sales representatives in the Miami division on a 100% commission basis based solely on the quantity of production.[9] (Glaze Aff. at ¶ 5.) It is also undisputed that all sales representatives in the Miami division are paid pursuant to the same commission plan. (Id.)

Courts, without exception, have held that commission pay plans whereby all salespeople are compensated at the same percentage rate for identical units of sale constitute a bona fide system which measures earnings by quantity of production – even if the salespeople ultimately earn different amounts because one sells more than the other. See Bence v. Detroit Health Corp., 712 F.2d 1024, 1029 (6th Cir. 1983); Diamond, 852 F. Supp. at 391. Unisource has established its exemption from the EPA because the commission plan was equally applied to all sales representatives. Thus, Plaintiff's EPA claim should be dismissed.

## IV.    Plaintiff's Retaliation Claims Should Be Dismissed

Plaintiff alleges that Unisource retaliated against her in violation of Title VII, FCRA, and the EPA. After complaining about favoritism, Plaintiff alleges that she was: (1) not assigned

---

[9] Unisource has established a separate commission structure for certain web accounts. (Glaze Aff. at ¶ 6.) Web accounts, however, are not at issue in this case. Plaintiff testified that she is not complaining about the assignment of web accounts. Q: "So your complaint here in regard to assignment of accounts does not deal with web sales?" A: "No Sir." (Pl. Dep. at 87.) Furthermore, even if web accounts were part of this case, Plaintiff testified that she never serviced web accounts. (Pl. Dep. a 86-87.) Therefore, Plaintiff cannot establish a prima facie claim for web accounts. In fact, Plaintiff was given one web account and immediately returned it without performing any work. (Pl. Dep. at 86.)

accounts and assigned accounts of little value; (2) not assigned Gispert's export accounts, and (3) an account was taken away and replaced with an account of little value. (Compl. ¶¶ 21, 41, 69.) To establish a prima facie case, Plaintiff must show that: (1) she engaged in protected activity; (2) an adverse employment action occurred, and (3) the adverse action was causally related to her protected activity. See Wolf v. Coca-Cola Co., 200 F.3d 1337 (11th Cir. 2000); Meeks v. Computer Assoc. Int'l, 15 F.3d 1013 (11th Cir. 1994). Plaintiff cannot establish the second or third elements of her prima facie case of retaliation under any statute.

First, Plaintiff cannot establish an adverse action for her retaliation claim. The anti-retaliation provisions protect employees from not only ultimate employment actions, like hiring and firing, but also substantial employment actions which do not rise to the level of an ultimate employment action. See Wideman v. Wal-Mart Stores, 141 F.3d 1453, 1456 (11th Cir. 1998). Plaintiff's assertion that she was not assigned new or lucrative accounts and assigned accounts of little value in retaliation for her complaints is belied by the undisputed facts. Although Plaintiff was not assigned every new account, Glaze testified and Plaintiff admits that Unisource assigned her over twenty new accounts since 1996; several of those constitute her most lucrative accounts. (Glaze Aff. at ¶ 8; Pl. Dep. at 94-98.) Moreover, it is illogical to characterize the assignment of accounts, even if of little value, as adverse. If anything, these assignments gave her the opportunity to increase her compensation by turning the accounts with little value into productive accounts, which she testified she has done successfully in the past. See Gupta v. Florida Bd. of Regents, 212 F.3d 571, 588 (11th Cir. 2000); (Pl. Dep. at 165.) Simply put, as a result of these account assignments, Plaintiff did not suffer a reduction in salary or responsibility, was not demoted and did not lose benefits. On the contrary, she was assigned some new accounts which have proved lucrative. Similarly, the assignment of Gispert's accounts to Ready and the temporary removal of the AIB account from Plaintiff do not constitute a cognizable adverse action under the retaliation provisions – these actions are not "objectively serious and tangible enough" to alter Plaintiff's pay, title, responsibility or adversely affect her status as an employee. See Gupta, 212, F.3d at 588 (citing cases). Thus, none of the employment actions alleged by Plaintiff constitute an adverse action under the EPA or Title VII.

Second, Plaintiff cannot prove that there is a causal connection between her protected activity and the alleged adverse action. A plaintiff establishes a causal connection by showing

"that the protected activity and the adverse action are not completely unrelated." Meeks, 15 F.3d at 1021 (citations omitted). Plaintiff testified that she has no evidence that any of her purported adverse actions occurred because she had previously complained. (Pl. Dep. at 60-63.) Moreover, the evidence reveals that Unisource assigned her over twenty new accounts and that Glaze provided her substantial assistance. (Pl. Dep. at 87-98; 157-159.) [10]

Even if Plaintiff could establish a prima facie case of retaliation, Unisource has asserted legitimate, non-discriminatory reasons for its decisions. As discussed above, Plaintiff's allegations regarding the assignment of accounts are not true. Furthermore, Glaze assigned Gispert's accounts to Ready: (1) to comply with the corporate expense reduction; (2) the lack of candidates, (3) Ready's substantial experience, and (4) because it was essential that two people handle export accounts. (Glaze Aff. at ¶ 13.) Finally, Unisource removed AIB from Plaintiff's account list because it was suffering from declining sales. (Pl. Dep. at 87-89.) Accordingly, Unisource satisfied its burden and the burden shifts back to Plaintiff to show pretext.

Plaintiff has presented no evidence and admits she has no evidence, aside from her bare allegations of retaliation, that "but for" her complaints about discriminatory assignments she would not have suffered adverse actions. See Wolf, 200 F.3d at 1343; (Pl. Dep. at 61-63, 78, 88, 93-98.) On this record, Plaintiff cannot present any evidence of pretext and summary judgment for Unisource on Plaintiff's retaliation claims is appropriate.

---

[10] Furthermore, the time between Plaintiff's complaint and alleged adverse actions belies any causal connection. Over three years passed between Plaintiff's complaint and Glaze's assignment of Gispert's accounts and removal of AIB from Plaintiff in 1999. See Conner v. Schnuck Markets, Inc., 121 F.3d 1390, 1395 (10th Cir. 1997) (4-month time period between adverse action and protected activity creates no inference of causation); (Pl. Dep. 60-61.) Also, during the three years between Plaintiff's complaint and the reassignment of Gispert's accounts, Unisource assigned Plaintiff over twenty new accounts and supported her business development efforts. (Glaze Aff. at ¶ 8; Pl. Dep. at 94-98; 157-159.) Such beneficial assignments and business assistance undercuts her retaliation claim. Moreover, some of the alleged retaliatory assignments (Altholz and Gene and Larry Press) occurred before she complained. As is obvious, Unisource could not retaliate before Plaintiff engaged in protected activity.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant Unisource's Motion for Summary Judgment, dismiss Plaintiff's claims with prejudice and award costs to Defendant.

HUNTON & WILLIAMS
Attorneys for Unisource Worldwide, Inc.
One Biscayne Tower, Suite 2500
2 South Biscayne Boulevard
Miami, Florida 33131-1802
Telephone: (305) 810-2500
Telefax: (305) 810-2460

By: _____
Juan C. Enjamio
Florida Bar No. 57190

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was mailed to Karen C. Amlong, Esq., Jennifer Daley, Esq., Amlong & Amlong, P.A., 500 Northeast Fourth Street, Second Floor, Fort Lauderdale, Florida 33301-1154 on this 8th day of December, 2000.

By: _____
Juan C. Enjamio

OF COUNSEL:
TROUTMAN SANDERS, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Robert H. Buckler
Georgia Bar No. 092650
Robert C. Stevens
Georgia Bar No. 680142