UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 00-CV-6126

JUDGE WILLIAM P. DIMITROULEAS

MAGISTRATE JUDGE JOHNSON

BETTY ORTEGA,

       Plaintiff,

v.

UNISOURCE WORLDWIDE, INC., a
foreign corporation,

       Defendant.

_____/



### DEFENDANT'S STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE ISSUE TO BE TRIED

In support of its Motion for Summary Judgment and pursuant to Local Rule 7.5 Defendant Unisource Worldwide, Inc. submits the following statement of material facts to which there is no genuine issue to be tried:

1.

Unisource is a paper distributing company that sells and distributes paper and paper products throughout the United States, the Caribbean and Central and South America; Unisource maintains a branch office in South Florida ("Miami division") which services accounts primarily



in South Florida and the Caribbean (export accounts). (Affidavit of John Glaze ("Glaze Aff") at ¶ 2.)

2.

Unisource employs numerous paper sales representatives ("sales representatives"), including Plaintiff in its Miami division and compensates all sales representatives in the Miami division on a 100% commission basis. (Glaze Aff. at ¶ 5; Glaze Dep. of Sept. 28, 2000 at 4.)

3.

The Commission Matrix has been updated throughout the years: March 1995, March 1996, January 1998, and February 1999. All sales representatives are paid 100% commission pursuant to the commission matrix in effect. (Glaze Dep. of Oct. 25, 2000 at 39-40.)

4.

There is a separate commission structure in effect in the Miami division for certain web accounts. However, web accounts are not at issue in this case. (Glaze Dep. of Oct. 25, 2000 at 40; Deposition of Betty Ortega ("Pl. Dep.") at 86-87.)

5.

On or about April 18, 1988, William Ready, Division Manager for Jim Walters Papers, Inc. hired Plaintiff Betty Ortega as a Sales Trainee for Printing Paper and served as Plaintiff's supervisor. (Ready Dep. at 28.)

6.

As her supervisor, Ready provided Plaintiff with on the job sales training and assigned her numerous accounts. Because Plaintiff showed an interest in export accounts, Ready also forwarded all information regarding leads on new export accounts to Plaintiff. (Ready Dep. at 84-87.)7.

In 1993, following a series of corporate acquisitions, Plaintiff became a Unisource Worldwide, Inc. employee in its Miami division. Contemporaneously, Ready assumed the Sales Manager position in Unisource's Miami division and continued directly supervising Plaintiff. (Ready Dep. at 17.)

8.

In October of 1996, John Glaze became the division manager of Unisource's Miami division. As division manager, Glaze indirectly supervised Plaintiff starting in October of 1996 and starting in August of 1998, took over direct supervision of numerous printing paper sales representatives including Plaintiff. (Glaze Aff. at ¶ 7.)

9.

When Glaze became the division manager, Plaintiff approached him and raised three complaints: (1) that sales representative Dennis Laux was too aggressive; (2) there was a theft problem in the warehouse; and (3) Ready favored males over females. (Glaze Dep. of Sept. 28, 2000 at 69.)

10.

Glaze took all of Plaintiff's allegations seriously and asked Plaintiff for additional information in order to address her concerns. Plaintiff provided specific information with respect to her first two concerns and Glaze immediately investigated and resolved those concerns; with respect to her concern about favoritism, Glaze told Plaintiff that favoritism would not be tolerated in any form and that if she offered specifics he would investigate the allegation; Plaintiff refused to offer specifics. (Glaze Dep. of Sept. 28, 2000 at 70-77.)

11.

Glaze was responsible for the assignment of accounts to sales representatives in the Miami division. When Unisource hires new sales representatives it initially assigns them a base of accounts to pursue based on their skill sets, experience, existing business and geographic location; thereafter, sales representatives are required to manage their account base and are also responsible for opening new accounts and expanding their account base through account penetration. (Glaze Aff. at ¶ 3.)

12.

As new accounts are developed and sales representatives leave the company, it is necessary to assign new accounts and reassign existing accounts among sales representatives. (Glaze Aff. at ¶ 4.)

13.

