UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 00-CV-6126

JUDGE WILLIAM P. DIMITROULEAS

MAGISTRATE JUDGE JOHNSON

NIGHT BOX
FILED
DEC - 8 2000
CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

BETTY ORTEGA,

    Plaintiff,

v.

UNISOURCE WORLDWIDE, INC., a
foreign corporation,

    Defendant.
_____/

### NOTICE OF FILING AFFIDAVIT IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Unisource Worldwide, Inc., files this notice of filing the attached affidavit of John Arthur Glaze in support of its Motion for Summary Judgment.

    HUNTON & WILLIAMS
    Attorney for Unisource Worldwide, Inc.
    One Biscayne Tower, Suite 2500
    2 South Biscayne Boulevard
    Miami, Florida 33131-1802
    Telephone: (305) 810-2500
    Telefax: (305) 810-2460

By: _/s/ Juan C. Enjamio_
    Juan C. Enjamio
    Florida Bar No. 571910

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed to Karen C. Amlong, Esq., Jennifer Daley, Esq., Amlong & Amlong, P.A., 500 Northeast Fourth Street, Second Floor, Fort Lauderdale, Florida 33301-1154 on this ___ day of December, 2000.

By: _____
Juan C. Enjamio

OF COUNSEL:
Robert H. Buckler
Georgia Bar No. 092650
Robert C. Stevens
Georgia Bar No. 680142

TROUTMAN SANDERS, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Ph: (404) 885-3000
Fax: (404) 885-3900

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 00-CV-6126

JUDGE WILLIAM P. DIMITROULEAS

MAGISTRATE JUDGE JOHNSON

BETTY ORTEGA,

        Plaintiff,

v.

UNISOURCE WORLDWIDE, INC., a
foreign corporation,

        Defendant.

_____/

## AFFIDAVIT OF JOHN ARTHUR GLAZE

Having personally appeared before the undersigned Notary Public, duly authorized to administer oaths in the State of Florida, and having been duly sworn, John Arthur Glaze states and deposes as follows:

1.

I, John Arthur Glaze, am of majority age, competent to testify and make this affidavit based on personal knowledge of facts I know to be true and correct.

2.

I have worked for Unisource Worldwide, Inc. since November 15, 1982. Unisource maintains a branch office in Miramar, Florida, which services accounts primarily in South Florida and the Caribbean. In October of 1996, I became Vice President and Division Manager of Unisource's Miami division.

3.

In this capacity, I was responsible for the assignment of accounts to sales representatives in the Miami division. Sales representatives in the Miami division primarily sell paper and paper products to customers in South Florida and the Caribbean. When Unisource hires a new representative in South Florida, it initially assigns them a base of accounts to pursue based on their skill sets, experience, existing business and geographic location. Each representative is required to manage their account base, open new accounts and expand their account base through account penetration.

4.

As new accounts are developed and representatives leave the company and are replaced, it is necessary to assign new accounts and reassign existing accounts among representatives. If Unisource decides to spread the accounts around to available representatives, as opposed to hiring a new sales representative, it considers a variety of factors, including: (1) the experience level of the representative; (2) the product experience of the representative; (3) the representative's available time; (4) the geographic location of the new accounts; and (5) the personality fit between the representative. These factors are extremely important in ensuring that Unisource retains the account. If a sales representative is assigned an account that he/she does not have the time, experience or personality fit to handle, Unisource may lose the account to a competitor.

5.

All paper sales representatives, including Betty Ortega, work on a 100% commission basis based solely on the quantity of production. However, during each sales representative's first two years of employment, Unisource pays them a small salary as they develop their sales base. Thereafter, they are paid 100% commission.

6.

Unisource also established a commission structure for certain web accounts. Sales representatives John Huempfner, Robert Peterson and Dennis Laux sold web paper and were paid according to the web paper commission structure for those accounts only.

7.

I indirectly supervised Plaintiff from October of 1996 until August of 1998 and directly supervised Plaintiff from August 1998 until June 2000. Betty Ortega is a sales representative in the Miami division servicing between 50-60 active accounts including approximately 30 export accounts. Since 1996, Plaintiff has consistently been one of Unisource's top sellers in the Miami division.

8.

As division manager, I have assigned or reassigned over twenty new accounts to Plaintiff since October of 1996 including: A.B. Graphic, All American Paper & Supplies, Associated Insurance Broker, Color Express, Continental Printing Company, Desber Import Export, Editorial Televisa, Executek Printing & Duplication, Florida Power & Light, Gould Paper Florida, Graphic Works, Inc., Hispanic Mail Advertising, Lenatal, Lithographic Printer, Litho Nova International Corp., Maison Henri Deschamp, Multi Graphics & Paper, Nassau Hotel & Restaurant, Paper Corp. of the United States, Pedro Ramirez, Pitney Bowes Management Services, Precision Art Printing, Saral Publications, Sep's and Neg's, Inc. and SunSwipe.

9.

On March 11, 1999, I received a memorandum from Paul Stewart directing the Miami division to reduce its payroll by $150,000. The memorandum I received is attached hereto as Exhibit A. On March 12, 1999, I sent Paul Stewart a letter identifying five employees that the

Miami division intended to discharge in order to comply with the request for staff reductions. The letter I sent is attached hereto as Exhibit B.

