UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-CV-6126
JUDGE WILLIAM P. DIMITROULEAS
MAGISTRATE JUDGE JOHNSON

BETTY ORTEGA,

    Plaintiff,

v.

UNISOURCE WORLDWIDE, INC., a
foreign corporation,

    Defendant.
_____/

**NIGHT BOX**
**FILED**

JAN 2 ... 20

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Although Plaintiff's Response to Defendant's Motion for Summary Judgment ("Response") asks the Court to deny Summary Judgment, that Response points to no evidence in the record which would justify such a ruling. To the contrary, the Response amounts to nothing more than a continuation of Plaintiff's personal disappointment that she did not receive certain accounts upon their reassignment and her speculation, conjecture, and surmise that Unisource discriminated against Plaintiff based on her status as a Hispanic female with every account assignment. Despite her broad and vague allegations of discriminatory treatment, Plaintiff has abandoned several claims[1] and only contests Defendant's Motion For Summary Judgment ("Motion") on three issues. First, Plaintiff argues that Unisource committed an equal pay violation under the Equal Pay Act ("EPA"), Title VII and the FCRA. Second, Plaintiff argues that Unisource discriminated against her based on her status as a Hispanic female in the

---

[1] Plaintiff's discrimination claim relies solely on her status as a Hispanic female. Plaintiff has abandoned her straight sex, race, and national origin claims under both Title VII and FCRA and has proceeded on a proffered intersectional claim based on her status as a Hispanic female. By limiting her response, she has waived her right to argue discrimination based on straight sex, race, and national origin. (Plaintiff's Response n.1.)



assignment of Tony Gispert's accounts in April of 1999 and the assignment of one account from Dennis Laux and John Huempfner in December of 1998.[2] Third, Plaintiff argues that Unisource retaliated against her for engaging in alleged protected activity. The undisputed evidence demonstrates that Unisource is entitled to Summary Judgment on all claims. Unisource paid its sales representatives pursuant to a single commission matrix applicable to all sales accounts at issue in this action and assigned all sales accounts based on legitimate non-discriminatory reasons – namely. Unisource's financial concerns and sales representatives' experience, skills, available time, and geographic proximity to accounts. In addition, Plaintiff cannot demonstrate a causal connection between her alleged adverse action and her alleged protected activity and Unisource has non-discriminatory reasons for all of its employment decisions. Simply put, Plaintiff has failed to present any competent, admissible evidence of disputed material facts. For these reasons, and as described in more detail below, Unisource's Motion should be granted as to all of Plaintiff's claims.

## ARGUMENT AND CITATION OF AUTHORITIES

### I. Plaintiff Cannot Establish an Equal Pay Violation

In Plaintiff's zeal to continue pursuing her frivolous equal pay claim, Plaintiff's Response seeks to manufacture an issue of fact regarding a claim that is not before this Court. Despite Plaintiff's recognition that Unisource paid all sales representatives in its Miami division pursuant to the same commission structure for the sales accounts at issue in this case. Plaintiff's Response attempts to recast her claim regarding equal pay by resurrecting a claim for accounts that she admitted she did not want and which are unequivocally not part of this case – web accounts. Such an argument not only contradicts her prior deposition testimony, but it is also inconsistent with the claims and course of discovery in this action.

The record evidence in this action reveals that Unisource has two commission structures in its Miami division that strictly apply to different types of accounts. (See Defendant's Brief in

---

[2] With respect to Laux and Huempfner's accounts, Plaintiff points to two accounts she feels she should have been assigned: (1) Original Impressions from Huempfner and (2) Colonial Press from Laux. (Plaintiff's Expert Report at 3, attached as Ex. 19 to Pl. Stmt. of Disputed Material Facts.) Ostensibly, Plaintiff has abandoned her other account assignment claims since she does not pursue them in her Response. Even if Plaintiff has not abandoned these claims, the allegations regarding all other claims are untimely as they all occurred more than three years before Plaintiff filed her lawsuit – Larry Press in June of 1996, Gene Press in February of 1996, and Michael Altholz in July of 1994. Moreover, and assuming, that Plaintiff is still pursuing these time barred claims, Unisource's summary judgment brief details that these claims should be dismissed on their merits as well.

