UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 00-CV-6126

JUDGE WILLIAM P. DIMITROULEAS

MAGISTRATE JUDGE JOHNSON

BETTY ORTEGA,

    Plaintiff,

v.

UNISOURCE WORLDWIDE, INC., a
foreign corporation,

    Defendant.

_____/



## DEFENDANT UNISOURCE WORLDWIDE, INC.'S MOTION TO STRIKE THE ERRATA SHEET OF PLAINTIFF BETTY ORTEGA AND BRIEF IN SUPPORT

COMES NOW Unisource Worldwide, Inc. ("Unisource"), and hereby files this Motion to Strike the Errata Sheet of Plaintiff Betty Ortega and Brief in Support.

### INTRODUCTION

On December 3, 1999, Plaintiff Betty Ortega ("Ortega") filed the above-styled action against Unisource alleging discriminatory assignment of accounts and pay based on her sex, race, and national origin and in retaliation for complaining about the assignment of accounts. On July 25, 2000, Unisource deposed Plaintiff under oath before a certified court reporter. (Deposition of Betty Ortega, relevant pages attached hereto as exhibit A.) The Court Reporter transcribed Plaintiff's deposition, sent a copy to Unisource and made the deposition available for reading on



August 1, 2000. (Affidavit of Edward Varkonyi ("Varkonyi Aff.") at 3, attached hereto as exhibit B.) Thereafter, the parties continued to engage in discovery, with discovery closing in this matter on December 1, 2000.

On December 8, 2000, after the close of discovery, Unisource timely filed its Motion for Summary Judgment, which relies in most part on Plaintiff's sworn deposition testimony, and served Plaintiff with a copy of the Motion and attachments, including a copy of her deposition. Almost one month after Unisource filed its Motion for Summary Judgment, Plaintiff's counsel, during the week of January 5, 2001, contacted the Court Reporter who recorded Plaintiff's deposition the previous July and requested, for the first time, an Errata Sheet. (Varkonyi Aff. at 4.) Then, on January 16, 2001, Plaintiff filed her response to Defendant's Motion for Summary Judgment. In support of her response and in a blatant attempt to survive summary judgment through wholesale changes to her prior sworn deposition testimony, Plaintiff submitted an Errata Sheet to her deposition of July 25, 2000. (See Plaintiff Betty Ortega's Errata Sheet, attached hereto as exhibit C.)[1] Specifically, Plaintiff's errata sheet seeks to add claims to her lawsuit and change facts which affirmatively and unequivocally contradict her prior sworn deposition testimony. Such actions by Plaintiff – waiting to the close of discovery, reviewing Defendant's Motion for Summary Judgment and then changing her prior sworn testimony in an attempt to survive summary judgment – are outrageous and should not be permitted. Simply put, the substantive changes to Plaintiff's sworn testimony are material and go well beyond the scope of

---

[1] Plaintiff submitted her Errata Sheet contemporaneously with her response to Unisource's Motion for Summary Judgment on January 16, 2001. Rule 30(e) of the Federal Rules of Civil Procedure requires a deponent to review and make any limited changes to the transcript within thirty (30) days after it is made available for review. Fed. R. Civ. P. 30(e). Here, Plaintiff did not submit her proposed changes to her deposition until more than thirty (30) days after she received a copy of her deposition from Defendant as an attachment to Unisource's Motion for Summary Judgment. Therefore, Plaintiff's errata sheet is due to be stricken for the independent reason that it comes too late.

2

those permitted by Federal Rule of Civil Procedure 30(e) and are due to be stricken. For these reasons, and as described in more detail below, Unisource's Motion to Strike should be granted and Unisource should be awarded its fees and costs incurred in bringing this Motion.

