IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case Number: 00-6126-CIV-DIMITROULEAS/JOHNSON

BETTY ORTEGA,

    Plaintiff,

vs.

UNISOURCE WORLDWIDE, INC., a
foreign corporation,

    Defendant.

_____/

NIGHT BOX
FILED

FEB   9 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

**Plaintiff's Response to Defendant Unisource Worldwide, Inc.'s
Motion to Strike Paragraph 27 of Betty Ortega's
Unsworn Declaration, Under Penalty of Perjury,
Pursuant to 28 U.S.C. § 1746 in Support of Plaintiff's Response to
Motion for Summary Judgment and Brief in Support and
Defendant Unisource Worldwide, Inc.'s Motion to Strike
the Errata Sheet of Plaintiff Betty Ortega and Brief in Support and
Supplemental Memorandum in Support of Defendant's
Motion to Strike the Errata Sheet of Plaintiff Betty Ortega,
Motion to Strike Paragraph 27 of the Unsworn Declaration
of Betty Ortega, and Motion for Summary Judgment**

Plaintiff, Betty Ortega, responds to Defendant Unisource Worldwide, Inc.'s

Motion to Strike Paragraph 27 of Betty Ortega's Unsworn Declaration, Under

Penalty of Perjury, Pursuant to 28 U.S.C. § 1746 in Support of Plaintiff's

Response to Motion for Summary Judgment and Brief in Support ("Motion to





Strike Paragraph 27") **[DE 74]** and Defendant Unisource Worldwide, Inc.'s Motion to Strike the Errata Sheet of Plaintiff Betty Ortega and Brief in Support ("Motion to Strike Errata Sheet") **[DE 73]** and Supplemental Memorandum in Support of Defendant's Motion to Strike the Errata Sheet of Plaintiff Betty Ortega, Motion to Strike Paragraph 27 of the Unsworn Declaration of Betty Ortega, and Motion for Summary Judgment ("Supplemental memoranda")**[DE 77]** as follows:

## Introduction: the Context of the Controversy

Plaintiff, who is employed by defendant as a salesperson of its paper produces, has filed this action claiming that defendant discriminated against her because she was a Hispanic female (as evidenced by her supervisor, who assigned accounts, telling her that "customers don't like Hispanic women because they are too aggressive"), paid her less than male employees doing equal work, and retaliated against her after she spoke out against discrimination.[1]  Plaintiff sues pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e, et seq.

_____

    1    As noted in her response to defendant's motion for summary judgment, plaintiff has abandoned her claims based **solely** on her Hispanic ethnicity and national origin (Counts IV, V, VIII and IX of the Amended Complaint) and limited her discrimination claims to gender discrimination (Counts III and VII) on a "sex-plus" theory  based on gender **and** her Hispanic origins. See Jefferies v. Harris County Community Action Ass'n, 615 F.2d 1025, 1034 (5th Cir. 1980).

("Title VII")(Counts VII and X), the Florida Civil Rights Act, Chapter 760, Florida Statutes ("FCRA")(Count III and VI), and the Equal Pay Act, 29 U.S.C. § 206(d)(Counts I and II).

On December 8, 2000, defendant filed its motion for summary judgment **[DE 51]** and supporting documents **[DE 52, 53, 55]**, including a notice of filing deposition transcripts in support of its motion for summary judgment **[54]**. On December 19, 2000, plaintiff moved to enlarge time within which to respond because discovery was outstanding and, additionally, because she had not completed obtaining the transcripts she needed to respond. **[DE 56]** Plaintiff's response and supporting documents were filed under seal on January 16, 2001. **[DE 64, 65, 66].** Thereafter, defendant not only replied **[DE 71]**, but also filed an unauthorized twenty-one page response to plaintiff's statement of material facts **[DE 72]**,[2] and filed the instant motions and supplemental memoranda.

Defendant's Motion to Strike Paragraph 27 seeks to strike a paragraph from plaintiff's declaration in opposition to defendant's summary judgment motion on the ground that it "seeks to add claims to this lawsuit" – and specifically "a claim for disparate pay for and disparate assignment of web

_____

[2] Plaintiff has moved to strike the response as unauthorized. See Plaintiff's Motion to Strike Defendant's Response to Plaintiff's Statement of Disputed Facts filed over certificate of service dated February 5, 2001. **[DE Number Pending]**

accounts" – "which Plaintiff unequivocally testified in her deposition was not a part of this action."  Motion to Strike Paragraph 27, at p. 2.  Defendant also seeks to strike the errata sheet to plaintiff's deposition on three grounds: **One**, that the errata sheet is untimely, **Two**, that plaintiff's errata sheet improperly altered the substance of her testimony and, **Three**, that the changes contained in plaintiff's errata sheet are prohibited by the "Eleventh Circuit's rule against sham affidavits."

Because the two motions are related, plaintiff will respond to both of them in this memoranda.

### POINT I:  Plaintiff's errata sheet was timely.

Defendant contends that plaintiff's errata sheet, which was submitted along with her summary judgment response on January 16, 2001, was untimely, **first**, because it was submitted to her on August 1, 2000 by the court reporter and, **second**, because she made the changes more than 30 days after she received a copy of the deposition as an attachment to the summary judgment motion.  Motion to Strike Errata Sheet, at p.  1-2 and fn.  1.  In support of this argument, defendant has appended to its Motion to Strike Errata Sheet an affidavit by Edward Varkonyi, the court reporter who took and transcribed plaintiff's deposition.  Contrary to the representation in defendant's motion, Mr. Varkonyi does not affirmatively attest that **ever** sent notice of the deposition to plaintiff.   What he says is a clearly equivocal statement,

"Immediately after I sent a copy of the transcript to Unisource Worldwide, Inc.'s attorney Robert H. Buckler [on August 1, 2000], *I made the transcript available for reading."* [Emphasis added.] Notably, Mr. Varkonyi does not attest that he sent it to plaintiff or her attorney, nor does not attach a copy of a "read letter" to his affidavit.    Plaintiff, however, attests clearly and unequivocally that she never received notice from the reporter or anyone associated with the court reporting firm that her transcript was available for review until after her attorney's receipt of a letter from Mr. Varkonyi dated January 8, 2001.[3]    Moreover, in the January 8, 2001 letter, Mr. Varkonyi contradicts even the vague statement in his affidavit filed in support of defendant's motion that he made the transcript available for review by stating that "...this was five months ago, *and I have no memory of same*...."

Federal Rule of Civil Procedure 30(e) provides:

**(e) Review by Witness; Changes; Signing.**

If requested by the deponent or a party before completion of the deposition, *the deponent shall have 30 days after being notified by the officer* that the transcript or recording is available in which to review the transcript or recording and, *if there are changes in* form or *substance, to sign a statement reciting such changes and the reasons given by the deponent for making them*. The officer shall indicate in the certificate prescribed by subdivision (f)(1) whether any

---

[3]   Plaintiff's Second Unsworn Declaration, Under Penalty of Perjury, Pursuant to 28 U.S.C. § 1746 is appended at Tab 1. A copy of Mr. Varkonyi's letter is appended to the Declaration as Exhibit A.

review was requested and, if so, shall append any changes made by the
deponent during the period allowed.

[Emphasis added.] The Rule gives plaintiff 30 days from the date that notice of

its availability is given by the officer who took it. Fed. R. Civ. Pro. 30(e).

