UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6126-CIV-DIMITROULEAS

BETTY ORTEGA,

        Plaintiff,

vs.

UNISOURCE WORLDWIDE, INC.,

        Defendant.

_____/

Magistrate Judge Johnson

FILED _ _ _ _ D.C.

i c ] 1 4 _ _ i

CLARENCE MADDUX
CLERK U.S. DIST. CT.
S.D. OF FLA. Ft. LAUD.

### ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT and OMNIBUS ORDER

THIS CAUSE is before the Court upon Defendant's Motion for Summary Judgment [DE 50], Plaintiff's Renewed Motion to Compel with Combined Rule 56(f) Motion to Supplement Plaintiff's Response to Defendant's Motion for Summary Judgment (Filed Under Seal) [DE 59], Defendant's Motion to Strike the errata sheet of Plaintiff [DE 73], Defendant's Motion to Strike paragraph 27 of unsworn declaration of Plaintiff [DE 74], Plaintiff's Motion to Strike Defendant's Response to Plaintiff's Statement of Disputed Facts [DE 84], and Plaintiff's Motion to File Under Seal Plaintiff's Reply to Defendant's Response to Plaintiff's Renewed Motion to Compel with Combined Rule 56(f) Motion [DE 92]. The Court has carefully considered the motions, and is otherwise fully advised in the premises.

### I. BACKGROUND

Plaintiff Betty Ortega, an Hispanic female, filed a ten count complaint against Defendant Unisource Worldwide, Inc., a paper distribution company. Plaintiff alleges violations of the federal Equal Pay Act for receiving lower pay for the same work as similarly situated male co-workers (Count I); retaliation for complaining about not receiving equal pay (Count II); gender



discrimination as an Hispanic women under the Florida Civil Rights Act ("FCRA") (Count III)

and the federal Title VII law (Count VII) for failure to promote by assignment of accounts and

being paid less then male co-workers; and retaliation under the FCRA and Title VII for

complaining about this alleged discrimination (Counts VI and X).[1]

Plaintiff worked since 1989 on a 100% commission basis as a sales representative for

Defendant, a paper distribution company. Prior to being hired by Defendant's predecessor

company, Plaintiff had worked an additional 10 years in the copying/printing/paper industry.

Plaintiff primarily handled export accounts in Defendant's Miami office. In this case, Plaintiff

alleges that despite company promises, she was not assigned to the more lucrative accounts

following various resignations of other sales representatives in the Miami office where she

worked. In addition, Plaintiff alleges that she was not paid according to the same commission

structure as certain male co-workers handling heat set web accounts.[2] Plaintiff asserts that this

discrimination was based upon her status as an Hispanic women, since she alleges that in 1997

her then supervisor stated that "customers don't like Hispanic women because they are too

aggressive."[3] Finally, Plaintiff alleges that after her complaints about this alleged discrimination,

---

[1] Plaintiff has abandoned her claims based solely on race and national origin discrimination under state and federal law contained in Counts IV, V, VIII and IX of her Amended Complaint. See Plaintiff's Response to Defendant's Motion for Summary Judgment, n. 1 (filed under seal at DE 64-66).

[2] There is no dispute that Defendant had a higher commission rate for web accounts. Web accounts were sales directly from a manufacturer to a customer, that did not go through Defendant's warehouse. See Continuation of the 30(b)(6) Deposition of John Glaze, October 30, 2000, at page 30-31 [DE 54].

[3] The statement appears in Plaintiff's charge of discrimination and in her Amended Complaint, and she testified in her deposition that the statement was made in 1997 by Bill

2

she not only did not receive more lucrative accounts, but the new accounts that were assigned to her were low-volume accounts.

Plaintiff filed her charge of discrimination with the Equal Employment Opportunity Commission on April 29, 1999. The alleged acts of discrimination took place from 1994 through 2000. In July, 2000, shortly before her deposition in this case, Plaintiff was placed on probation by Defendant for failing to meet her sales goals.

## II. DISCUSSION

Defendant moved for summary judgment on all claims in the Amended Complaint. Following Plaintiff's response to the motion, Defendant moved to strike an errata sheet from Plaintiff's July 25, 2000 deposition that Plaintiff submitted with her opposition to defendant's motion for summary judgment.[4] Defendant also moved to strike Paragraph 27 of Plaintiff's declaration, filed in opposition to Defendant's motion for summary judgment. Finally, Plaintiff moved to strike Defendant's "Response to Plaintiff's Statement of Disputed Material Facts," filed along with Defendant's reply in support of its motion for summary judgment.