If Unisource determines that the existing sales force can handle the accounts, as opposed to hiring a new sales representative, it divides them among available sales representatives based on a variety of factors: (1) the experience level of the sales representative; (2) the product experience of the sales representative; (3) the sales representative's available time; (4) the geographic location of the new accounts; and (5) the personality fit between the sales representative and account; these factors are extremely important in ensuring that Unisource retains the account. (Glaze Aff. at ¶ 4; Glaze Dep. of Sept. 28, 2000 at 44-54; Ready Dep. at 45-47.) If a sales representative is assigned an account that he/she does not have the time, experience or personality fit to handle, Unisource may lose the account to a competitor. (Glaze Aff. at ¶ 4; Glaze Dep. of Sept. 28, 2000 at 44-54; Ready Dep. at 45-47.)

14.

In December of 1998, Laux and John Huempfner, sales representatives in Unisource's Miami division, resigned. (Glaze Aff. at ¶ 14.)

15.

Laux and Huempfner handled numerous large accounts, including heat set web accounts. (Glaze Dep. of Sept. 28, 2000, at 13.)

16.

Glaze hired Jim Ware to handled the bulk of Laux and Huempfner's accounts because he had substantial experience handling large accounts, including heat set web accounts, like those handled by Laux and Huempfner. (Glaze Dep. of Sept. 28, 2000 at 15; Glaze Dep. of Oct. 30, 2000 at 80.) Ware also had time to dedicate to these demanding accounts. (Glaze Dep. of Sept. 28, 2000 at 15; Glaze Dep. of Oct. 30, 2000 at 80.)

17.

Glaze assigned some of Laux and Huempfner's accounts to other sales representatives including assigning Laux's sole export account and one of Huempfner's accounts (a web account) to Plaintiff based on Plaintiff's experience in export sales and the geographical location of Huempfner's account. (Glaze Dep. of Oct. 30, 2000 at 73-76, 80.)

18.

Plaintiff refused to handle Huempfner's web account. (Pl. Dep. at 86.)

19.

Since Glaze arrived in October of 1996, he has assigned or reassigned over twenty new accounts to Plaintiff including: A.B. Graphic, All American Paper & Supplies, Associated Insurance Broker, Color Express, Continental Printing Company, Desber Import Export,

Editorial Televisa, Executek Printing & Duplication, Florida Power & Light, Gould Paper Florida, Graphic Works, Inc., Hispanic Mail Advertising, Lenatal, Lithographic Printer, Litho Nova International Corp., Maison Henri Deschamp, Multi Graphics & Paper, Nassau Hotel & Restaurant, Paper Corp. of the United States, Pedro Ramirez, Pitney Bowes Management Services, Precision Art Printing, Saral Publications, Sep's and Neg's, Inc. and SunSwipe. (Glaze Aff. at ¶ 8; Pl. Dep. at 94-98.)

20.

Glaze encouraged Plaintiff's business development efforts by: (1) assigning her export accounts; (2) traveling with Plaintiff internationally to develop her export accounts; (3) funding international trips; (4) directing Jeannie Holmes in Customer Service to <u>send all export account leads to Plaintiff</u>; (5) forwarding export leads from trade shows to Plaintiff; (6) flying Plaintiff's customers to the United States for open house functions; (7) paying for her international telephone calls; and (8) paying for her Federal Express expenses. (Glaze Dep. of Sept. 28, 2000 at 54-55; Pl. Dep. at 156-159.)

21.

Plaintiff has been one of the top sales representatives in the Miami division every year since 1996. (Glaze Aff. at ¶ 7.)

22.

In early 1999, after a review of the company's performance, Unisource corporate determined that it needed to reduce its expense at all levels. Based on this decision, on March 11, 1999, Unisource corporate sent the Miami division a letter informing it that it needed to reduce its payroll expenses by $150,000. (Glaze Aff. at ¶ 9, Ex. A.)

23.

On March 12, 1999, Glaze sent corporate a letter identifying five employees that the Miami division intended to discharge in order to meet the corporate directive. (Glaze Aff. at ¶ 9, Ex. B.)

24.