10.

On March 17, 1999, Tony Gispert announced his retirement effective March 26, 1999. At that time, Gispert and Plaintiff were the only two sales representatives who handled significant export accounts in the Miami division.

11.

After Gispert announced his retirement, I asked Plaintiff, Bill Ready and Tony Gispert whom they would recommend for Gispert's position. I received several recommendations. Although Plaintiff said that she did not trust two candidates, Barbara Vega (Hispanic Cuban female) and Maggie Martinez (Hispanic Cuban female), I contacted both for interviews. Barbara Vega declined to interview for the position and Maggie Martinez (a former employee) was not eligible for rehire. Further, another candidate, Sue Pullen, did not have the sales experience for the position.

12.

During the interview process, Ready approached me and asked to give up his sales manager position, return to sales, and take over Gispert's accounts. Ready had over ten years of export experience and over thirty-seven years of paper sales experience. In addition, he had hired, trained and supervised Plaintiff.

13.

Given the lack of candidates, Ready's experience and desire to return to sales, the corporate directive to reduce expenses, and the need to have two sales representatives handling export accounts, I decided to move him back into sales and eliminate his position and salary. I selected the candidate I found was most qualified. By eliminating Ready's position and salary, I

was also able to retain an employee who was originally on the list for termination - Faith Fray (Jamaican female).

14.

In addition to Tony Gispert, several other sales representatives have left the Miami division since 1994. In July of 1994, Michael Altholz left Unisource. Gene Press retired in February of 1995. Larry Press resigned in June of 1996. Dennis Laux and John Huempfner left Unisource in December of 1998.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

Executed on this _8_ day of December, 2000.

John Arthur Glaze

Sworn to and subscribed before me this _8TH_ day of December, 2000 by

John Arthur Glaze, who is personally known to me or has produced _KNOWN TO ME_ as identification.

_MARIA C. IZQUIERDO_
(Type, print or stamp name)
Notary Public

Commission No. _CC 840987_

My Commission Expires:

_MAY 27, 2003_



MARIA C. IZQUIERDO
MY COMMISSION # CC 840987
EXPIRES May 27, 2003

**COPY**   **UNISOURCE Florida**

# Memo

**Confidential**

To: Drew Perkins

Fr: Paul Stewart

CC: Cecil McClary, Brad Girk, Mike Simpson, Chris Alex

Date: March 11, 1999

Re: Expense Reduction Requirements

---

After our meeting in Berwyn this week, which included a review of our current performance and our annualized run rate, it was evident that an expense reduction was necessary at all levels (including Berwyn). We reviewed each market area and determined how many people needed to be removed from our payrolls (using an average cost of $50k per employee) to meet our goals.

Listed below is your expense reduction requirement by dollars ($) and employees (#). You must submit back to me by Monday, March 15th, the name, Social Security # and annual salary of each employee to be eliminated. Obviously, if you can get to the dollars ($) with fewer highly paid employees then this would be acceptable. You may also take credit for any termination since January 1, 1999 as long as a replacement was not hired.

As of today, all requests for new hires are cancelled and must be resubmitted to me for approval. The Human Resources department has been instructed not to set up any new employees as of today, March 11, 1999.

This may sound severe but it is necessary to accomplish our goals. Cecil and I will be meeting in Atlanta on Tuesday to review these lists. Please be prompt and accurate.

| **Division** | **$ Reduction ($000)** | **# Employees ($50K)** |
|---|---|---|
| Miami | 150 | 3 |

Memorandum

1340 ~~ ~~~~ Parkway
Miami, FL 33025

Tel 954-456-0700
Fax 954-456-0000

DATE: March 12, 1999
TO: Paul Stewart
FROM: John Glaze and Drew Perkins
RE: Expense Reduction Requirements

In response to your request for staff reductions to meet our expense reduction goal of $150,000, we submit the following:

| Employee Name | S.S. Number | Salary | Comments |
|---|---|---|---|
| Carlos Pedroso | 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 | $36,063 | Eliminate Driver- Driver returned to work and violated Company Policy and D.O.T. Regulations. Will not replace |
| Lois Ochs | 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 | $42,408 | Eliminate Position- Reduce to one Liaison, remaining Liaison would need to be Printing Paper Liaison as our business mix is 63% Printing. Also, Lois has several "verbal" warnings for poor performance. |
| Faith Fray | 09)-44-8795 | $31,298 | Recent new hire, very low productivity. Will eliminate One Position in Credit Department (has 3 people, could be done with 2). More senior employees from credit will assume Faith's responsibilities. |
| Juan Ferrara | 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 | $31,590 | Eliminate Position- Recent new-hire. Consolidate runs and eliminate route. |
| Jean Jean | 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 | $25,900 | Replace his Night-crew position with an employee from the Day-shift. The Day-shift position is eliminated. Employee has multiple counselings in file, low productivity, and high error rate. |
| Total | | $167,197 | |

If we can provide additional detail or explanation, please advise. Thank you.