2

Support of its Motion for Summary Judgment at 3, n.1.) Specifically, the Miami division has one commission structure for certain web accounts and a separate commission structure that applies to all other sales accounts in the Miami division. (Id.) Based on Plaintiff's own deposition testimony, however, she did not want web accounts and web accounts are not at issue in this case. (Pl. Dep. at 86-87.) Indeed, when Unisource attempted to give Plaintiff a web account she immediately returned the account because she does not get involved in web sales. (Id.) Plaintiff's July 25, 2000 deposition testimony regarding web sales is as follows:

> Q: "Are there any web sales accounts that you believe should have been assigned to you, but were assigned to someone else?"
>
> A: "No Sir, I don't get involved in web sales at all."
>
> Q: "So your complaint here in regard to assignment of accounts does not deal with web sales?"
>
> A: "No Sir."

(Pl. Dep. at 87.) As is obvious, Plaintiff did not want web sales, and web sales, by Plaintiff's own admission, are not part of this action. Now, after the close of discovery and after Unisource filed its Motion for Summary Judgment, Plaintiff seeks to manufacture an issue of fact by offering a belated and disingenuous errata sheet and sham affidavit. As described in detail in Unisource's Motions to Strike, filed contemporaneously herewith, such blatant attempts to create an issue of fact where one does not exist, are outrageous and should be stricken from the record. See, e.g., Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000) (affirming striking of sham affidavit and errata sheet and award of sanctions); Van T. Junkins & Assoc. v. U.S. Indus., 736 F.2d 656, 657 (11th Cir. 1984) (striking sham affidavit); Eckert v. Kemper Fin. Svcs., Inc., 1998 WL 699656, at *5, No. 95 C 6831 (N.D. Ill. 1998) (striking sham errata sheet). Because Plaintiff did not want web accounts and because they are not at issue in this case, Plaintiff's web account equal pay claims are moot.

With respect to the accounts at issue in this action, Plaintiff's Response does not and cannot even attempt to rebut the undisputed record evidence that Unisource paid all sales representatives in the Miami division on a 100% commission basis based solely on the quantity of production and that all sales representatives in the Miami division are paid pursuant to the same commission plan. (Glaze Aff. at ¶ 5.) For these reasons, and as described in more detail in Defendant's summary judgment brief, the Court should dismiss Plaintiff's equal pay claims.

## II. Plaintiff Has Failed To Prove That Unisource Discriminated Against Her In The Assignment Of Accounts

Plaintiff likewise fails to prove that Unisource discriminated against her in the assignment of accounts. In order to prove discrimination in the assignment of accounts, Plaintiff must either demonstrate (1) direct evidence of discrimination or (2) must satisfy the requirements for the allocation of burdens and order of proof set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973), through circumstantial evidence. The ultimate burden of proof of intentional discrimination based on Plaintiff's status as a Hispanic female rests at all times with Plaintiff. See Reeves v. Sanderson Plumbing Products, 530 U.S. 133, 120 S. Ct. 2097, 2109 (2000). The uncontested record evidence in the instant action demonstrates that Plaintiff cannot satisfy her burden of discrimination through direct or circumstantial evidence as a matter of law.

### A. Plaintiff Has Failed To Demonstrate Direct Evidence Of Discrimination

Despite Plaintiff's argument to the contrary, Plaintiff cannot establish direct evidence of discrimination. Direct evidence is "evidence, which if believed, proves existence of fact in issue without inference or presumption." Burrell v. Board of Trustees of Georgia Military College, 125 F.3d 1390, 1393 (11th Cir. 1997) (quoting case). Direct evidence consists of "only the most blatant remarks, whose intent could be nothing other than to discriminate . . . ." Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989). No such remark or evidence exists in the instant action. Plaintiff bases her entire direct evidence case on her assertion that Bill Ready made a single comment to her in 1997 that "customers don't like Hispanic women because they are too aggressive." (Plaintiff's Response at 14.) Unisource denies that this statement was made, but assuming, *arguendo*, that this statement was made, it is not direct evidence of discrimination.