## ARGUMENT AND CITATION OF AUTHORITY

Federal Rule of Civil Procedure 30(e) allows deponents to make limited changes to their deposition testimony within 30 days after being notified that the deposition transcript is available for review. Fed. R. Civ. P. 30(e). Rule 30(e) does not, however, allow a deponent to alter her prior testimony taken under oath. Greenway v. International Paper, 144 F.R.D. 322 (W.D. La. 1992). In Greenway, a deponent submitted an errata sheet that substantially changed several answers to key questions. Id. at 323. Specifically, the deponent changed several answers from "No" to "Yes" and added case-strengthening language at the end of many answers. Id. at 323-24. International Paper moved to strike the testimony changes, arguing that Greenway's alterations went further than the changes allowed by Rule 30(e). Id. at 323. The Court ordered the changed responses stricken and held that while Rule 30(e) allows a deponent to correct substantive errors made by the court reporter in recording a deponent's testimony, a deponent may not alter prior testimony given under oath. Id. at 325. "The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." Id.

In this case, like Greenway, Plaintiff has submitted an errata sheet that substantially changes and materially alters Plaintiff's testimony under oath by changing answers to key questions. Specifically, Plaintiff changed the following:

Q:  Have you ever done web sales?

3

Original answer under oath in deposition

A:  No, sir.

New answer in errata sheet

A:  No, sir. I have not handled any domestic account from which the customer only bought web paper. However, on one occasion, I sold rolls of paper to Le Natal, an export account. I also have sold NCR rolls of paper to Tiger Business Forms since 1995 and continue to do so.

\* \* \*

Q:  Are there any web sales accounts that you believe should have been assigned to you, but were assigned to someone else?

Original answer under oath in deposition

A:  No, sir. I don't get involved in web sales at all.

New answer in errata sheet

A:  No, sir, unless they are included in the accounts that I claim were not assigned to me. I don't get involved in web sales all because except for Continental I have not been assigned those large accounts at Unisource.

\* \* \*

Q:  So your complaint here in regard to assignment of accounts does not deal with web sales?

Original answer under oath in deposition

A:  No, sir.

New answer in errata sheet

A:  No sir, unless they are included in the accounts that I claim were not assigned to me.

(Ex. A at 86-87; Ex. C at 1-2.)

As is set forth above, Plaintiff did much more than simply correct transcription errors that may have occurred during Plaintiff's deposition. Plaintiff's changes attempt to negate her prior

testimony. As justification for her changes, Plaintiff does not contend that they are due to an error in transcription. Rather, Plaintiff simply states that she is altering her testimony in order to clarify her testimony. (Ex. C.) To the contrary, Plaintiff completely changed her testimony with respect to web sales accounts.

The foregoing clearly demonstrates that, after the close of discovery and after Unisource has filed its Motion for Summary Judgment, Plaintiff is now trying to alter facts and add additional claims to this action through changes to her deposition testimony. Such alterations are substantive and materially alter her sworn testimony. These changes go well beyond the scope of the changes contemplated by Rule 30(e). See Walker v. Yellow Freight Sys., Inc., 1999 WL 955364, No. Civ. A. 98-3565, at *17 (E.D. La. 1999) (holding that Rule 30(e) does not allow a plaintiff to alter prior sworn testimony); Coleman v. Southern Pac. Transp. Co., 997 F. Supp. 1197, 1203 (D. Ariz. 1998) (discrediting deposition testimony directly contradicted by errata sheet); Eckert v. Kemper Financial Servs., Inc., 1998 WL 699656, at *5, No. 95 C 6831 (N.D. Ill. 1998); Lewis v. Virginia Baptist Homes, Inc., 1997 WL 102524, at *2 n.1, No. Civ. A. 95-0071-C (W.D. Va. 1997) (suppressing plaintiff's attempts to alter her deposition testimony); Rios v. Welch, 856 F. Supp. 1499, 1502 (D. Kan. 1994) ("It is the court's belief that a plaintiff is not permitted to virtually rewrite portions of a deposition . . . simply by invoking the benefits of Rule 30(e) . . . a deposition is not a 'take home examination' and an 'errata sheet' will not eradicate the import of previous testimony taken under oath"), aff'd, 67 F.3d 1543 (10th Cir. 1995); Rios v. Bigler, 847 F. Supp. 1538, 1556 (D. Kan. 1994) (holding that the court will consider only those changes which clarify the deposition, and not those which materially alter it); S.E.C. v. Parkersburg Wireless, L.L.C., 156 F.R.D. 529, 535 (D. D.C. 1994) (noting modern trend in which courts disallow a party to make any substantive changes in deposition testimony). Simply

put. Plaintiff's attempt to negate her prior sworn testimony by submitting a contradictory and self-serving errata sheet goes far beyond the type of "changes" permitted by Rule 30(e) and the cases arising thereunder.