> It is plain from a reading of Rule 30(e) and the Advisory Committee
> notes that the 'officer' is the court reporter. United States ex rel.
> Burch v. Piqua Eng'g, Inc., 152 F.R.D. 565 (S.D.Ohio 1993). It
> follows that the 30 day period begins on the date that the deponent
> receives notice of the availability of the transcript from the court
> reporter.

Holland v. Cedar Creek Min., Inc., 2001 WL 58034, *2 (S.D.W.Va. 2001). The

only competent evidence that the court reporter ever made the transcript

available for review to plaintiff is the January 8, 2001 letter. Plaintiff filed her

errata sheet on January 16, 2001. Accordingly, her errata sheet was timely.

## POINT II: Changes in the substance of deposition testimony are permitted under Rule 30(e).

Defendant next asserts that plaintiff has made "wholesale changes to her

prior sworn deposition testimony," which changes were made "in a blatant

attempt to survive summary judgment" and "are material and go well beyond

the scope of those permitted by Federal Rule of Civil Procedure 30(e)." Motion

to Strike Errata Sheet, at 2-3. Calling the changes "outrageous," defendant

demands that they be stricken.[4] Id.

---

[4]    Defendant has filed a second unauthorized "supplemental"
memorandum in support of its motions and ultimately its summary judgment
(continued...)

motion, attaching an order imposing sanctions on plaintiff's attorneys' law firm in Norelus v. Denny's Inc., et al., Case Number 94-2680-Civ-Lenard/Bandstra. In the Supplemental Memoranda, defendant quote the District Court's finding that "Plaintiff's counsel undertook efforts to 'repair the damage' plaintiff's deposition caused, and filed the Errata Sheet in an effort to bolster testimony." Defendant's counsel argues that plaintiff's undersigned counsel, "undeterred" by the March 21, 2000 order "continues to engage in efforts to 'repair the damage' its client's deposition caused through the submission of sanctionable errata sheets and sham declarations...." Supplemental Memorandum, at 3.

The ad hominem attack made in this filing and its obvious purpose to cast plaintiff's counsel as someone who goes around manufacturing testimony and suborning perjury justify the following brief response:

The errata sheet in the Norelus case was not used to oppose a summary judgment motion, but rather to correct the record – including **false** statements made during her deposition – by the plaintiff, a Haitian woman who had "passed" two polygraph examinations concerning the core claims of her sexual harassment case and who testified through an interpreter while six-months pregnant over a period of eight days at a deposition defended by a first-year associate because the undersigned was in trial across the state. Following that deposition, a 63 page errata-sheet, making 850 changes in the plaintiff's testimony, was submitted. Plaintiff had waived jury and the case was to be tried before the Court.

The District Court has not yet entered an appealable order in Norelus, and, thus, plaintiff's counsel have not yet had an opportunity to appeal the order attached by defendant to the instant motion. It is worth noting, however, that the March 21, 2000 Order appended by defendant rejects without Judge Lenard ever having heard **any** testimony, the findings made by Magistrate Judge Bandstra after a three-day trial on the sanctions motion. The Magistrate Judge noted of the errata sheet:

> However, the preparation of the errata sheet revealed other things. **First and foremost, the care and detail in which that document was prepared by plaintiff's attorneys reveal their grave concern to tell an accurate story in this case.** While
> (continued...)

Defendant relies primarily on Greenway v. International Paper Co., 144

F.R.D. 323 (W.D. La. 1992). While Greenway does contain a great catch phrase

("[a] deposition is not a take home examination"), it, overall, simply misstates

the law. In fact, "courts generally construe Rule 30(e) broadly to permit any

changes." Hlinko v. Virgin Atlantic Airways, 1997 WL 68563 (S.D.N.Y.1996);

see also Podell v. Citicorp Diner's Club, Inc., 914 F. Supp. 1025, 1034

(S.D.N.Y.1996), aff'd, 112 F.3d 98 (2d. Cir.1997), Holland, 2001 WL 58034, *2.

As long as the deponent timely requests the changes and provides some

explanation, the change is to be permitted regardless of the extent of the

---

⁴(...continued)

many of the changes may have bolstered plaintiff's case,
submission of this voluminous document clearly did not, and left
the plaintiff open to renewed challenges concerning her credibility.
Also, the errata sheet demonstrates, at least in part, the difficulty
plaintiff had in dealing with the discovery process including her
deposition. **While plaintiff can be faulted for her conduct and
has been above, her attorneys should not.** In the
undersigned's view, they did the best they could with a most
difficult client and did not try to prolong the case or multiply these
proceedings to gain a tactical advantage over their adversaries.
Prolonging this case, by extending plaintiff's deposition and
exposing plaintiff to further cross examination, only hindered
counsel's ability to win the case.

Stated otherwise, the undersigned finds no evidence of bad
faith, proper motive or reckless disregard of duty which would
justify § 1927 sanctions against plaintiff's attorneys in this case....

[Emphasis added.] A copy of the Report and Recommendations of Magistrate
Judge Bandstra is attached at Tab 2.

change or the merits of the explanation. Podell, 112 F.3d at 103; Rios v. AT&T Corp., 36 F. Supp. 2d 1064, 1067 (N.D.Ill.1999), aff'd by unpublished order, 2000 WL 48072 (7th Cir. Jan. 14, 2000); Mader v. Motorola Inc., 1999 WL 519020, *3 (N.D.Ill. July 14, 1999), Dunning v. Chemical Waste Management, Inc., 1997 WL 222891 *7 (N.D. Ill. April 22, 1997); Innovative Marketing & Technology, L.L.C. v. Norm Thompson Outfitters, Inc., 171 F.R.D. 203, 205 (W.D.Tex.1997). However, the original transcript remains intact and the deponent may be impeached by his change in testimony. Podell, 112 F.3d at 103; Mader, 1999 WL 519020 at * 3; Dunning, 1997 WL 222891 at *7. Therefore, both the original testimony and any changes must be considered in determining if a genuine factual dispute exists in the summary judgment context. Havey v. Tenneco, Inc., 2000 WL 198445, *2 (N.D.Ill.)

While changing deposition testimony from, for example, "Yes" to "No" – **something that plaintiff did not do despite defendant's characterizations** – might be problematic in terms of a deponents' credibility, that is a tactical choice that the Rule leaves to counsel, who knows full well that the transcribed answers and the amended ones will both be before the fact-finder at the time of trial, as will the explanations for the changes. As stated in the oft-cited Lugtig v. Thomas, 89 F.R.D. 639 (N.D. Ill. 1981) (overruling objections to changes assertedly made because the deponent "didn't understand the question or was confused at the time of answering"):

Rule 30(e) of the Federal Rules of Civil Procedure allows deponents to make "[a]ny changes in form or substance which the witness desires" even if the changes contradict the original answers or even if the deponent's reasons for making the changes are unconvincing. Allen & Co. v. Occidental Petroleum Corp., 49 F.R.D. 337 (S.D.N.Y. 1970); Colin v. Thomspson, 16 F.R.D. 194 (W.D.Mo. 1954); 4A MOORE'S FEDERAL PRACTICE, ¶ 30.62; WRIGHT & MILLER, Federal Practice and Procedure, § 2118. The language of the Rule places no limitations on the type of changes that may be made by a witness before signing his deposition. Allen & Co. v. Occidental Petroleum Corp., 49 F.2d at 340, nor does the Rule require a judge to examine the sufficiency, reasonableness, or legitimacy for the changes. Allowing a witness to change his deposition before trial eliminates the likelihood of deviations from the original deposition in his testimony at trial; reducing surprises at the trial through the use of Rule 30(e) is an efficient procedure....