---

Ready, her then supervisor. See Deposition of Betty Ortega, at p. 109-110 [DE 54]. The Court notes that in the deposition Plaintiff does not say exactly what Mr. Ready said, but rather answers the questions following Defendant's counsel's recitation of the statement from the Amended Complaint. The exact quote from the Amended Complaint, which in turn quotes the Plaintiff's words from the Charge of Discrimination is: "I have been told that customers 'don't like Hispanic women because they are too aggressive.'"

[4] The Court was unable to find the errata sheet among the materials submitted by Plaintiff. Defendant included the errata sheet as Exhibit C to its Motion to Strike [DE 73], and states that "Plaintiff submitted her Errata sheet contemporaneously with her response to Unisource's Motion for Summary Judgment on January 16, 2001." Defendant's Motion to Strike, p.2, n.1.

3

## A. Motions to Strike

Before turning to the substantive issues raised by Defendant's motion for summary
judgment, the Court will address the various motions to strike. First, as to Plaintiff's motion,
there is no provision in Local Rule 7.5 for a defendant to submit a response, in addition to a
reply, to a plaintiff's statement of fact filed in opposition to the defendant's motion and statement
of facts in support of a summary judgment motion. The Rule is fairly clear that a party moving
for summary judgment may submit an additional ten page statement of facts. The Rule is also
clear that a plaintiff may submit an additional ten page statement of facts with a twenty page
opposition memorandum in response to the motion for summary judgment. Even if Defendant in
this case were to argue that it only used five pages of its statement of facts allotment in support
of its motion, there still is no provision for an additional response or reply apart from the ten
page reply brief, which Defendant in this case did file. Therefore, although Defendant has not
yet responded to Plaintiff's Motion to Strike, served by mail on Monday, February 5, 2001, the
Court will grant Plaintiff's motion.

Turning next to Defendant's motions to strike, responded to by Plaintiff, the Court notes
that with regard to the errata sheet, Defendant argues that the changes submitted are both
untimely and improper under the Federal Rules of Civil Procedure. Rule 30(e) of the Federal
Rules of Civil Procedure provide that a deponent has "30 days after being notified by the officer
that the transcript or recording is available in which to review the transcript" to make changes.
The record is undisputed that the court reporter in this case sent the transcript only to
Defendant's counsel and while he made Plaintiff's transcript "available," he does not remember
whether he mailed such a notice to Plaintiff or her counsel. See Exhibit B to Defendant's Motion

4

to Strike [DE 73]. Plaintiff argues that she never received a notice of availability until her counsel contacted the court reporter in early January, 2001, and therefore her January 16, 2001 errata sheet is timely.

Defendant argues that Plaintiff's deposition was filed and served by Defendant upon Plaintiff's counsel on December 8, 2000, when its motion for summary judgment was filed. Thus, the 30 day period expired around January 11, 2001 if actual notice of the deposition is the proper standard. Plaintiff argues that the plain language of the rule states that only notice by the "official, " meaning the court reporter, triggers the 30 day period. United States ex rel Burch v. Piqua Engineering, Inc., 152 F.R.D. 565 (S.D.Ohio 1993). Without relying on the timeliness reason alone, this Court concludes that actual receipt of the deposition, or actual receipt of its being filed in support of a motion for summary judgment is sufficient to trigger the 30 day notice of availability.[5]

A better reason to strike the errata sheet is that the Federal Rules simply cannot have contemplated a plaintiff materially changing a clear answer to an unambiguous question in a deposition six months after the deposition, and after the answer in question was used by Defendant in a motion for summary judgment to attempt to eliminate a claim prior to trial.

> The law in this circuit is that a party cannot give "clear answers to unambiguous questions" in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction. Van T. Junkins and Associates v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir.1984). When this occurs, the court may disregard the affidavit as a sham. Id. at 658-59. We apply this rule sparingly because of the harsh effect this rule may have on a party's case. In addition, we feel that "[t]o allow every failure of memory or variation in a

---

[5]  The Court could find no caselaw on this Rule 30(e) issue in this Circuit, other than the caselaw regarding late affidavits contradicting previous deposition testimony.

> witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the ... affiant ... was stating the truth." Tippens v. Celotex Corp., 805 F.2d 949, 953-54 (11th Cir.1986). Thus, our cases require a court to find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit. See id. at 954. If no inherent inconsistency exists, the general rule allowing an affidavit to create a genuine issue "even it if conflicts with earlier testimony in the party's deposition," Kennett-Murray Corp. v. Bone, 622 F.2d 887, 893 (5th Cir.1980), governs. In these instances, any conflict or discrepancy between the two documents can be brought out at trial and considered by the trier of fact.

Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987) (footnotes omitted).

During her deposition, Plaintiff was asked whether she is involved in web sales. As discussed above, these web accounts involved a higher commission. There is an inherent inconsistency between the clear answers of "No, sir" and "No, sir. I don't get involved in web sales at all" and the errata sheet explanations that "I don't get involved . . . because . . . I have not been assigned those large accounts at Unisource" and "No, sir, unless they are included in the accounts that I claim were not assigned to me." The errata sheet answers are akin to a late affidavit filed to defeat summary judgment by creating an issue that was not present prior to the filing of the late affidavit. While this Court recognizes that application of the Van T. Junkins rule must be sparingly, this clearly is a case in which to apply the rule. Therefore, the Court will grant Defendant's motion to strike and strike Plaintiff's errata sheet for her deposition.

Defendant next argues that paragraph 27 of the Plaintiff's declaration, submitted with her Response to Defendant's Motion for Summary Judgment, should also be stricken as contradicting clear answers given during Plaintiff's deposition. This paragraph essentially states that after Plaintiff's deposition, she learned that male sales representatives who handled web accounts received a better commission on those accounts. Plaintiff's Unsworn Declaration,

6

Under Penalty of Perjury, Pursuant to 28 U.S.C. § 1746, Exhibit 3 to Plaintiff's Statement of

Material Facts, also Exhibit B to Defendant's Motion to Strike Paragraph 27 of Plaintiff's

Unsworn Declaration [DE 74]. Thus, Plaintiff asserts that she was discriminated against in not

being reassigned these accounts when these male sales reps left the company.

This factual situation differs under the Van T. Junkins test from the errata sheet analysis.

Here, Plaintiff is essentially stating that if she had known of the better web account commission

structure, she would have wanted those accounts. Thus, Plaintiff perhaps should not be limited

to her answer at her deposition, since new facts, namely the existence of a better commission

structure, arose after her deposition. Thus, there is not an inherent inconsistency in allowing the

declaration to be considered, despite its contradiction of the deposition testimony. The Court

will therefore deny this motion to strike.

## B. Summary Judgment Standard

Turning to the motion for summary judgment, the Court may grant summary judgment

"if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The stringent

burden of establishing the absence of a genuine issue of material fact lies with the moving party.

Celotex Corp. v. Catrett, 477 U.S. 317, 323(1986). The Court should not grant summary

judgment unless it is clear that a trial is unnecessary, Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 255 (1986), and any doubts in this regard should be resolved against the moving party,

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).

The movant "bears the initial responsibility of informing the district court of the basis for

7

its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must point out to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). According to the plain language of Fed.R.Civ.P. 56(e), the non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); Matsushita, 475 U.S. at 587.

Essentially, so long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson, 477 U.S. at 257. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." Anderson, 477 U.S. 242, 249-50.

## C. Timeliness of Filing Suit

At the outset, the Court will address Defendant's argument that Plaintiff is time-barred from using certain alleged acts of discrimination in this case. Title VII requires a plaintiff to file a charge of discrimination with the EEOC within 300 days of the alleged discriminatory acts.

8

42 U.S.C. § 2000e-5(e). Plaintiff claims that the statutory time limits are inapplicable in this

case because the discrimination against her has been continuous. "The standard for determining

whether an employment practice constitutes a continuing violation was set forth in Gonzalez v.

Firestone Tire & Rubber Co., 610 F.2d 241 (5th Cir. 1980)." Beavers v. American Cast Iron Pipe

Co., 975 F.2d 792, 796 (11th Cir. 1992); Knight v. Columbus, 19 F.3d 579 (11th Cir. 1994). The

Fifth Circuit in Gonzalez stated, and the Eleventh Circuit in Knight reiterated that:

> A past act of discrimination for which a party did not file a charge of
> discrimination with the EEOC within the limitations period is legally equivalent
> to a discriminatory act that occurred before the enactment of Title VII. Although
> such a past discriminatory act may continue to affect an employee's present pay
> and fringe benefits, such an effect does not constitute a continuing violation of
> Title VII...[T]he critical question is whether any present violation exists.

Gonzalez, 610 F.2d at 249; Knight, 19 F.3d at 580-81. Therefore to determine the timeliness of a

charge, it must be determined what particular practice or policy enacted by Defendant that

Plaintiff maintains is discriminatory. Beavers 975 F.2d at 797; Bazemore v. Friday, 478 U.S.

385 (1986); Delaware State College v. Ricks, 449 U.S. 250 (1980).