On March 17, 1999, Tony Gispert, a sales representative in Unisource's Miami division, announced that he was retiring effective March 26, 1999. (Glaze Aff. at ¶ 10.)

25.

Gispert and Plaintiff were the only two sales representatives in the Miami division who primarily handled export accounts. (Glaze Aff. at ¶ 10.)

26.

Given the fact that Gispert's retirement would leave the Miami division with only one sales representative primarily handling export accounts, Glaze determined that he needed to hire a replacement; Glaze asked his sales manager, Ready, Gispert and Plaintiff, who they would recommend for Gispert's position. (Glaze Aff. at ¶ 13; Glaze Dep. of Sept. 28, 2000 at 60; Ready Dep. at 8-9.) Gispert and Ready recommended several candidates - Maggie Martinez, Barbara Vega, and Sue Pullen. (Glaze Aff. at ¶ 13; Glaze Dep. of Sept. 28, 2000 at 60; Ready Dep. at 8-9.)

27.

Plaintiff, recommended Alex Gomez from a competitor; in addition, Plaintiff told Glaze that she would not recommend Martinez (Hispanic Cuban female) or Vega (Hispanic Cuban female) because she did not trust them. (Glaze Aff. at ¶ 11; Pl. Dep. at 145-46.)

28.

Despite Plaintiff's rejection of the Hispanic female candidates, Glaze considered interviewing Vega and Martinez for the position; however, Vega declined to interview for the position because she was pleased with her current employment situation and Martinez (a former employee) was not eligible for rehire. (Glaze Aff. at ¶ 11; Affidavit of Barbara Vega ("Vega Aff.") at ¶ 4.)

29.

Plaintiff's recommendation, Gomez, declined to interview for the position and Pullen did not have the sales experience for the position. (Glaze Aff. at ¶ 11; Glaze Dep. of Sept. 28, 2000 at 111.)

30.

During the interview process, Ready approached Glaze and proposed giving up his sales manager position, returning to sales and taking over Gispert's accounts. (Glaze Dep. of Sept. 28, 2000 at 110-11; Ready Dep. at 7.)

31.

Ready has significant sales experience – over thirty-seven (37) years of paper sales experience including ten (10) years of export experience. (Glaze Aff. at ¶ 12; Ready Dep. at 15-17.)

32.

Ready hired, trained and supervised Plaintiff, who primarily handles export accounts. (Ready Dep. at 28, 33, 35-37.)

33.

Glaze considered Ready to be the most qualified candidate for Gispert's accounts. (Glaze Aff. at ¶ 13.)

34.

Given the absence of other candidates, Ready's substantial experience and desire to return to sales, the corporate directive to reduce expenses, and the need to have two sales representatives handling export accounts, Glaze decided to move Ready back into sales and eliminate Ready's position and salary. (Glaze Aff. at ¶ 13.)

35.

By eliminating Ready's position and salary, Glaze also was able to retain an employee who was originally on the list for termination - Faith Fray (Jamaican female). (Glaze Aff. at ¶ 13; Glaze Dep. of Sept. 28, 2000 at 62, 68.)

> HUNTON & WILLIAMS
> Attorneys for Unisource Worldwide, Inc.
> One Biscayne Tower, Suite 2500
> 2 South Biscayne Boulevard
> Miami, Florida 33131-1802
> Telephone: (305) 810-2500
> Telefax: (305) 810-2460
>
> By: _____
> Juan C. Enjamio
> Florida Bar No. 57190

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing **DEFENDANT'S STATEMENT OF MATERIAL FACTS TO WHICH THERE IS NO GENUINE ISSUE**

**TO BE TRIED** was mailed to Karen C. Amlong, Esq., Jennifer Daley, Esq., Amlong & Amlong, P.A., 500 Northeast Fourth Street, Second Floor, Fort Lauderdale, Florida 33301-1154 on this __8th__ day of December, 2000.

By: *Juan C. Enj----*
Juan C. Enjamio

OF COUNSEL:

TROUTMAN SANDERS, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Ph: (404) 885-3000
Robert H. Buckler
Georgia Bar No. 092650
Robert C. Stevens
Georgia Bar No. 680142