Initially, Plaintiff mischaracterizes the alleged statement. The correct quotation should read that Ready told Plaintiff, "I've been told that customers don't like Hispanic women because they are too aggressive." (Pl. Dep. at 109-10.) This distinction reveals that Ready was relaying a comment he had heard from a Unisource customer; not his own thoughts about the preferences of Unisource's customers. Thus, this comment is not direct evidence of discrimination.

In addition, this statement, even if it occurred, does not prove that Ready discriminated against Plaintiff.[3] To the contrary, a further inferential step must be drawn from the statement –

---

[3]   Plaintiff implies that her allegations of discriminatory account assignment and disparate pay constitute

4

that because customers don't like Hispanic women Ready did not assign Plaintiff accounts – for the statement to suggest that Ready discriminated against Plaintiff. Assuming the decision was made, however, this does not mean that Ready failed to assign Plaintiff accounts because he felt that customers did not like her. See Schoenfeld v. Babbit, 168 F.3d 1257, 1267 (11th Cir. 1999) (where multiple inferences may be drawn from a statement the evidence is circumstantial and not direct). In fact, the undisputed record evidence reveals the opposite. Unisource and Ready have assigned Plaintiff numerous new accounts since 1996, including accounts which Plaintiff admits are lucrative. (Pl. Dep. at 94-98.) Moreover, Plaintiff's alleged direct evidence is further belied by the undisputed fact that Glaze, with Ready's assistance, actively pursued Hispanic female candidates, including Barbara Vega, to handle Gispert's accounts. notwithstanding Plaintiff's opposition to Hispanic female candidates. (Pl. Dep. at 146; Vega Aff. at ¶ 4.)

Finally, this alleged statement is not direct evidence for the independent reason that there is no requisite "nexus" between the statement and the account assignment decisions at issue. See Burrell, 125 F.3d at 1394 n.7. First, Ready was not the decision maker with respect to the assignment of Gispert's accounts – Glaze assigned those accounts. (Glaze Aff. at ¶ 13.) Further, the statement was not made in the context of the account assignment decisions of Gispert, Laux and Huempfner. Rather, Plaintiff testified that Ready made this statement in 1997, (Pl. Dep. at 110), well outside the one-year statute of limitations and more than one year before Unisource made the account assignments decisions at issue – Laux and Huempfner's two accounts were assigned after December of 1998 and Gispert's accounts were assigned in April of 1999. (Glaze Aff. at ¶¶ 10, 13, 14.) As is evident, there is no "nexus" between Ready's alleged comment in 1997 and the account assignment decisions in late 1998 and 1999. See Burrell, 125 F.3d at 1394 n.7. Thus, even assuming that this statement occurred, it is time-barred, not relevant to the decisions at issue, and therefore, not direct evidence of discrimination.

B.   Plaintiff Has Failed To Demonstrate Circumstantial Evidence of Discrimination

---

continuing violations. The law is clear to the contrary. For Plaintiff's discriminatory account assignment claims, each account assignment is a "discrete act." See Wayne v. The Dallas Morning News, 78 F. Supp.2d 571, 581 (N.D. Tex. 1999). Thereby, any alleged act of discrimination occurring 365 days before Plaintiff filed her charge is not actionable. See 42 U.S.C. § 2000e-5(e) (300 day statute of limitations); Fla. Stat. § 760.11.1 (365 day statute of limitations). With respect to Plaintiff's claims of pay disparity, the law is clear that in Fair Labor Standards Act cases each paycheck is a discrete individual violation beginning a new statute of limitations. See Knight v. Columbus, 19 F.3d 579, 582 (11th Cir. 1994). Thus, Plaintiff's pay claim is not a continuing violation and any claim based on a paycheck received outside the two year statute of limitations is barred. See id.; 29 U.S.C. § 255.