Moreover, Plaintiff's attempt to substantively change her prior sworn deposition testimony after Unisource filed its Motion for Summary Judgment is particularly egregious. Courts have consistently held that plaintiffs cannot substantively change their prior sworn deposition testimony (after defendant has filed a summary judgment motion) in an attempt to survive summary judgment. See, e.g., Welch, 856 F. Supp. at 1502 ("It is this court's belief that a plaintiff is not permitted to virtually rewrite portions of a deposition, *particularly after the defendant has filed a summary judgment motion*, simply by invoking the benefits of Rule 30(e)") (emphasis added), aff'd, 67 F.3d 1543 (10th Cir. 1995). In the instant action, Plaintiff has done just that. When asked during her deposition whether web sales were part of this action, Plaintiff responded that they were not.

> Q:	So your complaint here in regard to the assignment of accounts does not deal with web sales?
>
> A:	No, sir.

(Ex. A at 87.) Almost six months later and a month after Defendant filed its Motion for Summary Judgment, Plaintiff has submitted an errata sheet which substantively changes her testimony on this matter. Her altered testimony reads as follows:

> Q:	So your complaint here in regard to the assignment of accounts does not deal with web sales?
>
> A:	No, sir, unless they are included in the accounts that I claim were not assigned to me.

(Ex. A at 87, Ex. C at 2.) Plaintiff's substantive changes with respect to web sales in the face of Unisource's Motion for Summary Judgment is nothing more than a disingenuous attempt to circumvent the letter and spirit of Rule 56 of the Federal Rules of Civil Procedure. A result the rules do not allow.

> Congress did not, however, write Rule 30(e) so plaintiffs could create sham issues of fact to defeat summary judgment. Affording parties the opportunity to exploit Rule 30(e) by making wholesale changes to their previous sworn deposition testimony would render the Rule 56 summary judgment procedures a nullity. In other words, if every plaintiff could completely negate damaging testimony after having thirty days to review and discuss that testimony with his or her attorney, no summary judgment motion could ever be granted. Instead, parties would simply change critical answers, or add new facts never mentioned in the deposition, and thereby avoid summary judgment. When Congress wrote Rule 30(e), it certainly did not intend to render Rule 56 meaningless. . . . To read Rule 30(e) in this manner would allow Rule 30(e) to swallow Rule 56 and Congress never intended that result.

Eckert v. Kemper Fin. Svcs., Inc., 1998 WL 699656, at *5, No. 95 C 6831 (N.D. Ill. 1998); see also Margo v. Weiss, 1998 WL 2588, at *7, No. 96 CIV. 3842 (MBM) (S.D.N.Y. 1998) (refusing to consider errata sheets or affidavits which contradict prior sworn testimony), aff'd, 213 F.3d 55 (2d Cir. 2000) (plaintiffs cannot defeat summary judgment by submitting affidavits recanting earlier testimony or by submitting errata sheets long after their depositions are taken). Accordingly, this Court should strike Plaintiff's errata sheet so that Plaintiff, like other witnesses, must make her case based on the actual testimony she gave under other, and not on the "better answers" she came up with after Defendant filed its Motion for Summary Judgment.[2] For these

---

[2] Courts have also held that striking an errata sheet that contradicts prior sworn deposition testimony for the purpose of defeating a summary judgment motion is consistent with the well established rule against sham affidavits. See Coleman, 997 F. Supp. at 1201 (to the extent that the errata sheet is governed by the Ninth Circuit's rule regarding the creation of an issue of fact through a party's contradictory testimony, the errata sheet is a sham); Eckert, 1998 WL 699656, at * 6 (disregarding errata sheet as contradicting prior testimony is "consistent with the Seventh Circuit's rule prohibiting deponents from using affidavits to contradict previous deposition testimony and thereby creating sham issues of fact"). Striking Plaintiff's errata sheet in the instant matter is likewise consistent with the Eleventh Circuit's rule against sham affidavits. See, e.g., Van T.Junkins & Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 636 (11th Cir. 1984).