\*    \*    \*

The original answer to the deposition questions will remain part of the record and can be read at trial. [Citations omitted.] Nothing in the language of Rule 30(e) requires or implies that the original answers are to be stricken when changes are made. In fact, the Rule's instructions that the changes be made "upon the deposition" implies that the original answers will remain. Policy also supports that conclusion."

The witness who changes his testimony on a material matter between the giving of his deposition and his appearance at trial may be impeached by his former answers, and the cross-examiner and the jury are likely to be keenly interested in the reasons he changed his testimony. There is no apparent reason why the witness who changes his mind between the giving of the deposition and its transcription should stand in any better case. (WRIGHT & MILLER, Federal Practice & Procedure, § 2118)

The Rule is less likely to be abused if the deponent knows that all the circumstances — the original answers as well as the changes and the reasons — will be subject to examination by the trier of fact.

89 F.R.D. at 641-642. The Florida Rules of Civil Procedure, and their state-court gloss, while not binding on this court, put into the local-custom context the use of extensive changes in deposition testimony, customs of which one would assume that defendant's counsel would be aware. As the Fourth District Court of Appeal stated in Feltner v. Internationale Nederlanden Bank, N.V., 622 So.2d 123 (Fla. Dist. Ct. App. 1993), citing to Lugtig and Allen & Co.: "Like its federal counterpart, Federal Rule of Civil Procedure 30(e), the Florida rule places no limitations on the changes a deponent can make. Accordingly, the deponent can make changes of any nature, no matter how fundamental or substantial...."

The cases cited by defendant – none of which are binding on this court – do not compel a different result. Indeed, most circuit level authority that exists supports plaintiff's position that the errata sheet changes were proper. See, e.g., Thorn v. Sundstrand Aerospace Corp., 207 F.3d 383, 389 (7th Cir. 2000)("What he tried to do, whether or not honestly, was to change his deposition from what he said to what he meant. Though this strikes us as a questionable basis for altering a deposition, [citation omitted], it is permitted by Fed.R.Civ. P. 30(e), which authorizes 'changes in form or substance'...")[5];

---

[5] The Thorn court did note that a change of substance which actually contradicts a deposition transcript is not permitted under the rule allowing changes in form and substance to a transcript unless it can plausibly be (continued...)

Podell, 112 F.3d at 103 (2d Cir.1997)(language of rule governing changes to

deposition testimony places no limitations on the type of changes that may be

made and does not require judge to examine sufficiency, reasonableness, or

legitimacy of reasons for changes, even if those reasons are unconvincing). But

see Margo v. Weiss, 213 F.3d 55, 59 (2nd Cir. 2000)(finding claim time-barred

after disregarding errata sheet and interrogatory answers that contradicted

prior deposition testimony concerning when potential claim was discovered).[6]

Thus, to the extent that errata sheet changes are changes to the

substance of plaintiff's testimony, they are not per se improper.

## **POINT III: Neither plaintiff's errata sheet changes nor paragraph 27 of her Declaration are "shams" that attempts to create factual issues where none exist.**

Defendant also contends that plaintiff's errata sheet changes are akin to

a "sham affidavit" and are precluded under Eleventh Circuit precedent, including

---

[5](...continued)

represented as the correction of an error in transcription, such as dropping a "not." 207 F.3d 388.

[6] While the defense judgment was affirmed in Rios v. Welch, 856 F. Supp. 1499, 1502 (D. Kan. 1994), the interpretation of the provisions of Rule 30(e) escaped appellate review in Rios v. Bigler, 67 F.3d 1543 (10th Cir. 1995), because "plaintiff failed to submit the proper record on appeal." 67 F.3d at 1552. The appeals courts' inability to review the matter arose from the plaintiff's failure to include the court reporter's certificate required by Rules 30(e) and 30(f)(1), which would have shown whether review had been requested, "an absolute prerequisite to amending or correcting a deposition under Rule 30(d)," and further failed to provide any evidence of whether the deponent's corrections were timely. 67 F.3d at 1552-1553.

Van T. Junkins & Assoc., Inc. v. U.S. Indus., Inc., 736 F.2d 636 (11th Cir. 1984). Motion to Strike, at fn. 2. Likewise, defendant argues that paragraph 27 of plaintiff's unsworn declaration "directly contradicts plaintiff's deposition testimony," adds new claims that she swore under oath were not part of the case and therefore is a "sham" that the court must strike based on Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987), Tippens v. Celotex Corp., 815 F.2d 66, 68 (11th Cir. 1987) and Van T. Junkins and Assoc., supra. Motion to Strike Paragraph 27, at 2-3.

In order to assess defendant's argument, the three errata sheet changes challenged by defendant, along with the reasons for the changes that plaintiff gave in her errata sheet, as well as paragraph 27 of the declaration are set forth below:

| Question | Answer | New Answer | Reason for Change Given in Errata Sheet |
|----------|--------|------------|------------------------------------------|
| "Have you ever done web sales?" | "No sir." | "No, sir. I have not handled any domestic account from which the customer bought only web paper. However, on one occasion, I sold rolls of paper to Le Natal, an export account. I also have sold NCR rolls of paper to Tiger Business Forms since 1995 and continue to do so." | "Clarifies the answer. I previously understood he question to refer only to large domestic web accounts." |

| Question | Answer | New Answer | Reason for Change Given in Errata Sheet |
|---|---|---|---|
| "Are there any web sale accounts that you believe should have been assigned to you, but were assigned to someone else?" | "No, sir. I don't get involved in web sales at all." | "No sir, unless they are included in the accounts that I claim were not assigned to me. I don't get involved in web sales all because except for Continental I have not been assigned those large accounts at Unisource." | "Clarifies the answer in light of my previous testimony on pages 46-47, lines 22-24 and 1-4, and page 86 lines 5 through 22." |
| "So your complaint here in regard to assignment of accounts does not deal with web sales?" | "No, sir." | "No sir, unless they are included in the accounts that I claim were not assigned to me." | "Clarifies the answer in light of my previous testimony on pages 46-47, lines 22-24 and 1-4, and page 86 lines 5 through 22." |

Plaintiff's declaration provides:

> However, after reviewing the documents produced by Unisource during discovery in this case, I realized that John Huempfner, Dennis Laux and Bob Peterson handle web accounts for which they were paid according to a different commission structure. I am claiming that Unisource discriminated against me in the assignment of Huempfner's and Laux's accounts, including their web accounts.

First, it is important to note that plaintiff's deposition was taken on July

25, 2000, weeks prior to the taking of the depositions of **any** of defendant's

witnesses[7] and months prior to defendant producing the bulk of its discovery responses, which occurred only **after** the court ruled on November 2000 on pending discovery motions.[8]  As plaintiff expressly recites in paragraph 27 of her declaration, it was only **after** discovery taken during the litigation that plaintiff realized that three male sales representatives were paid on a different commission structure for handling web accounts.