The defendant asserts that the plaintiff filed his EEOC charge on April 23, 1997, and that

some of the alleged discriminatory acts occurred more than 300 days prior to that date. The

particular practice or policy Plaintiff maintains is discriminatory is the assignment of accounts

and the lower commission structure. Defendant argues that there were discrete instances of

reassignments over time by different supervisors, and that these discrete acts involve different

circumstances that should not be considered a continuous practice or policy. The different

instances of reassignment that Plaintiff describes in her opposition to defendant's motion

include: 1) the other experienced export account sales rep left in March, 1999; 2) two

9

experienced sales representatives, who handled web accounts, both retired in December 1998;
and 3) certain other sales reps left in 1994, 1995, 1996 and 1997, from all of whom Plaintiff
argues she should have received reassignments. Since Plaintiff herself argues that Defendant did
not have "written or unwritten criteria outlining how accounts should be assigned or transferred
to sales representatives,"[6] this Court concludes, based upon the record as a whole, that the
separate incidents listed above are not continuous for purposes of the Title VII timeliness issue.
Therefore, the instances of alleged discriminatory account assignments or reassignments
occurring prior to June 27, 1998 are hereby time barred and will not be considered as evidence of
discrimination.

With regard to Equal Pay Act issues, again, even under Plaintiff's interpretation of the
law, there is a two-year statute of limitations from the date Plaintiff filed her complaint. In this
case, Plaintiff initially filed her complaint in state court on December 3, 1999. Defendant's
Notice of Removal [DE 1]. Thus, events occurring prior to December 2, 1997 regarding
payment of commissions are time-barred and will not be considered as evidence of
discrimination.

Finally, with regard to the alleged 1997 statement of Bill Ready, this statement should not
be used as evidence of discrimination, particularly since Mr. Ready was no longer her supervisor
in 1998 and 1999, when the two non time-barred instances of failure to reassign accounts
occurred.

---

[6] Plaintiff's Statement of Disputed Material Facts, p. 3, ¶ 10 [DE 64-66].

10

## D. Equal Pay Act

Plaintiff claims that certain male sales reps received a higher commission. As discussed

above, there is no factual dispute that for certain web accounts in which products were shipped

directly from the manufacturer to the customer, a better commission structure was used. Plaintiff

argues that such a practice discriminates against her as a female, because she is performing the

same work as the male sales reps, but receiving less pay. However, there is no evidence in the

record that this structure was put in place for discriminatory purposes. Rather, it would appear

that because Defendant did not have to use its warehouse employees and associated costs to ship

these products, Defendant was able to offer its sales reps higher commissions.

In the Eleventh Circuit:

To establish a prima facie case under the Equal Pay Act, an employee must show
that "an employer pays different wages to employees of opposite sexes 'for equal
work on jobs the performance of which requires equal skill, effort, and
responsibility, and which are performed under similar working conditions.' "
Corning Glass Works v. Brennan, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41
L.Ed.2d 1 (1974); Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d
797, 799 (11th Cir.1989). To establish a prima facie case, a plaintiff need only
demonstrate that the jobs at issue are substantially similar; a plaintiff does not
have to show that the skills or qualifications of the actual male and female
employees holding the positions are also substantially equivalent. See Miranda v.
B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1533 (11th Cir.1992) ("[O]nly
the skills and qualifications actually needed to perform the jobs are considered.").
Moreover, "[t]he prima facie case ... focuses solely on the primary duties of each
job, not duties that are incidental or insubstantial," and, although formal job titles
or descriptions may be considered, the controlling factor in the court's assessment
of whether two jobs are substantially equal must be actual job content. See id.
Finally, a plaintiff does not have to prove that two jobs are identical but rather
must show that the "skill, effort and responsibility required in the performance of
the jobs are substantially equal." Id. (emphasis added).

Arrington v. Cobb County, 139 F.3d 865, 876 (11th Cir. 1998).

In this case, the testimony of Defendant's sales representatives are conflicting on the

11

issue of whether the duties, skills and qualifications of a sales representative who handles web

sales are the same or higher as compared to one handling export accounts or other accounts. See

depositions of Robert Peterson (Exhibit 8 to Plaintiff's Statement of Facts), Richard Crane

(Exhibit 6 to Plaintiff's Statement of Facts), and John Huempfner (Exhibit 12 to Plaintiff's

Statement of Facts), all sales representative, as compared with managers' testimony in deposition

of Bill Ready (Exhibit 2 to Plaintiff's Statement of Facts) and John Glaze (Exhibits 4 and 11 to

Plaintiff's Statement of Facts). Thus, the Court must conclude that Plaintiff has at least created

an issue of disputed fact regarding her prima facie case under the Equal Pay Act ("EPA") that she

performed similar duties to male sales representative handling web accounts.