Plaintiff has also failed to demonstrate circumstantial evidence of discrimination. Assuming Plaintiff could demonstrate a prima facie case of discrimination based on her status as a Hispanic female,[4] she cannot establish that Unisource's non-discriminatory reasons for assigning the accounts previously handled by Gispert and Laux and Huempfner – namely Unisource's financial concerns and sales representatives' experience, skill, available time, and geographic proximity to accounts – were pretextual. In order to prove pretext, Plaintiff must demonstrate that Unisource's asserted reasons for failing to assign her certain accounts were not the true reasons and that the real reason was discrimination. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515-16 (1993). The ultimate burden of proof of intentional discrimination based on Plaintiff's status as a Hispanic female rests at all times on Plaintiff. Burdine v. Texas Dep't of Comm. Affairs, 450 U.S. 248, 252-53 (1981). Moreover, the Eleventh Circuit has recently cautioned plaintiffs attempting to establish pretext: when attempting to rebut an employer's legitimate reasons, plaintiffs must "meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000) (discussing that, provided the legitimate reasons are ones that might motivate a reasonable employer, a "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer"). Here, Plaintiff is simply quarreling with the wisdom of Unisource's legitimate business decisions regarding the assignment of Gispert and Laux and Huempfner's accounts. For these reasons, and as described below, Plaintiff has failed to establish pretext.

1. Accounts of Tony Gispert

Plaintiff has failed to demonstrate that Unisource's legitimate non-discriminatory reasons for assigning the bulk of Gipsert's accounts to Ready are pretextual. Simply put, Plaintiff cannot contradict the fact that Glaze made the decision to assign the bulk of Gispert's accounts to Ready: (1) to eliminate Ready's sales manager position and salary as part of a corporate directive; (2) because Glaze considered Ready to be the most qualified candidate – over 37 years of sales experience and 10 years of export sales experience; and (3) because Unisource wanted

---

[4] Unisource does not concede that Plaintiff failed to demonstrate a prima facie case of discrimination with respect to the assignment of Gispert, Laux and Huempfner's accounts. However, because Plaintiff has utterly failed to demonstrate that Unisource's legitimate non-discriminatory reasons for the account assignments are pretextual, Unisource only addresses Plaintiff's pretext arguments herein. Unisource refers the Court to its summary judgment brief for its argument regarding Plaintiff's failure to demonstrate a prima facie case of discrimination.

two sales representatives handling export accounts. (Glaze Aff. at ¶ 13.) Although Plaintiff questions Unisource's reasons, she fails to offer support in the record. Instead, Plaintiff only makes bald and unsubstantiated arguments questioning Unisource's business judgment. (Plaintiff's Response at 17-18), a tactic that is insufficient to rebut Unisource's legitimate assignment decisions. See Chapman, 229 F.3d at 1030; see also Elrod v. Sears, Roebuck and Co., 939 F.2d 1466 (11th Cir. 1991).[5]

Moreover, in the face of Plaintiff's meritless pretext arguments, the record evidence supports Unisource's legitimate non-discriminatory reasons for assigning Gispert's accounts to Ready. First, it is undisputed that Unisource eliminated Ready's position and assigned him Gispert's accounts in part because of the corporate directive to reduce the Miami payroll by $150,000. (Glaze Aff. at ¶ 9, 13.) In fact, this decision saved the job of Faith Fray, a Jamaican female employee, who was originally slated for termination pursuant to the payroll reduction directive. (Glaze Aff. at ¶¶ 9-13.) Second, the record evidence reveals that Glaze considered Ready's 37 years of sales experience and more than 10 years of export experience in assigning the accounts to Ready, (Glaze Aff. at ¶ 12), a fact that Plaintiff contests with her own belief that she was the most qualified for the accounts. (Plaintiff's Response at 17-18.) It is well-settled that Plaintiff's "perception of [herself] . . . is not relevant. It is the perception of the decision maker which is relevant." Webb v. R&B Holding Co., Inc., 992 F. Supp. 1382, 1387 (S.D. Fla. 1998) (quoting cases). Finally, the record evidence demonstrates that Unisource wanted to employ two sales representatives handling export accounts because, as Glaze told Plaintiff, "if [the only export sales representative] get[s] hit by a bus and get[s] killed, [Unisource] won't have an export department." (Pl. Dep. at 63.) A reason that Plaintiff cannot and does not offer competent evidence to rebut. Instead, Plaintiff's pretext argument merely questions the wisdom of this legitimate reason – once again, a tactic insufficient to rebut Unisource's credible assignment decisions. See Chapman, 229 F.3d at 1030. Clearly, Plaintiff cannot prove pretext.