reasons, the Court should grant Unisource's Motion to Strike and award Unisource its costs and fees incurred in filing this motion. See Margo, 213 F.3d at 63-65 (awarding attorney's fees and costs moving party because plaintiff's counsel unreasonably filed affidavits, delayed deposition errata sheets and supplemental interrogatory answers which contradicted plaintiff's prior testimony).

## CONCLUSION

Plaintiff has submitted an errata sheet that substantially alters several answers to key questions posed by Unisource at Plaintiff's deposition. Depositions are not "take home examinations," (particularly a take home exam which Plaintiff did not complete until after Unisource filed its Motion for Summary Judgment), and Plaintiff's changes go well beyond the scope of those permitted by Rule 30(e). For these reasons, Unisource respectfully requests that Plaintiff's errata sheet be stricken in its entirety and that the costs and fees incurred in filing this motion be awarded to Unisource.

       HUNTON & WILLIAMS
       Attorneys for Unisource Worldwide, Inc.
       One Biscayne Tower, Suite 2500
       2 South Biscayne Boulevard
       Miami, Florida 33131-1802

       By: _____
        Juan C. Enjamio
        Florida Bar No. 571910

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing **DEFENDANT UNISOURCE WORLDWIDE, INC.'S MOTION TO STRIKE THE ERRATA SHEET OF PLAINTIFF BETTY ORTEGA AND BRIEF IN SUPPORT** was mailed to Karen C. Amlong,

Esq., Jennifer Daley, Esq., Amlong & Amlong, P.A., 500 Northeast Fourth Street, Second Floor, Fort Lauderdale, Florida 33301-1154 on this ____ day of January, 2001.

By: _____
Juan C. Enjamio

OF COUNSEL:

TROUTMAN SANDERS, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308-2216
Robert H. Buckler
Georgia Bar No. 092650
Robert C. Stevens
Georgia Bar No. 680142

9

```
 1  also made with other people doing web sales?
 2       A.   I wasn't involved.  I don't know.
 3       Q.   Have you ever done web sales?
 4       A.   No, sir.
 5       Q.   Have you ever asked for web sales
 6  accounts?
 7       A.   I was given one when John Huempfner
 8  left.
 9       Q.   So one of Huempfner's accounts you were
10  given when he left?
11       A.   Right, it was $14.
12       Q.   Was it web sales?
13       A.   It was web sales and then I turned it in
14  the minute I walked into the place.
15       Q.   You did what?
16       A.   I turned it back into the company.
17       Q.   It was assigned to you and you gave it
18  back to the company?
19       A.   Yes, sir.
20       Q.   And what is the name of it?
21       A.   It was Continental, Continental Printing
22  in Hialeah.
23       Q.   And other than that one instance when
24  they gave you Continental Printing as an account,
```

1  have you ever done any web sales since?
2       A.   No, sir.
3       Q.   Are there any web sales accounts that you
4  believe should have been assigned to you, but were
5  assigned to someone else?
6       A.   No, sir.  I don't get involved in web
7  sales at all.
8       Q.   So your complaint here in regard to
9  assignment of accounts does not deal with web sales?
10      A.   No, sir.
11      Q.   Now, you also mentioned an account that
12 you said you felt was taken away from you, AIB?
13      A.   Yes, sir.
14      Q.   Now, ultimately that account was given
15 back to you, correct?
16      A.   Yes, sir.  The customer called John
17 Glaze.
18      Q.   And how long were you without the AIB
19 account?
20      A.   About six months.
21      Q.   And prior to the AIB account being taken
22 away from you, did John Glaze counsel with you about
23 the declining volume of sales with AIB?
24      A.   Yes, he did.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 00-CV-6126
JUDGE WILLIAM P. DIMITROULEAS
MAGISTRATE JUDGE JOHNSON

BETTY ORTEGA,

    Plaintiff,

v.