Second, defendant does not appear to contest the substance of the factual portions of plaintiff's responses (e.g., her statement that " I sold rolls of paper to Le Natal, an export account. I also have sold NCR rolls of paper to Tiger Business Forms since 1995 and continue to do so" and "...except for Continental I have not been assigned those large accounts at Unisource"), but only her conclusions concerning the basis of her claims (e.g., that she is not complaining about the

---

[7] The cover pages of the depositions of defendant's witnesses appear as exhibits to Plaintiff's Statement of Material Facts and establish the following dates that their depositions were taken: William Joseph Ready - September 29, 2000; John Glaze - September 28, 2000, October 25, 2000 and October 30, 2000; Laurence Press - September 29, 2000; Richard Crene - October 25, 2000; Robert Peterson - September 28, 2000; John Huempfner - September 21, 2000; William Breshnehan - September 21, 2000, Amy George - October 10, 2000; Cecil McClary - October 10, 2000.

[8] On September 19, 2000, defendant filed a motion for protective order seeking not to have to respond to any of several sets of interrogatories and requests for production **[DE 20]**, which motion was denied by order dated November 1, 2000 **[DE 39]**. Motions to compel regarding other discovery **[DE 29 and 30]**were granted by order dated November 16, 2000 **[DE 43]**.

assignment of accounts "unless they are included in the accounts that I claim were not assigned to me" and that she claims in her declaration that the assignment of web accounts with a different commission structure to the three men was discriminatory). However, the claims that plaintiff makes are not new. Plaintiff's Amended Complaint contains allegations, **One**, that "[m]ale sales representatives receive better accounts than I do," Amended Complaint at ¶ 6; **Two**, that defendant paid her at rates less than it paid men for jobs requiring equal skill, effort and responsibility, Amended Complaint at ¶ 10; and, **Three**, that it failed to give her assignments for which she was qualified and paid her less than comparably qualified men, Amended Complaint at ¶ 21. Clearly, these allegations are broad enough to encompass plaintiff's contention made in response to the summary judgment motion that the assignment of certain accounts with a higher commission structure only to the men was discriminatory. Neither the errata sheet not plaintiff's declaration added new ingredients to the soup; at most they packaged the same facts with a slightly different label.

Third, upon reading the cited portions of plaintiff's testimony elsewhere in the transcript, it is clear that plaintiff is, in fact, simply clarifying her prior answers: she notes that although she could not remember specific accounts without a list, she complained that every time a person left, their accounts were split up and assigned to the men, but not to her. [Plaintiff's Deposition, at p.

46, l. 22 to p. 47, l. 4][9] She also notes that she was given a web account, *Continental Printing*, but that it was making so little money that she gave it back to the house. [Plaintiff's deposition, at p. 86, l. 5 through 22][10] Thus, defendant's so-called "contradictions" appear as such only because defendant takes statements out of context; the statements are not inconsistent with plaintiff's deposition when read in *pari materia* with the other portions.

Fourth, and finally, none of the changes about which defendant complains so bitterly really are material to plaintiff's responses to defendant's summary judgment motion in any event. Plaintiff does not attempt to defeat the motion by showing, based on the errata sheet changes or on paragraph 27 of her Declaration, that she was discriminated against because she was not allowed to sell web accounts. Rather, plaintiff defines the "crux of [her] complaints with regard to account assignment" as the fact that "the lucrative accounts were assigned to men, while she received those that generated scant commissions." Plaintiff's Response to Defendant's Motion for Summary Judgment, at Point II, page 13. Plaintiff further clarifies that these assignment decisions fell into two categories: **One,** "in regard to Gispert's previously promised export accounts"

---

[9] These pages from plaintiff's deposition are appended at Tab 3.

[10] See Note 9, ante.

– which were not web accounts, and **Two**, those "that Ready refused to assign to her, including those that sat as 'house accounts' until they virtually stopped generating commissions despite plaintiff's requests that she be given a chance to work them." Id. Thus, the assignment of web accounts per se is simply not an issue – unless, of course, and to the extent that they were among those accounts that were split up and assigned to the men, but not to her whenever someone left. The significance of the web accounts is that they had a different commission structure that paid more than the accounts assigned to plaintiff even though they required no greater skill, effort or experience. Plaintiff's Response to Defendant's Motion for Summary Judgment, at Point III, page 18.

In Van T. Junkins and Assoc., 736 F.2d 656, the court held that when a party has given clear answers to unambiguous deposition questions which negate existence of any genuine issue of material fact, that party cannot thereafter create such issue and thereby defeat summary judgment with an affidavit that merely contradicts, without explanation, the deposition testimony. However, finding that the criteria in Van T. Junkins and Assoc. had not been met, the court in Tippens v. Celotex Corp., 805 F.2d 949, 953-954 (11th Cir. 1986)[11] refused to strike an affidavit as a sham and noted:

---

[11] Defendant cites Tippens v. Celotex Corp., 815 F.2d 66, 68 (11th Cir. (continued...)

> The purpose of summary judgment is to separate real, genuine issues from those which are formal or pretended. To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case, the affiant) was stating the truth. Variations in a witness's testimony and any failure of memory throughout the course of discovery create an issue of credibility as to which part of the testimony should be given the greatest weight if credited at all. Issues concerning the credibility of witnesses and weight of the evidence are questions of fact which require resolution by the trier of fact.

Here, also, any variance on any material matter that may exist between

plaintiff's errata sheet and declaration and her deposition fall short of meeting

---

[11](...continued)

1987) for the proposition that "an affidavit is properly considered a sham whenever the affiant (1) makes a conclusory, unexplained assertion regarding a material fact which (2) directly contradicts that person's unequivocal deposition testimony." Motion to Strike Paragraph 27 at 2. The cited material comes from Judge Hill's dissent in an opinion denying Celotex's motion for rehearing.

In the original opinion, which appears at 805 F.2d 949, the court held that an affidavit, which stated that the decedent in an asbestos case had worked in close proximity with affiant during period when affiant was using manufacturer's asbestos-containing products, was *not* inherently inconsistent with affiant's deposition testimony, which indicated affiant was unable to state any specific instances when he was using specific asbestos-containing product while decedent was standing next to him, and, thus, was *not* a "sham affidavit" but merely created question of credibility to be resolved at trial, rather than on motion for summary judgment.

the test for a "sham" affidavit. They are mere variations is testimony that

present credibility questions and require resolution by the trier of fact.

## Conclusion

Based on the authorities and arguments set forth herein, defendant's

Motion to Strike Errata Sheet and Motion to Strike Paragraph 27 should be

denied.

Respectfully Submitted,


AMLONG & AMLONG, P.A.
Attorney for Plaintiff(s)
500 Northeast Fourth Street
Second Floor
Fort Lauderdale, Florida 33301-1154
(954) 462-1983


_____

Karen Coolman Amlong
Florida Bar No: 275565

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was

served on February 12, 2001, on:

Juan C. Enjamio, Esquire (by hand, with extension by permission)
Hunton & Williams
One Biscayne Tower, Suite 2500
2 S. Biscayne Blvd.
Miami, FL  33131

Robert Stevens, Esq.  (by mail)
Troutman Sanders, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308

_____
Karen Coolman Amlong

I:\CPWin\HISTORY\001222A\6EC.162

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 00-6126-Civ-Dimitrouleas/Johnson

BETTY ORTEGA,

    Plaintiff,

vs.