However, under the EPA, Defendant can put forth a defense that its different pay

structure is due to seniority, merit, quantity or quality of production, or any other fact not related

to sex. 29 U.S.C. §206(d)(1). If Defendant puts forth such a defense, Plaintiff must come

forward with affirmative evidence indicating that the proffered reason for the disparity is actually

a pretext for sex discrimination. Schwartz v. Florida Bd. of Regents, 954 F.2d 620, 623 (11th Cir.

1991).

It is clear that Defendant's pay structure is based upon factors not related to sex, but to

type of product sold and quantity of production. There is a legitimate business reason to have

higher commissions on web accounts where sales are made without Defendant incurring

warehouse costs. Furthermore, Plaintiff has no affirmative evidence that this reasons is a pretext.

This Court separates the assignment of accounts, discussed below in the Title VII section, from

the allegation of unequal pay. Plaintiff did receive the same pay and commissions structure as

her similarly situated male counterparts who did not handle web accounts. There is no evidence,

12

other than Plaintiff's arguments regarding <u>assignment of accounts</u>, that there was discrimination in the pay structure, once accounts had been assigned. Thus, Plaintiff's case is really about account assignments, given that certain accounts of Defendant paid more commissions. Such allegations are essentially about disparate treatment as an employee, and not about different pay for similar work. Accordingly, the Court will grant Defendant's motion for summary judgment as to Count I.

As to Plaintiff's claim for retaliation for complaining about unequal pay, again, in reviewing Plaintiff's deposition, it is clear that Plaintiff complained about unequal treatment in the assignment and/or reassignment of cases, rather than about Defendant's commission structure. In fact, for the same reason that the Court denies Defendant's motion to strike paragraph 27 of Plaintiff's declaration, that Plaintiff was unaware of the differing commission structure and that was why testified that she did not want web sales, the Court grants summary judgment to Defendant on Count II, Plaintiff's claim for retaliation for complaining about unequal pay. Plaintiff could not have complained about a practice she did not know about.

## E. "Gender Plus" Discrimination--Prima Facie Case under Title VII[7]

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or

---

[7] Claims for gender discrimination and retaliation under the Florida Civil Rights Act (FCRA) are treated under the same legal standard as the federal Title VII claims. The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII. <u>Harper v. Blockbuster Entertainment Corporation</u>, 139 F.3d 1385, 1387 (11th Cir. 1998) (citing <u>Ranger Ins. Co. v. Bal Harbour Club, Inc.</u>, 549 So.2d 1005, 1009 (Fla.1989); <u>Florida State Univ. v. Sondel</u>, 685 So.2d 923, 925 n. 1 (Fla. 1st Dist.Ct.App.1996); <u>Kelly v. K.D. Construction of Fla., Inc.</u>, 866 F.Supp. 1406, 1411 (S.D.Fla.1994)).

13

privileges of employment, because of such individual's race, color, religion, sex, or national

origin." 42 U.S.C. S 2000e-2(a)(1). A plaintiff may establish a prima facie case of

discrimination either by "statistical proof of a pattern of discrimination," or "direct evidence of

discrimination, which consists of 'evidence which, if believed, would prove the existence of

discrimination without inference or presumption,'" or by "circumstantial evidence to prove

discriminatory intent, using the framework established in McDonnell Douglas Corp. v. Green,

411 U.S. 792, 802-804, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973)." Holifield v. Reno, 115

F.3d 1555, 1561-62 (11th Cir.1997) (citations omitted).

### 1. Direct Evidence

Plaintiff argues that this case in one in which direct evidence of discrimination is

present.

> Direct evidence of discrimination is evidence, that, "if believed, proves [the]
> existence of [a] fact in issue without inference or presumption." Burrell v. Board
> of Trustees of Ga. Military College, 125 F.3d 1390, 1393 (11th Cir.1997)
> (citations omitted). As our precedent illustrates, direct evidence is composed of
> "only the most blatant remarks, whose intent could be nothing other than to
> discriminate" on the basis of some impermissible factor. Carter v. City of Miami,
> 870 F.2d 578, 582 (11th Cir.1989); see, e.g., Caban-Wheeler v. Elsea, 904 F.2d
> 1549 (11th Cir.1990) (in Title VII race discrimination case brought by a white
> woman who was terminated from her program director position, statement by
> decision-maker that the program needed a black director was direct evidence of
> discrimination). If an alleged statement at best merely suggests a discriminatory
> motive, then it is by definition only circumstantial evidence. Burrell, 125 F.3d at
> 1393.

Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999). Another opinion from the Eleventh

Circuit, after analyzing the cases cited above, used the "'preponderance definition'; a statement

that (1) is by the employer (i.e., by the decisionmaker), (2) reflects a discriminatory attitude, and

(3) ties the discriminatory attitude to the relevant employment decision, [and] will generally be

14

sufficient evidence for a trier of fact to conclude more probably than not that the employment decision was based on improper discrimination." Wright v. Southland Corp., 187 F.3d 1287, 1294 (11th Cir. 2000) (opinion written by J. Tjoflat, but not joined by concurring two judges on panel).

Plaintiff argues that the comment "customers don't like Hispanic women because they are too aggressive," allegedly made by Bill Ready in 1997, is direct evidence of discrimination. Defendant argues first the comment, if made, is time-barred under Title VII, and was made by someone who was not the decisionmaker of the 1998 and 1999 reassignment decisions that Plaintiff claims were discriminatory. This Court assumes for purposes of summary judgment that the comment was in fact made. However, the comment does fall outside of the 300 day period discussed above upon which Plaintiff may base her claim of discrimination. In addition, the alleged acts of gender/race discrimination within the 300 day period were the failure to reassign lucrative cases by Plaintiff's then supervisor, John Glaze. Thus, the decisionmaker was not the person uttering the discriminatory remark. Therefore, this Court concludes that under any of the tests used by the Eleventh Circuit, the 1997 comment cannot be used as direct evidence of discrimination.

## 2. Circumstantial Evidence

Under the McDonnell Douglas circumstantial evidence framework, a plaintiff establishes a prima facie case of gender plus discrimination under Title VII by showing: (1) the plaintiff is a female belonging to a racial minority; (2) she was subjected to adverse job action; (3) her employer treated similarly situated employees non-Hispanics more favorably; and (4) she was qualified to do the job. Holifield, 115 F.3d at 1562; see also McDonnell Douglas, 411 U.S. at

15

802; Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1310 (11th Cir.1998).

"Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination." Holifield, 115 F.3d at 1562 (citations omitted).

If a prima facie case is shown, the defendant must "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." Jones, 137 F.3d at 1311. If this is done, then the plaintiff may attempt to show that the proffered reason was merely a pretext for the defendant's acts. Id. at 1311; see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. Id. However, the Supreme Court recently held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Products, Inc., 120 S.Ct. 2097, 2109 (2000). Following Reeves, the Eleventh Circuit Court of Appeals held that "if the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000).

### a. Adverse Action

Defendant argues that Plaintiff cannot show an adverse action, disparate treatment, nor that she was qualified for assignment of certain accounts she claims she should have received. The law regarding adverse actions stems from Title VII retaliation cases, but there is no reason

16

not to import that analysis into this disparate treatment analysis. In Wideman v. Wal-Mart

Stores, 141 F.3d 1453 (11th Cir. 1998), the Eleventh Circuit held for the first time that Title VII's

protection extends to adverse actions which fall short of ultimate employment decisions. Id. at

1456. "Whether an action is sufficient to constitute an adverse employment action for purposes

of a retaliation claim must be determined on a case-by-case basis, using both a subjective and an

objective standard." Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000)

(citations omitted).[8]  The Gupta decision used the standard that an adverse action "alters the

employee's compensation, terms, conditions, or privileges of employment, deprives him or her of

employment opportunities, or adversely affects his or her status as an employee." Gupta, 212

F.3d at 587 (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3rd Cir.1997)).

Plaintiff argues that the actions taken by Defendant with regard to account reassignments

of sales representatives Gispert, Laux and Huempfner to male sales reps rather than to Plaintiff,

altered Plaintiff's compensation by reducing her commissions. Since Defendant paid its sales

reps on a 100% commission basis, this alleged act of disparate assignment of lucrative accounts

would be an adverse action in this Circuit.

b. Disparate Treatment

Defendant also argues that Plaintiff has not shown that Defendant treated similarly

situated employees non-Hispanics more favorably, since Plaintiff testified in her deposition that

she had no evidence that accounts were assigned based upon race or national origin. However,

---

[8] For some recent decisions from this Circuit concluding that no adverse action occurred,
see e.g. Graham, *supra*; Blalock v. Dale County Bd. of Educ., 84 F.Supp.2d 1291, 1310-11
(M.D.Ala. 1999); Pennington v. City of Huntsville, Ala., 93 F.Supp.2d 1201, 1220 (N.D.Ala.
2000).