---

[5] Plaintiff's primary pretext argument, that Unisource's financial concerns were not realized by eliminating Ready's position and placing him in Gispert's sales position, is not only another attempt to question Unisource's business judgment, but it is also belied by common sense. In response to the corporate directive to reduce costs and in an effort to maintain two employees selling export accounts, Unisource eliminated Ready's position and moved him into Gispert's sales position. Although Unisource guaranteed Ready that he would be paid a minimum of his previous salary if his sales did not meet that threshold, the guarantee only applied if he did not meet that threshold. As a result of that decision, Unisource did not have to pay Ready's former salary and Gispert's commissions. It only had to pa the greater of the two, saving the rest.

7

2.  Accounts of Laux and Huempfner

Plaintiff has likewise failed to demonstrate that Unisource's legitimate business decisions for reassigning the accounts of Laux and Huempfner are pretextual. Rather, Plaintiff once again simply questions the business judgment of Unisource assigning accounts to Jim Ware and not assigning accounts to her. See Chapman, 229 F.3d at 1030; Pl. Response at 17-18.) Plaintiff's alleged discrimination with respect to Laux and Huempfner apparently is that Unisource did not assign her one account of Laux – Continental Press – and one account of Huempfner – Original Impressions. (Plaintiff's Expert Report at 3, attached as Ex. 19 to Pl. Stmt of Disputed Material Facts.) Plaintiff, however, has not offered any evidence to contest Unisource's legitimate non-discriminatory reason that it reassigned these accounts like all accounts – based on the sales representative's experience, skill, available time, and geographic proximity to accounts. See Webb, 992 F. Supp. at 1387; (Glaze Aff. at ¶ 4.) Indeed, Plaintiff testified under oath that she has no evidence that Unisource discriminated against her in assigning Laux and Huempfner's accounts. (Pl. Dep. 68, 71-72.) Moreover, with respect to Laux's account, Continental Press, that account is a web account which Plaintiff undisputedly did not want and is not at issue in this action. (Id.; Pl. Dep. at 86-87.) In fact, Unisource gave Plaintiff one of Huempfner's web accounts and Plaintiff immediately returned it. (Id.) In addition to Plaintiff's lack of pretext evidence the record evidence reveals that Unisource assigned her over twenty new accounts, including lucrative accounts, over the past three years applying the same criteria. (Pl. Dep. at 94-98.) Succinctly stated, the fundamental fallacy with Plaintiff's argument is that she believes that she should be assigned every account in the Miami division, otherwise it is discrimination. Unfortunately for Plaintiff, "[i]t is more than well-settled that an employee's subjective belief that [she] suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason." Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996). In recognition of this fundamental principle, federal courts have overwhelmingly and without exception held that a plaintiff's subjective belief, speculation, and conclusory allegations are insufficient to withstand summary judgment. See, e.g., Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Simply put, Plaintiff cannot show pretext on any account assignment claim.