UNISOURCE WORLDWIDE, INC., a
foreign corporation,

    Defendant.

_____/

### AFFIDAVIT OF EDWARD VARKONYI

Having personally appeared before the undersigned Notary Public, duly authorized to administer oaths in the State of Florida, and having been duly sworn, Edward Varkonyi, registered professional reporter and Notary Public for the State of Florida At-Large, states and deposes as follows:

1.

I am an independent contractor retained by H. Allen Benowitz and Associates a Veritext Company.

2.

On July 25, 2000, I stenographically recorded the deposition of Betty Ortega in the matter of Betty Ortega vs. Unisource Worldwide, Inc., case number 00-6126-CIV-DIMITROULEAS United States District Court Southern District of Florida, Ft. Lauderdale Division.

3.

On August 1, 2000, I mailed via United Parcel Services ("UPS") a copy of the transcript and bill to Defendant Unisource Worldwide, Inc. attorney Robert H. Buckler at Troutman Sanders LLP, 600 Peachtree Street, N.E., Suite 5200, Atlanta, Georgia, 30308.

4.

Immediately after I sent a copy of the transcript to Unisource Worldwide, Inc.'s attorney Robert H. Buckler, I made the transcript available for reading.

5.

During the week of January 5, 2001, the attorney for Betty Ortega, Jennifer Daley, Esq., with Amlong & Amlong P.A., contacted me via telephone and for the first time requested an errata sheet for the deposition of Betty Ortega which was taken July 25, 2000. Thereafter, I forwarded a copy of an errata sheet to Ms. Daley.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NAUGHT.

Executed on this 19th day of January, 2001.

_____
Edward Varkonyi

Sworn to and subscribed before me this 19th day of January, 2001 by Edward Varkonyi, who is personally known to me or has produced _____ as identification.

Amy Nissengale
(Type, print or stamp name)
Notary Public

Commission No. CC 543897

My Commission Expires: March 31, 2004

2

Jan-17-01 05:21pm From-HUNTON AND WILLIAMS +3058102460 T-733 P.02/04 F-173

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 00-6126-Civ-Dimitrouleas/Johnson

BETTY ORTEGA,

Plaintiff,

vs.

UNISOURCE WORLDWIDE, INC., a foreign corporation,

Defendant.

_____/

## Errata Sheet for the
## July 25, 2000 Deposition of Betty Ortega

| Page | Line | Reads | Should Read | Reason for Change |
|---|---|---|---|---|
| 86 | 3 | "No sir." | "No, sir. I have not handled any domestic account from which the customer bought only web paper. However, on one occasion, I sold rolls of paper to Le Natal, an export account. I also have sold NCR rolls of paper to Tiger Business Forms since 1995 and continue to do so." | Clarifies the answer. I previously understood the question to refer only to large domestic web accounts. |
| 87 | 6-7 | "No, sir. I don't get involved in web sales at all." | "No sir, unless they are included in the accounts that I claim were not assigned to me. I don't get involved in web sales all because except for Continental I have not been assigned those large accounts at Unisource." | Clarifies the answer in light of my previous testimony on pages 46-47, lines 22-24 and 1-4, and page 86 lines 5 through 22. |

Page 1 of 3

Jan-17-01 05:21pm  From-HUNTON AND WILLIAMS  +3058102460  T-733  P.03/04  F-173

| Page | Line | Reads | Should Read | Reason for Change |
|------|------|-------|-------------|-------------------|
| 87 | 10 | "No, sir." | "No sir, unless they are included in the accounts that I claim were not assigned to me." | Clarifies the answer in light of my previous testimony on pages 46-47, lines 22-24 and 1-4, and page 86 lines 5 through 22. |
| 155 | 20 | "I went in with how the account distribution was ...." | "I went in and explained to him how the account the account distribution was ...." | Clarifies the answer. |

Case Number: 00-6126-CIV-Dimitrouleas

## Signature page for Errata Sheet
## July 25, 2000 Deposition of Betty Ortega

**BETTY ORTEGA**

L:\CPHRM\HISTORY\001322A\MSC.129