UNISOURCE WORLDWIDE, INC., a foreign
corporation,

    Defendant.

_____/

## Betty Ortega Second Unsworn Declaration, Under Penalty of Perjury, Pursuant to 28 U.S.C. § 1746

State of Florida

County of Broward

Betty Ortega deposes and says:

1.    My name is Betty Ortega. I am the plaintiff in the above-styled case.

2.    On July 25, 2000, Unisource Worldwide, Inc., the defendant in the above-styled case took by deposition.

3.    Prior to my attorney's receipt of the letter attached as Exhibit A, from the court reporter Edward Varkonyi, I did not receive a copy of any letter or notice from the court reporter, Edward Varkonyi, or anyone associated with his company, H. Allen Benowitz and Associates, informing me that my deposition transcript was available for review.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Ft. Lauderdale, Florida, this $\underline{5}$ day of February, 2001.

_____
BETTY ORTEGA

1

2

3                                    January 8, 2001

RECEIVED

JAN 0 9 2001

4

5

6       JENNIFER DALEY, ESQ.
        AMLONG & AMLONG
7       500 Northeast 4th Street, Second Floor
        Fort Lauderdale, Florida 33301
8
        RE: ORTEGA v. UNISOURCE
9
        Dear Ms. Daley,
10
        As per our discussion of last week with regard to
11      your representation that you did not receive a
        read letter for the deposition of Betty Ortega
12      taken on July 25, 2000 in connection with the
        above-captioned case, I am forwarding an errata
13      sheet to make corrections to the transcript.
        This letter should not be construed as an
14      admission by myself that you did not receive a
        read letter, as this was five months ago, and I
15      have no memory of same and do not maintain copies
        of read letters.
16
17      Sincerely,

18

19      Edward Varkonyi,
        Registered Merit Reporter
20

21      cc: Robert H. Buckler, Esq.
            Enclosures.
22

23

24

25

ERRATA          SHEET

PURSUANT TO RULE 1.310(e) of the Florida Rules of Civil Procedure, this deposition is being submitted to you for examination, reading and signing. Please <u>do not write</u> on the transcript. Any changes in form or substance you desire to make should be entered upon this sheet as follows:

PAGE NO./LINE      CHANGE           REASON

DATE:_____

ADDRESS:_____

COUNTY OF:_____                Signature of Witness

                                            Notary Public, State of____
                                            at Large. My Commission
                                            Expires:_____

ERRATA　　　　　SHEET

RSUANT TO RULE 1.310(e) of the Florida Rules of Civil Procedure, this
deposition is being submitted to you for examination, reading and
signing. Please <u>do not write</u> on the transcript. Any changes in form
or substance you desire to make should be entered upon this sheet as
follows:

PAGE　NO./LINE　　CHANGE　　　　REASON

DATE:_____

ADDRESS:_____

COUNTY OF:_____

_____
Signature of Witness

_____
Notary Public, State of_____
at Large.  My Commission
Expires:_____



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 94-2680-CIV-LENARD

FLORIDE NORELUS a/k/a
LAVICTORE REMY,

    Plaintiff,

vs.

DENNY'S, INC., and T.W. SERVICES,
INC., foreign corporations,
MEOS CORPORATION, INC. A Florida
corporation, ASIF JAWAID,
individually, and RAHEEL HAMEED,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on (a) Verified Motion by Denny's, Inc. and

T.W. Services, Inc. For Attorneys' Fees and Costs (D.E. 349) filed on January 10,

1997; (b) Meos Corporation, Inc.'s Verified Motion for Attorney's Fees and Costs (D.E.

348) filed on January 10, 1997; and ( c) [Asif] Jawaid's Verified Motion for Award of

Attorney's Fees (D.E. 351) and Motion to Tax Costs (D.E. 350) filed on January 10,

1997. On January 24, 1997, these motions were referred to the undersigned by the

Honorable Joan A. Lenard for resolution pursuant to 28 U.S.C. § 636(b). Accordingly,

the undersigned conducted an evidentiary hearing on these motions on April 24, June

13, September 8, and November 12, 1997, and thereafter received written summaries

of the evidence from the parties.[1]

_____

[1]The undersigned notes that the protracted evidentiary hearings on the
subject motions were necessary due to the serious allegations of misconduct

Based on the evidence and applicable law, and in consideration of the pleadings and arguments of counsel, it is hereby recommended that:

a. defendants' motions for attorney's fees from plaintiff be GRANTED pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § § 2000e-5(k), in amounts to be determined following the submission of further briefing should this recommendation be adopted by the Court.

b.    that defendants' motions for attorney's fees from plaintiff's counsel, pursuant to 28 U.S.C. § 1927, be DENIED; and

c. that defendants' Motions for costs be DEFERRED pending the submission of bills of cost pursuant to 28 U.S.C. § 1920.

## INTRODUCTION

This is a civil rights case brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § § 2000e, et seq, and the Florida Civil Rights Act of 1992, Fla. Stat. § § 760.10 et seq. In this case, plaintiff, Floride Norelus, a/k/a Lavictore Remy, alleges that she was sexually harassed, assaulted and battered by defendants ASIF JAWAID and RAHEEL HAMEED while employed at a Denny's Restaurant owned by Meos Corp., Inc.

Following a lengthy period of discovery, defendants filed a motion to dismiss and for sanctions (D.E. 295), based, in large part, on plaintiff's alleged lies during her

_____

charged against plaintiff and her attorneys and the need to develop a complete factual record on which to base the findings and recommendations contained herein.

deposition taken over several days in 1996. In support thereof, defendants cited
specific instances in which plaintiff admitted to lying about her name, social security
number, and other matters during her deposition. Defendants also argued that
plaintiff's propensity to lie was established by other evidence in the case and by
submission of a 63-page errata sheet to her deposition in which she made over 850
changes to her deposition testimony. On August 26, 1996, defendants motion to
dismiss was denied. While noting the court's inherent power to regulate litigation and
to dismiss an action when a plaintiff falsifies evidence to support her claims, the Court
denied defendants' motion to dismiss finding it unclear whether plaintiff's original or
revised version of the facts constituted the truth. See Order Denying Motion to
Dismiss dated August 26, 1996, pg. 4.[2] However, the Court further ordered that
plaintiff's deposition be reopened, at plaintiff's expense, due to the numerous changes
made by plaintiff to her deposition, many of which were substantive, because such
changes now made her deposition useless. The Court also ordered that plaintiff file
an appendix to her deposition identifying all changes made therein in the lengthy errata

---

[2]While so ordering, the Court expressed concern over plaintiff's failure to
recall details of the alleged rape by defendant Asif Jawaid in her deposition but was
later able to remember a great deal of details of the event, including the clothing
she was wearing, the make and model of the car driven to the site of the
occurrence, the route taken, and the date and time of the occurrence. Order, pg. 3.
The Court also noted that plaintiff changed her story in her deposition with respect
to whether defendant Jawaid was circumcised, the type and frequency of sex
forced upon her, the location of the encounters, and the reason she quit her job.
Id. However, because the Court could not determine which of plaintiff's versions
was the truth, it denied defendant's motion to dismiss at that junction and
reopened discovery to further clarify the matter.