17

Plaintiff has now abandoned her claims based solely on race or national origin. In her
deposition, Plaintiff makes clear that certain male sales reps such as Bill Ready and Jim Ware
received Tony Gispert's export accounts and Dennis Laux and John Huempfner's web accounts
rather the those accounts being assigned to Plaintiff. This testimony, undisputed as to the actions
taken (though obviously contested as to the reason behind the action), is sufficient to meet
Plaintiff's prima facie case of disparate treatment based upon gender.

### c. Qualifications

Defendant also argues that Plaintiff was not qualified to handle the web accounts of Laux
and Huempfner. First, Plaintiff testified in her deposition that she did not handle web accounts.
See Section II.A. *supra*. Second, Defendant's manager, John Glaze, testified that Plaintiff did
not have the experience needed to handle large web accounts, involving a different type of
specialty book publishing paper. However, as discussed above in Section II.D, Plaintiff has put
into evidence testimony from Defendant's sales reps that one who handles non-web accounts
should be able to handle web accounts. Thus, the Court finds that there are genuine issues of
material facts with respect to the Plaintiff's qualifications, and thus for her prima facie case.

### d. Legitimate, Non-Discriminatory Reasons for Assignments or Pretext?

Defendant argues that Defendant had legitimate, non-discriminatory business reasons for
the two relevant instances left in this case. First, as to the reassignment in late 1998 of Laux and
Huempfner's web accounts, Defendant hired Jim Ware from the outside to handle those
accounts, though Plaintiff testified that she had been told she would receive those accounts. John
Glaze, Defendant's manager who made the decision, testified that Ware had experience handling
heat set web accounts, had large account experience, and Glaze wanted a sales rep dedicated to

18

large accounts to ensure adequate time to dedicate to those accounts. In addition, Glaze testified, as in fact did Plaintiff, that Plaintiff did not handle web sales and did not want web sales.

Plaintiff argues that this reason was pretextual given Ready's 1997 comment regarding customers not liking Hispanic women, and given Glaze's testimony that Plaintiff had handled large commercial accounts, though not large web accounts, and the he wasn't sure how many years of large account experience Jim Ware had prior to his being hired to handles the large accounts. While this Court is mindful of Eleventh Circuit directives not to second guess business decisions, the evidence put forth by Plaintiff forces this Court to conclude that there are genuine issues of material facts as to whether the defendant's stated legitimate, nondiscriminatory reasons for its actions were pretextual regarding the Laux and Huempfner accounts.

Turning to the other remaining disparate treatment claim, the Tony Gispert export account reassignment, the Court reaches a similar conclusion. Here, Glaze was under a directive to reduce payroll by listing five persons for firing. At the same time, in March 1999, sales rep Tony Gispert announced his retirement. Gispert and Plaintiff were the only two sales reps handling export accounts. Rather than give Gispert's lucrative accounts to Plaintiff, Glaze allowed Bill Ready, a sales manager, to leave his position and return to being a sales rep, enabling Glaze to remove a sales rep from the proposed firing list. However, Glaze gave Ready Gispert's accounts. Glaze testified that he did not want only one person (Plaintiff) as his export section since he was concerned that if anything happened to Plaintiff he would lose an entire type of account. Second, Ready was more qualified given his long experience in the industry.

Plaintiff argues that these reasons are pretextual, since Plaintiff also had ten years

19

experience; Ready was given a salary guarantee, thus undermining Glaze's reason that Ready

was more qualified; Ready participated in the decision not to give Plaintiff Gispert's accounts

and Ready had animus towards Hispanic women; Glaze could have saved more money by

keeping Ready in his lower paid manager's position and hiring a less experienced sales rep to

work under Plaintiff, thus giving Plaintiff Gispert's accounts. Again, the Court is hesitant to

second-guess the business decision of Defendant. However, given the evidence of pretext

presented by Plaintiff, the Court concludes such evidence is sufficient to raise genuine issues of

material facts as to whether the defendant's stated legitimate, nondiscriminatory reasons for its

actions were pretextual. Therefore, summary judgment is not appropriate on Counts III and VII.

## F. Retaliation

To establish a prima facie case for retaliation, Plaintiff must show that: "1) she engaged

in protected activity; 2) her employer was aware of that activity; 3) she suffered adverse

employment action; and 4) there was a causal link between her protected activity and the adverse

employment action." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). "To recover for

retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to [her]

protest;' however, the plaintiff must have had a reasonable good faith belief that the

discrimination existed." Holifield v. Reno, 115 F.3d 1555, 1566 (11th Cir.1997) (quoting Tipton

v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir.1989)). "To meet the

causal link requirement, the plaintiff 'merely has to prove that the protected activity and the

negative employment action are not completely unrelated.'" Holifield, 115 F.3d at 1566 (quoting

E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir.1993)). However,

"[t]he plaintiff must at least establish that the employer was actually aware of the protected

20

expression at the time the employer took adverse employment action against the plaintiff" and "[t]he employer's awareness of the statement may be established by circumstantial evidence." Holifield, 115 F.3d at 1566 (citing Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir.1993); Weaver v. Casa Gallardo, Inc., 922 F.2d 1515, 1524 (11th Cir.1991)).