**III.    Plaintiff Cannot Establish A Claim For Retaliation**

Plaintiff also fails to provide the Court with evidence to support her claims for retaliation in violation of Title VII, the FCRA and the EPA. As described in detail in Unisource's summary judgment brief, Plaintiff cannot establish a prima facie case of retaliation because Plaintiff cannot demonstrate that there is any causal connection between the alleged adverse actions in her Amended Complaint and her alleged protected activity. Ostensibly recognizing the lack of support for her retaliation claim, Plaintiff, in her Response, virtually ignores the retaliation she pled in her Amended Complaint and asserts, for the first time, new actions which she alleges are adverse.[6] Namely, Plaintiff asserts that Unisource's inaction with respect to her complaints[7] and Unisource's Minimum GTM program constitute adverse actions. (Pl. Response at 20.) Neither of Plaintiff's newly minted allegations constitute adverse actions under the applicable statutes. The undisputed record evidence reflects that Unisource did take action with respect to Plaintiff's complaints – Unisource thoroughly investigated all of Plaintiff's allegations and determined that her discrimination complaint was unsubstantiated. (George Dep. at 44-45.) Furthermore, the application of an objective sales program to all sales representatives in the Miami division does not constitute an adverse action. Unisource simply counseled all sales representatives at the mid-point of the year who were not on target to meet the minimum $350,000. (Glaze Aff. at ¶ 5, attached hereto as exhibit A.)

Even assuming that Plaintiff can establish a prima facie case of retaliation with respect to these two new allegations, Unisource can offer legitimate business reasons and Plaintiff cannot demonstrate pretext. See EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176 (11th Cir. 2000) (discussing that it is not the court's role to second guess business decisions). First, the undisputed record evidence reveals that Unisource did take action on Plaintiff's complaints. It conducted thorough investigations and determined that Plaintiff's allegations were

---

[6] Unisource's summary judgment brief demonstrates that Plaintiff's alleged adverse actions in her Amended Complaint are not causally connected to her alleged protected activity. Other than to reiterate her bare retaliation allegations from her Amended Complaint, Plaintiff failed to respond to Unisource's arguments regarding this alleged retaliation. Accordingly, Plaintiff abandoned those claims. See Reidt v. County of Trempealeau, 975 F.2d 1336, 1341 (7th Cir. 1992). To the extent that Plaintiff has not abandoned these retaliation claims, Plaintiff failed to show a nexus between her alleged adverse actions and her protected activity. Instead, Plaintiff presumes that Unisource retaliated against her every time it did not assign her accounts. Her empty assertion is made more egregious by the fact that after she complained, Unisource assigned her over twenty new accounts, many of which she admits are lucrative. (Pl. Dep. at 94-98.) For these reasons, Plaintiff's retaliation claims are likewise meritless.

[7] The evidence Plaintiff cites for this proposition only addresses Unisource's investigation of Plaintiff's harassment allegations in 1999. (George Dep. at 44-45.) Plaintiff conveniently ignores the undisputed evidence

unsubstantiated. (George Dep. at 44-45.) Next, with respect to Unisource's Minimum GTM Program, Unisource corporate established this program and applied it equally to all sales representatives company-wide, including all sales representatives in Unisource's Miami division. (Glaze Aff. at ¶ 2.) The program establishes objective sales goals and standards by which to measure all sales representatives, requiring all printing paper sales representatives to have $350,000 in gross profit by the end of the calendar year. (Glaze Aff. at ¶ 4.) Based on this objective measure, Unisource counseled all sales representatives who were not on target to meet the minimum sales numbers as of July 2000 (the mid-point of the year). (Id. at ¶ 5.) In its Miami Division, Unisource counseled the following printing paper sales representatives – Plaintiff, Stanley Kurceba (white male), John Price (white male), Kathleen Healy (white female), Robert Gennell (white male), and Robert Lerner (white male). (Id. ¶ 6.) Unisource counseled each of these printing paper sales representatives in July or August 2000 in accordance with the Minimum GTM Program because they were not on target to have $350,000 in gross profit by the end of the year. (Id. at ¶ 6.) Of these individuals, Plaintiff is the only one who has engaged in protected activity. (Id. at ¶ 7.) Simply because Plaintiff engaged in protected activity, does not bind the hands of Unisource and prohibit it from counseling Plaintiff consistently with other sales representatives not meeting their sales goals. See Holified v. Reno, 115 F.3d 1555, 1567 (11th Cir. 1997). Because Unisource has established a legitimate non-discriminatory reason for its decision and because Plaintiff cannot establish pretext, Plaintiff's retaliation claim fails.