3

filing "explaining in detail the reasons for those changes and contradictions." Order, pg. 5-6.[3]

On October 16, 1996, the Court clarified the August 26 Order by requiring that costs and fees associated with the reopening of plaintiff's deposition to be paid either by plaintiff or her attorneys within ten (10) days. This October 16 Order also stated that plaintiff's failure to comply with this directive would result in the dismissal of this lawsuit.

On December 11, 1996, the Court entered an Order of Dismissal due to plaintiff's failure to comply with the August 26 and October 16 Orders by failing to file an appendix explaining the changes made to her deposition; and by failing to pay defendant's attorney's fees and expenses associated with plaintiff's reopened deposition. Accordingly, the Court dismissed this case pursuant to Fed.R.Civ.P. 41(b) noting that:

> The record in this case reveals Plaintiff's willful contempt for the judicial process. After it was completed, Plaintiff made approximately 850 changes to her deposition. Alleging these changes to be evidence that Plaintiff lied during her deposition, Defendants moved to dismiss this action. This Court denied that motion because it was not certain whether the statements made by Plaintiff during her deposition or those made in her subsequent changes represented the truth. Nevertheless, the inherent contradictions in Plaintiff's deposition testimony and her

---

[3]The August 26 Order concluded with the following:

(4) in light of the highly suspicious nature of plaintiff's voluminous deposition changes, failure to comply with the Court's Order will result in "serious reprecussions"

Order Pg. 6.

4

subsequent changes have never left this Court with any doubt that
Plaintiff has made numerous misstatements of fact in this litigation. In
fact, these misstatements led this Court to order Plaintiff's deposition
reopened.

Order of Dismissal, pg. 3.

The Court further stated in the same Order:

...Plaintiff was admonished by this Court twice that it was treading on
thin ice. In its initial order reopening Plaintiff's deposition and requiring
Plaintiff to file an appendix explaining her deposition changes, both at her
expense, this Court ominously noted that failure to comply with the
Order would result in 'serious repercussions.' Subsequently, in its
clarifying order, the Court expressly stated that failure to pay Defendants'
attorneys' fees and costs within ten days would lead to dismissal. Under
these extreme circumstances, nothing short of dismissal would constitute
a sufficient punishment for Plaintiff's egregious behavior. Accordingly,
it is hereby

ORDERED AND ADJUDGED that this action be DISMISSED with
prejudice.

Order of Dismissal, pg. 4.

On January 10, 1997, defendants filed the instant motions for attorney's fees
and costs incurred in this case. Essentially, defendants seek to recover fees and costs
from plaintiff pursuant to Title VII which allows a prevailing party a reasonable
attorney's fee in a civil rights case. Certain defendants also seek fees from plaintiff's
counsel pursuant to 28 U.S.C. § 1927, from the date of plaintiff's submission of the
63-page errata sheet until dismissal, contending that plaintiff's counsel unreasonably
multiplied these proceedings by filing the errata sheet and by failing to recognize
plaintiff's baseless claims and take a voluntary dismissal.

Between January 10, 1997 and November 12, 1997, the undersigned

5

conducted a lengthy evidentiary hearing on the instant motions to determine

numerous issues including the extent of plaintiff's counsel's pre-suit investigation; the

evidence generated thereafter resulting in the filing of amended complaints; the factual

and legal basis for suing defendants in their individual capacities; plaintiff's specific

untruths (lies) under oath; the evidence produced by witnesses listed by plaintiff in

support of her claims; and other issues. As a result thereof, the undersigned reaches

the conclusion, explained more fully below, that plaintiff's action lacked a sufficient

factual basis beyond the uncorroborated and contradictory testimony of plaintiff

herself. The evidence presented by the parties further leads the undersigned to

conclude, however, that plaintiff's counsel did not unreasonably and vexatiously

multiply this litigation so that they should not be subject to sanctions under 28 U.S.C.

§ 1927.

## ANALYSIS

### A. Attorney's Fees Under Title VII

Defendants Meos Corp. and Asif Jawaid first seek attorney's fees and costs

from plaintiff, not her attorneys, under Title VII of the federal Civil Rights Act which

provides in relevant part that:

> In any action or proceeding under this subchapter the court, in its
> discretion, may allow the prevailing party... a reasonably attorney's fee
> (including expert fees) as part of the costs, ....

42 U.S.C. § 2000e-5(k). The primary purpose of this provision is "to protect

defendants from burdensome litigation having no legal or factual support."

6

Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 98 S.Ct. 694 (1978).

The standard for awarded fees to a prevailing defendant was articulated in Christiansburg as follows:

> A district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable or without foundation, even though not brought in subjective bad faith.

Id. at 421. This standard has been described as a "stringent" one. Hughes v. Rowe, 449 U.S. 5, 14, 101 S.Ct. 173, 178 (1980). Thus, the court should resist the temptation to conclude that because a plaintiff did not ultimately prevail, the action must have been unreasonable or without foundation. Walker v. NationsBank of Florida, N.A., 53 F.3d 1548, 1558 (11th Cir. 1995) (citing Christiansburg, 434 U.S. at 421-22)). Therefore, in determining whether a prevailing defendant is entitled to attorney's fees under Title VII, the district court must focus on the question of whether the case was seriously lacking in arguable merit. Id. (citing Sullivan v. School of Pinellas County, 773 F.2d 1182, 1189 (11th Cir. 1985)). Federal courts applying Christainsburg in this circuit have identified three general factors which should guide the inquiry: (1) whether the plaintiff established a prima facie case; (2) whether the defendant ever offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits. Sullivan, 773 Fed.2d at 1189.

Applying this criteria here, the undersigned finds that defendants are entitled to attorney's fees under the Title VII provision. Reaching this conclusion, the undersigned has had the benefit of examining in close detail plaintiff's allegations in

7

this case and the evidence she had in support of those claims. As noted above, the undersigned has conducted an extensive evidentiary hearing on these motions during which this Court has heard testimony of plaintiff's counsel with respect to the pre-filing investigation conducted by plaintiff's counsel, the evidence gathered through a lengthy discovery period, and the facts and circumstances which led to the dismissal of the case with prejudice due to plaintiff's failure to meet requirements of the court orders with respect to the reopening of discovery and the filing of an appendix to explain changes to plaintiff's previous deposition.

As a result, the undersigned has found that plaintiff's claims against all defendants were unreasonable and without factual foundation thereby warranting attorney's fees under §2000e-5(k). The District Court is very familiar with plaintiff's serious allegations of sexual harassment and misconduct by the corporate and individual defendants so that those allegations will not be repeated herein. Plaintiff's counsel accepted and believed those allegations, based almost exclusively on plaintiff's own recollections and initial corroboration from plaintiff's brother and a third person, and proceeded to file this lawsuit on that basis. Almost immediately thereafter, plaintiff's allegations began to appear questionable, even to plaintiff's attorneys, due to plaintiff's several falsehoods during her deposition regarding her name, social security number and other seemingly insignificantly matters. More importantly, plaintiff's listed witnesses, including her own family members, friends, and coworkers at Denny's, all testified contrary to plaintiff's version of the facts so that plaintiff was soon left with only her own testimony to support her claims. However, plaintiff's

8

recollections of critical events relevant to those claims were often vague and continued to change throughout the case, both during and after her lengthy deposition. The crowning moment arrived when plaintiff filed a 63 page errata sheet to her deposition in which she made over 850 changes, many substantive, which rendered her deposition, useless, and a tremendous waste of time and expense to all parties.