Once the plaintiff establishes his prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action. Holifield, 115 F.3d at 1566 (citing E.E.O.C. v. Reichhold Chemicals, Inc., 988 F.2d 1564, 1571-72 (11th Cir.1993)). If the employer offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation. Holifield, 115 F.3d at 1566 (citing Meeks, 15 F.3d at 1021; Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir.1993)). However, the Supreme Court recently held that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 120 S.Ct. at 2109 (2000).

In this case, Defendant argues that Plaintiff did not complaint to Defendant within 300 days of her filing her charge of discrimination. However, while it is true that Plaintiff must have made Defendant aware of her protected activity within the allowed period to bring a retaliation claim, Plaintiff did testify that in late 1998 she complained to Glaze about unequal account assignments. Plaintiff's deposition at 92. In addition, Plaintiff filed her claim of discrimination in April, 1999. With regard to adverse actions (see standard cited above in Section II.E.2.a.), this Court concludes that the reassignment of Gispert's accounts in March 1999 (following her complaint to Glaze in December, 1998) and the placing of Plaintiff on probation in July, 2000

21

with a threat of dismissal for failure to meet sales goals (following her bringing this lawsuit in December 1999), constitute adverse actions under Eleventh Circuit precedent.

As to the timing issue, however, this Court concludes that there is no evidence presented by Plaintiff to link the adverse actions to the protected activity. Plaintiff plainly testified that she has no evidence that accounts were taken away or not assigned to her based upon her complaining about discrimination. Plaintiff's deposition, pages 60-63. In addition, several months passed between her different protected activities and the different alleged adverse actions. While temporal proximity alone can sometimes be enough to create an inference of relatedness, in this case, anywhere from 3 months to 7-15 months passed between the protected activity and the alleged adverse actions. This temporal discontinuity, combined with the lack of affirmative evidence to show "that the protected activity and the negative employment action are not completely unrelated," leads this Court to conclude that Plaintiff has failed as a matter of law to show retaliation in this case. The Court notes that although Plaintiff's failure to meet sales goals and subsequent probationary status may be related to Defendant's alleged disparate treatment in assignment of accounts, there is no evidence that Defendant retaliated against Plaintiff for engaging in protected activity. Therefore, summary judgment is appropriate on all of Plaintiff's retaliations claims in Counts VI and X.

### III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.  Defendant's Motion for Summary Judgment [DE 50] is hereby **GRANTED in part**, as to Counts I, II, IV, V, VI, VIII, IX and X, and **DENIED in part**, as to Counts III and VII, Plaintiff's claims for disparate treatment in account assignments under the FCRA and

22

Title VII;

2.  Plaintiff's Renewed Motion to Compel with Combined Rule 56(f) Motion to Supplement

    Plaintiff's Response to Defendant's Motion for Summary Judgment (Filed Under Seal)

    [DE 59] is hereby **DENIED**, as Plaintiff was granted sufficient extensions in which to

    respond to Defendant's motion for summary judgment, and Plaintiff failed to support her

    Rule 56(f) motion by affidavit (See <u>Harbert International, Inc. v. James</u>, 157 F.3d 1271,

    1280 (11th Cir. 1998) (Court requires a Rule 56(f) affidavit to put forth the specific facts

    the party expects to discover and "how those facts would create a genuine issue of

    material fact precluding summary judgment.");

3.  Defendant's Motion to Strike the errata sheet of Plaintiff [DE 73] is hereby **GRANTED**;

4.  Defendant's Motion to Strike paragraph 27 of unsworn declaration of Plaintiff [DE 74]  is

    hereby **DENIED**;

5.  Plaintiff's Motion to Strike Defendant's Response to Plaintiff's Statement of Disputed

    Facts [DE 84] is hereby **GRANTED**;

6.  Plaintiff's Motion to File Under Seal Plaintiff's Reply to Defendant's Response to

    Plaintiff's Renewed Motion to Compel with Combined Rule 56(f) Motion [DE 92] is

    hereby **GRANTED**.

    **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida,

this _____ day of February, 2001.

WILLIAM P. DIMITROULEAS
United States District Judge

23

Copies furnished at calendar call to:

Karen Amlong, Esq.
Juan C. Enjamio, Esq.