## CONCLUSION

For the foregoing reasons, Unisource respectfully requests that the Court grant its Motion for Summary Judgment, dismiss Plaintiff's claims with prejudice and award costs to Defendant.

HUNTON & WILLIAMS
Attorneys for Unisource Worldwide, Inc.
One Biscayne Tower, Suite 2500
2 South Biscayne Boulevard
Miami, Florida 33131-1802

By: _____
Juan C. Enjamio
Florida Bar No. 571910

---

which shows that Unisource thoroughly investigated all of her complaints and took prompt remedial action where warranted. (Glaze Sept. 28, 2000, Dep. at 69-77; McClary Dep. at 9-10, Pl. Ex. 22 to Pl. Stmt of Disputed Facts.)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing **DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was mailed to Karen C. Amlong, Esq., Jennifer Daley, Esq., Amlong & Amlong, P.A., 500 Northeast Fourth Street, Second Floor, Fort Lauderdale, Florida 33301-1154 on this 24th day of January, 2001.

By: _____
/Juan C. Enjamio

OF COUNSEL:
TROUTMAN SANDERS, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Robert H. Buckler
Georgia Bar No. 092650
Robert C. Stevens
Georgia Bar No. 680142

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 00-CV-6126

JUDGE WILLIAM P. DIMITROULEAS

MAGISTRATE JUDGE JOHNSON

BETTY ORTEGA,

        Plaintiff,

v.

UNISOURCE WORLDWIDE, INC., a
foreign corporation,

        Defendant.

_____/

## AFFIDAVIT OF JOHN ARTHUR GLAZE

Having personally appeared before the undersigned Notary Public, duly authorized to administer oaths in the State of Georgia, and having been duly sworn, John Arthur Glaze states and deposes as follows:

1.

I, John Arthur Glaze, am of majority age, competent to testify and make this affidavit based on personal knowledge of facts I know to be true and correct.

2.

Unisource's corporate offices established a Minimum GTM program and applied it equally to all sales representatives company-wide, including all sales representatives in Unisource's South Florida offices.

3.

The program establishes objective sales goals and standards by which to measure all sales representatives.

4.

The program requires all printing paper sales representatives to sell $350,000 in gross profit in the 2000 calendar year.

5.

Based on this objective measure, Unisource counseled all sales representatives in South Florida who were not on target to meet the minimum gross profit numbers as of July 2000 (the mid-point of the year).

6.

In South Florida, Unisource counseled the following printing paper sales representatives – Betty Ortega (Hispanic female), Stanley Kurceba (white male), John Price (white male), Kathleen Healy (white female), Robert Gennell (white male), and Robert Lerner (white male). Each of these printing paper sales representatives were counseled in July or August 2000 in accordance with the Minimum GTM Program because they were not on target to produce $350,000 in gross profit by the end of the year.

7.

Of these individuals, Betty Ortega is the only one who has complained about discrimination.

8.

Unisource did not discipline Betty Ortega as a result of the Minimum GTM program. Rather, it counseled Ms. Ortega and all sales representatives at the mid-point of the year in South Florida who were not on target to meet the minimum $350,000 in gross profit.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

Executed on this 23RD day of January, 2001.

John Arthur Glaze

Sworn to and subscribed before me
this 23RD day of January 2001 by
John Arthur Glaze, who is personally known
to me or has produced FL DRIVERS LICENSE
as identification.    # 64 20 - 461 - 63 - 329 - 0

PETER D. BERTOLD
(Type, print or stamp name)
Notary Public

Commission No. _____

My Commission Expires:
Notary Public, Cobb County, Georgia
My Commission Expires June 29, 2003