Under these circumstances, the undersigned finds that defendants have established the frivolity of plaintiff's claims despite their serious nature and plaintiff's continuing belief that she was sexually harassed and mistreated by her employer defendants. Defendants correctly note that cases of frivolity have been found where a plaintiff does not introduce evidence in support of her claims. See e.g.. Beard v. Annis, 730 F.2d 741 (11th Cir. 1984); Jones v. Dealers Tractor and Equipment Co., 634 F.2d 180 (5th Cir. 1981); Church of Scientology of California v. Cazares, 638 F.2d 1272 (5th Cir. 1981). Here, plaintiff presented only her own changing testimony, without corroboration or support from any other witnesses or sources, which was totally or nearly totally discredited by plaintiff's numerous lapses of memory, outright lies, and outlandish comments made during her deposition--even if made in anger or frustration. Even plaintiff's own testimony became useless after she filed the lengthy errata sheet leaving her open to further impeachment during her reopened deposition during which she continued to evade reasonable inquiry concerning her evolving account of events alleged in this case. While plaintiff's counsel may have believed plaintiff with respect to the core allegations of this case, and felt a continuing obligation to represent plaintiff despite her inability to testify consistently, the

9

undersigned finds that plaintiff's case always lacked credible evidence, or any evidence other than plaintiff's own unreliable recollections.

Applying <u>Sullivan</u> criteria, the undersigned finds that plaintiff's claims were frivolous against all defendants. While plaintiff may have alleged a prima facie case in her amended complaint, no such case was ever established prior to dismissal. In this respect, the undersigned finds it particularly troubling that plaintiff and her attorneys allege a Title VII claim against defendant Asif Jawaid, individually, when all reported cases in this circuit consistently hold that relief under Title VII is against the employer only, and not against individual employees. <u>See Busby v. City of Orlando</u>, 931 F.2d 764, 772 (11th Cir. 1991); <u>Vernon v. Medical Management Assoc. of Margate, Inc.</u>, 912 F.Supp. 1549 (S.D. Fla. 1996); Moreover, the Court finds that defendants never offerred to settle; or that this case was ever tried on its merits. In this regard, the undersigned finds that plaintiff's claims were not strengthened in any manner by the polygraph examinations she passed which seemed only to demonstrate her own attorneys' lack of trust in the allegations of their client. Thus, the undersigned finds that defendants are entitled to attorney's fees from plaintiff as prevailing parties pursuant to 42 U.S.C. § 2000e-5(k) in amounts to be determined at a later time.[4]

---

[4]Defendants previously moved for bifurcation of the issues of entitlement and awardable amounts with respect to these motions for fees and costs and that request was granted by court order dated January 29, 1997. Thus, should the Court adopt this recommendation and award fees pursuant to Title VII, defendants should be entitled to submit further briefings with respect to particular amounts to which they are entitled in this case.

10

B.   Attorney's Fees Under 28 U.S.C. § 1927

All defendants, with the exception of Raheel Hameed, have also moved for attorney's fees from plaintiff's counsel pursuant to 28 U.S.C. § 1927 which provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

In this circuit, courts have sanctioned attorneys under § 1927 where they have contributed to obfuscating the truth and/or acted in bad faith. See Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1544 (11th Cir. 1993), cert. denied, 510 U.S. 863 (1993); Mingo v. Sugar Cane Grower's Co-op of Fla., 1989 WL 205633 at 11 (S.D. Fla. 1989) (Payne, J.). The purpose of § 1927 "is to deter frivolous litigation and abusive tactics by attorneys... and to ensure that those who create unnecessary costs also bear them." O'Rear v. American Family Life Assurance Co. Of Colombus, 144 F.R.D. 410, 412 (M.D. Fla. 1992) (citing Kapco Manufacturing Co. v. C & O Enterprises, Inc., 886 F.2d 1485 (7th Cir. 1989)). Federal courts have required attorneys under § 1927 to pay their opposing party's legal fees and costs for a whole variety of conduct stemming from providing evasive answers to interrogatories and covering up discoverable material, Malautea, 987 F.2d at 1536; to ignoring evidence provided by defense attorneys that plaintiff's claims were questionable, Blue v. United States Department of Army, 914 F.2d 525 (4th Cir. 1990), cert. denied sub. nom., Chambers v. United States Department of Army, 499 U.S. 959 (1991); to pressing

11

ahead with baseless claims, Alvardo-Morales v. Digital Equipment Corp., 843 F.2d 613 (11th Cir. 1988).

Defendants, relying on this and other authority, seek sanctions against plaintiff's counsel based on the charge that plaintiff's counsel unreasonably and vexatiously prolonged this litigation by refusing to recognize plaintiff's baseless claims; and by continuing to pursue this case to trial on the slim hope that plaintiff's allegation might be believed, at last, by the district judge. Defendants complain that plaintiff's counsel knew, practically from the outset, that plaintiff's allegations were outrageous, and that plaintiff herself was not to be believed or trusted after she lied during her deposition, failed to know or remember many essential facts concerning her case, and made outlandish allegations concerning the frequency and nature of sexual attacks at her place of employment--none of which were witnessed by any other employees. While seeking fees from an early stage in the case, defendants argue that plaintiff's counsel should at least be responsible for those fees and costs incurred after plaintiff's deposition and the submission of the highly suspect errata sheet prepared by plaintiff and her attorneys. Defendants maintain that from that point onward, through this dismissal of the case, plaintiff's counsel was as responsible as plaintiff for continuing meritless case.

Addressing the § 1927 issues, the undersigned has again benefited from hearing the testimony from plaintiff's counsel concerning their representation of plaintiff in this case, their assessment of plaintiff's credibility, their explanation for plaintiff's seeming inability to testify truthfully at times; their own concerns about the underlying

facts of the case, and their decision to press on with this litigation despite warnings from defendant's counsel that the case lacked merit and might result in sanctions. Hearing that testimony, one thing is abundantly clear. Plaintiff's counsel, from beginning to end, believed in plaintiff's credibility as to the "core allegations" of the lawsuit; and genuinely believed that plaintiff's claims were meritorious despite plaintiff's inability to testify completely and truthfully about several aspects of her case. Plaintiff's lead counsel, Amlong & Amlong, P.A., are experienced and well respected litigators in Title VII cases. Ms. Amlong personally met with plaintiff on more than one occasion and satisfied herself that plaintiff was telling the truth. Thus, Ms. Amlong was not surprised or particularly concerned that the sexual harassment activities alleged in this case were not observed by others-"they seldom are in this type of case." Plaintiff's counsel also did not ignore plaintiff's propensity to exaggerate or lie during her deposition. Rather, plaintiff's counsel attempted to correct the clear lies and twice sent plaintiff to a certified polygraphist, George B. Slattery, who advised that plaintiff, in his opinion, was telling the truth about the core allegations of the case.

Defendants criticisms with respect to the errata sheet deserved particular mention. The filing of that document, containing about 850 changes to plaintiff's deposition testimony, caused understandable concern to this Court and resulted in an Order reopening plaintiff's deposition at her own expense and requiring a detailed explanation concerning each and every change. The preparation of the errata sheet and plaintiff's counsel's explanation for its filing was a topic explored at some length

13

during the evidentiary hearing on these motions. As a result thereof, the undersigned reached several conclusions.    First, the preparation of the errata sheet and the procedures used to do so (i.e., translating through plaintiff's brother and possible explanations of questions by plaintiff's counsel) was improper and should have not occurred. Second, the numerous changes listed in the errata sheet only illuminated plaintiff's difficulty or inability to relate a consistent account of events underlying her claims. Third, the errata sheet revealed to defendant's attorneys and the Court that plaintiff's testimony was highly suspicious and required further exploration through reopened discovery.

However, the preparation of the errata sheet revealed other things. First and foremost, the care and detail in which that document was prepared by plaintiff's attorneys reveal their grave concern to tell an accurate story in this case. While many of the changes might have bolstered plaintiff's case, submission of this voluminous document clearly did not, and left plaintiff open to renewed challenges concerning her credibility. Also, the errata sheet demonstrates, at least in part, the difficulty plaintiff had in dealing with the discovery process including her deposition. While plaintiff can be faulted for her conduct and has been above, her attorneys should not. In the undersigned's view, they did the best they could with a most difficult client and did not try to prolong the case or multiply these proceeding to gain a tactical advantage over their adversaries. Prolonging this case, by extending plaintiff's deposition and exposing plaintiff to further cross-examination, only hindered counsel's ability to win the case.

14

Stated otherwise, the undersigned finds no evidence of bad faith, improper motive or reckless disregard of duty which would justify § 1927 sanctions against plaintiff's attorneys in this case. See Baulsh v. Johns, 70 F.3d 813, 817 (5th Cir. 1995). Nor does the undersigned finds that plaintiff's counsel sought to or willfully abused the judicial process by conduct tantamount to bad faith. Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir. 1991).

Accordingly, the undersigned recommends that defendants' motions for fees be DENIED to the extent that fees are sought under 28 U.S.C. § 1927.

C. Costs

Defendants also move for costs pursuant to Local Rule 7.3 and Rule 54 of the Federal Rules of Civil Procedure. Plaintiff does not contest defendants entitlement to costs to the extent that such costs are provided for by 28 U.S.C. § 1920. Not all defendants have submitted bills of costs pursuant to that statute due to the Court's focus on attorney's fees and issues addressed above.

Accordingly, the undersigned recommends that defendants' motions for costs be deferred temporarily pending submission of bills of costs by all requesting defendants pursuant to 28 U.S.C. § 1920.

## RECOMMENDATIONS

For all of the foregoing reasons, the undersigned respectfully recommends:

a. That defendants' motions for attorney's fees from plaintiff be GRANTED pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-

15

5(k) in amounts to be determined following the submission of further briefing should this recommendation be adopted by the Court.

    b.    that defendants' motions for attorney's fees from plaintiff's counsel, pursuant to 28 U.S.C. § 1927, be DENIED; and

    c.    that defendants' motions for costs be DEFERRED pending the submission of bills of cost pursuant to 28 U.S.C. § 1920.

    The parties may serve and file written objections to this Report and Recommendation with the Honorable Joan A. Lenard, United States District Judge, within ten (10) days of the receipt. See 28 U.S.C. § 636(b)(1)(C); United States v. Warren, 687 F.2d 347 (11th Cir. 1982), cert. denied, 460 U.S. 1087 (1983); Hardin v. Wainwright, 678 F.2d 589 (5th Cir. Unit B 1982); see also Thomas v. Arn, 474 U.S. 140 (1985).

    RESPECTFULLY SUBMITTED at Miami, Florida this 5th day of February, 1998.

Ted E. Bandstra
United States Magistrate Judge

Copies furnished to:

Honorable Joan A. Lenard
All counsel of record

16



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6126-CIV-DIMITROULEAS

BETTY ORTEGA,

                    Plaintiff,              ORIGINAL

       v.

UNISOURCE WORLDWIDE, INC., a
foreign corporation,

                    Defendant.

- - - - - - - - - - - - - - - - - - - x


                         Two South Biscayne Boulevard
                         Suite 2500
                         Miami, Florida
                         Tuesday, July 25, 2000
                         10:05 a.m.- 12:05 p.m.
                          1:20 p.m.- 4:15 p.m.




              DEPOSITION OF BETTY ORTEGA


       Taken before Edward Varkonyi, Registered
Professional Reporter and Notary Public for the State
of Florida at Large, pursuant to Notice of Taking
Deposition filed in the above cause.

46

1  given because of his sex?

2       A.    Because there were only three people that

3  were given accounts constantly at all times, John

4  Huempfner, Dennis Laux and it was a give in.

5       Q.    You said three. Who was the third?

6       A.    Larry Press, before he left.

7       Q.    Can you tell me what accounts Larry Press

8  was given, that you weren't given, because of your

9  sex?

10      A.    When Mike Alto left all Mike's accounts

11  were given to Larry Press. They were split between

12  Larry Press, John Huempfner and Dennis Laux.

13      Q.    All right. That is one situation. Any

14  others like that?

15      A.    I won't be able to tell you.

16      Q.    So the only specific situation that you

17 can identify to me today, as we sit here, wherein you

18 feel that any males were given specific accounts

19 because of their sex is when Mike Alto left and his

20 accounts were divided amongst Larry Press, John

21 Huempfner and Dennis Laux?

22      A.    We had other people that left too and

23 every time somebody did the accounts were

24 specifically guided to them.

47

```
 1              If we sit here and I have their list of
 2   accounts and Larry's and everybody else's, I would be
 3   able to tell you.  Without looking at it, I won't be
 4   able to.
 5         Q.   Do you know whether or not any of Mike
 6   Alto's accounts went to other women in the
 7   department?
 8         A.   I didn't get any.
 9         Q.   Do you know whether any other women did?
10         A.   I wouldn't be able to tell you.
11         Q.   During 1996, during that calender year
12   were you given any new accounts?
13         A.   Probably.
14         Q.   Some?
15         A.   I don't recall.  I will have to look on
16   my reports and see.
17         Q.   During 1997 were you given any new
18   accounts?
19         A.   Yes.
20         Q.   By whom?
21         A.   Bill Ready.
22         Q.   During 1998 were you given any new
23   accounts?
24         A.   Yes.
```

86

```
 1    also made with other people doing web sales?
 2         A.   I wasn't involved.  I don't know.
 3         Q.   Have you ever done web sales?
 4         A.   No, sir.
 5         Q.   Have you ever asked for web sales
 6    accounts?
 7         A.   I was given one when John Huempfner
 8    left.
 9         Q.   So one of Huempfner's accounts you were
10    given when he left?
11         A.   Right, it was $14.
12         Q.   Was it web sales?
13         A.   It was web sales and then I turned it in
14    the minute I walked into the place.
15         Q.   You did what?
16         A.   I turned it back into the company.
17         Q.   It was assigned to you and you gave it
18    back to the company?
19         A.   Yes, sir.
20         Q.   And what is the name of it?
21         A.   It was Continental, Continental Printing
22    in Hialeah.
23         Q.   And other than that one instance when
24    they gave you Continental Printing as an account,
```